**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| HAROLD S. CROCKER, JR. and ANNA BODNAR, on behalf of themselves and others similarly situated, | |
| Plaintiffs, | |
| v. | Civil Action No. 4:09-CV-0198 (CEJ) |
| KV PHARMACEUTICAL CO., MARC S. HERMELIN, RONALD J. KANTERMAN, DAVID S. HERMELIN, MELISSA HUGHES, RICHARD H. CHIBNALL, GERALD R. MITCHELL, MARY ANN TICKNER, THOMAS TOMARO, and DOES 1-20, | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS BY KV PHARMACEUTICAL COMPANY,
MELISSA HUGHES, GERALD R. MITCHELL, AND MARY ANN TICKNER**

Dated:  August 25, 2009

William J. Kilberg, P.C., *pro hac vice pending*
Paul Blankenstein, *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue N.W.
Washington, D.C.  20036
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539

Robert P. Berry, # 200680
BERRY & MAXSON, LLC
16150 Main Circle Drive, Suite 120
St. Louis, Missouri 63017
Telephone:  (314) 480-5882
Facsimile:  (314) 480-5884
rberry@berrymaxson.com

*Attorneys for Defendants KV Pharmaceutical
Company, Melissa Hughes, Gerald R. Mitchell,
and Mary Ann Tickner*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

The Parties ................................................................................................. 3

The Plan .................................................................................................... 4

Plaintiffs' Claims ...................................................................................... 4

STANDARD OF REVIEW .................................................................................. 5

ARGUMENT ...................................................................................................... 6

I.    Plaintiffs' Claims Against The Individual Defendants Should Be
      Dismissed Because The Complaint Fails To Sufficiently Allege That
      Individual Defendants Were ERISA Fiduciaries. .................................... 7

II.   Plaintiffs' Claims Against The KV Defendants Should Be Dismissed
      Because The Complaint Does Not Allege Specific Facts Plausibly
      Suggesting A Breach Of Fiduciary Duties ............................................. 10

      A.    The Complaint Fails To Allege Facts Sufficient To Overcome The
            Presumption Of Prudence In Retaining Employer Stock. ................ 10

      B.    The Complaint Fails To Allege Facts Sufficient To Overcome The
            ERISA § 404(c) Safe Harbor. ........................................................ 16

      C.    Plaintiffs' Misrepresentation Claims Are Not Plead With
            Particularity, The Public Statements Plaintiffs Allege To Be
            Misleading Were Not Made In Any Alleged Fiduciary Capacity,
            And Plaintiffs Fail To Allege Detrimental Reliance. ....................... 19

            1.   Plaintiffs' Misrepresentation Allegations Do Not Satisfy
                 The Pleading Requirements Of Rule 9(b) Or Even Rule
                 8(a). ................................................................................. 19

            2.   KV's Public Statements And SEC Filings Are Not
                 Fiduciary Communications, The KV Defendants Cannot Be
                 Liable For Failing To Disclose Information In Advance Of
                 Public Statements, And Plaintiffs Have Not Plausibly
                 Alleged Detrimental Reliance. ........................................... 22

**Table of Contents**
**(Continued)**

Page

III.    Plaintiffs' Co-Fiduciary, Duty To Monitor, And *Respondeat Superior* Claims Must Be Dismissed. ..................................................................... 26

      A.    Plaintiffs' Co-Fiduciary Claim Must Be Dismissed Because There Is Nothing In Plaintiffs' Complaint Suggesting That The KV Defendants Had Knowledge Of Any Alleged Fiduciary Violations By Other Alleged Fiduciaries. .................................................................. 26

      B.    Plaintiffs' Duty To Monitor Claim Must Be Dismissed Because Plaintiffs Have Not Properly Alleged A Primary Breach Of Fiduciary Duty Or Any Delegation Of Fiduciary Duties.......................... 27

      C.    Plaintiffs' *Respondeat Superior* Claim Must Be Dismissed Because Plaintiffs Have Not Properly Alleged A Primary Breach Of Fiduciary Duty And Because ERISA Implies No Such Cause Of Action. .................................................................................................... 28

CONCLUSION ...................................................................................................... 29

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Adams v. Freedom Forge Corp.*,
 204 F.3d 475 (3d Cir. 2000) ........................................................................... 23

*Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable
 Life Assur. Soc'y*,
 841 F.2d 658 (5th Cir. 1988) ........................................................................... 28

*Ashcroft v. Iqbal*,
 129 S. Ct. 1937 (2009) ........................................................................... 6, 15, 22

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ........................................................................... 5, 6, 22, 26

*Benton v. Merrill Lynch & Co.*,
 524 F.3d 866 (8th Cir. 2008) ............................................................................. 5

*Bunch v. W.R. Grace & Co.*,
 555 F.3d 1 (1st Cir. 2009) ............................................................................... 13

*Burstein v. Ret. Account Plan*,
 334 F.3d 365 (3d Cir. 2003) ........................................................................... 25

*Caputo v. Pfizer, Inc.*,
 267 F.3d 181 (2d Cir. 2001) ........................................................................... 20

*Confer v. Custom Eng'g Co.*,
 952 F.2d 34 (3d Cir. 1991) ........................................................................... 8, 9

*Coyne & Delany Co. v. Selman*,
 98 F.3d 1457 (4th Cir. 1996) ........................................................................... 27

*Daniels v. Thomas & Betts Corp.*,
 263 F.3d 66 (3d Cir. 2001) ........................................................................... 19

*DiFelice v. U.S. Airways, Inc.*,
 497 F.3d 410 (4th Cir. 2007) ........................................................................... 17

*Edgar v. Avaya, Inc.*,
 503 F.3d 340 (3d Cir. 2007) ........................................................... 10, 11, 13, 24

*Harzewski v. Guidant Corp.*,
 489 F.3d 799 (7th Cir. 2007) ........................................................................... 24

*Hecker v. Deere & Co.*,
 556 F.3d 575 (7th Cir. 2009) ................................................................. 2, 17, 18

*Howell v. Motorola, Inc.*,
 337 F. Supp. 2d 1079 (N.D. Ill. 2004) ........................................................... 14

**Table of Authorities**
**(Continued)**

Page(s)

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  No. 02-8853, 2005 WL 563166 (S.D.N.Y. Mar. 10, 2005)..................................... 28

*In re Bausch & Lomb Inc. ERISA Litig.*,
  2008 WL 5234281 ................................................................. 6, 11, 13, 23, 26, 27, 28

*In re Computer Sciences Corp. ERISA Litig.*,
  Nos. 08-2398, 08-2409, 2009 WL 2156696 (C.D. Cal. July 13, 2009).................... 25

*In re McKesson HBOC, Inc. ERISA Litig.*,
  No. 00-20030, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002)................................ 16, 21, 27

*In re Providian Financial Corp. ERISA Litig.*,
  No. 01-5027, 2002 WL 31785044 (N.D. Cal. Nov. 14, 2002)........................... 21, 27

*In re Tyco Int'l Ltd.*,
  No. 02-1357, 2004 WL 2903889 (D.N.H. Dec. 2, 2004) ....................................... 10

*In re Unisys Sav. Plan Litig.*,
  74 F.3d 420 (3d Cir. 1996) ............................................................................. 16, 17

*In re WorldCom, Inc. ERISA Litig.*,
  263 F. Supp. 2d 745 (S.D.N.Y. 2003) ............................................................... 10, 15

*Ince v. Aetna Health Mgmt., Inc.*,
  173 F.3d 672 (8th Cir. 1999) ................................................................................ 7

*James v. Pirelli Armstrong Corp.*,
  305 F.3d 439 (6th Cir. 2002) ................................................................................ 25

*Johnson v. Radian Group, Inc.*,
  No. 08-2007, 2009 WL 2137241 (E.D. Pa. July 16, 2009) ........................... 6, 20, 26

*Kalda v. Sioux Valley Physician Partners, Inc.*,
  481 F.3d 639 (8th Cir. 2007) ........................................................................... 8, 22

*Kayes v. Pac. Lumber Co.*,
  51 F.3d 1449 (9th Cir. 1995) ................................................................................ 9

*Kirschbaum v. Reliant Energy, Inc.*,
  526 F.3d 243 (5th Cir. 2008) ............................................. 2, 7, 8, 10, 11, 12, 23, 24

*Koch v. Dwyer*,
  No. 98-5519, 1999 WL 528181 (S.D.N.Y. July 22, 1999)................................... 25

*Kuper v. Iovenko*,
  66 F.3d 1447 (6th Cir. 1995) ................................................................................ 12

*Kushner v. Beverly Enters., Inc.*,
  317 F.3d 820 (8th Cir. 2003) ................................................................................ 4

iv

**Table of Authorities**
**(Continued)**

Page(s)

*Langbecker v. Elec. Data Sys. Corp.,*
   476 F.3d 299 (5th Cir. 2007) ............................................................... 17

*Lingis v. Motorola, Inc.,*
   No. 03-5044, 2009 WL 1708097 (N.D. Ill. June 17, 2009).................... 24

*Martin v. Feilin,*
   965 F.2d 660 (8th Cir. 1992) ............................................................... 10

*Moench v. Robertson,*
   62 F.3d 553 (3d Cir. 1995) .......................................................... 11, 13

*Nelson v. Hodowal,*
   512 F.3d 347 (7th Cir. 2008) ............................................................... 25

*Parnes v. Gateway 2000, Inc.,*
   122 F.3d 539 (8th Cir. 1997) ............................................................ 6, 20

*Pegram v. Herdrich,*
   530 U.S. 211 (2000)........................................................... 7, 8, 15, 23, 28

*Pub. Pension Fund Group v. KV Pharm. Co.,*
   No. 4:08-CV-1859 ............................................................................... 2

*Pugh v. Tribune Co.,*
   521 F.3d 686 (7th Cir. 2008) ..................................................... 3, 6, 14, 15

*Rogers v. Baxter Int'l Inc.,*
   521 F.3d 702 (7th Cir. 2008) ............................................................... 12

*Sasso v. Cervoni,*
   985 F.2d 49 (2d Cir. 1993) ................................................................. 10

*Sprague v. Gen. Motors Corp.,*
   133 F.3d 388 (6th Cir. 1998) ............................................................... 8

*Stalley v. Catholic Health Initiatives,*
   509 F.3d 517 (8th Cir. 2007) ............................................................ 5, 6

*Stein v. Smith,*
   270 F. Supp. 2d 157 (D. Mass. 2003)................................................. 23

*Tatum v. R.J. Reynolds Tobacco Co.,*
   392 F.3d 636 (4th Cir. 2004) ............................................................... 13

*Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M*
   *Health & Welfare Plan v. Bjorkedal,*
   516 F.3d 719 (8th Cir. 2008) ...................................................... 7, 15, 21

*Wiles v. Capitol Indemnity Corp.,*
   280 F.3d 868 (8th Cir. 2002) ............................................................... 5

**Table of Authorities**
**(Continued)**

Page(s)

*Wiseman v. First Citizens Bank & Trust Co.*,
  215 F.R.D. 507 (W.D.N.C. 2003) ........................................................................ 25

*Wright v. Or. Metallurgical Corp.*,
  360 F.3d 1090 (9th Cir. 2004) ................................................................ 10, 12, 24

**Statutes**

26 U.S.C. § 402(e)(4) ............................................................................................ 11

29 U.S.C. § 1002(16)(A) ......................................................................................... 7

29 U.S.C. § 1002(21)(A) ..................................................................................... 7, 10

29 U.S.C. § 1102(a)(1) ............................................................................................ 7

29 U.S.C. § 1102(a)(2) ............................................................................................ 7

29 U.S.C. § 1104(a)(1) ..................................................................................... 15, 28

29 U.S.C. § 1104(a)(2) .......................................................................................... 11

29 U.S.C. § 1104(c) .............................................................................................. 16

29 U.S.C. § 1105(a) .............................................................................................. 26

29 U.S.C. § 1105(c)(1)(B) ....................................................................................... 9

29 U.S.C. § 1107(d)(3)(A) ..................................................................................... 10

29 U.S.C. § 1108(c)(3) .......................................................................................... 16

U.S.C. § 1108(e)(3)(A) .......................................................................................... 11

**Other Authorities**

1974 U.S.C.C.A.N. 5038, 5086 ............................................................................. 17

*Another Look at 401(k) Plan Investments in Employer Securities*,
  35 J. Marshall L. Rev. 539, 562 (2002) .............................................................. 13

U.S. Dep't of Labor, Field Assistance Bulletin 2004-03 (Dec. 17, 2004),
  *available at* http://www.dol.gov/ebsa/regs/fab_2004-3.html ............................... 12

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 1, 5

Fed. R. Civ. P. 9(b) ............................................................................................ 6, 20

**Regulations**

29 C.F.R. § 2509.75-8 .......................................................................................... 10

29 C.F.R. § 2550.404c-1 ....................................................................................... 17

Defendants KV Pharmaceutical Company ("KV" or the "Company") and Melissa

Hughes, Mary Ann Tickner, and Gerald R. Mitchell (the "Individual Defendants," KV and the

Individual Defendants collectively the "KV Defendants") respectfully submit this memorandum

of law in support of their motion to dismiss plaintiffs' Consolidated Amended Complaint

("Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## INTRODUCTION

This case is one of a raft of cases, now numbering 200 or more,[2] brought by participants

in 401(k) retirement plans sponsored by numerous companies, including some Fortune 500

companies, complaining about losses sustained in company stock held in their individual

retirement accounts.  The plaintiffs here, current and former employees of KV Pharmaceutical

Company, and participants in the 401(k) plan sponsored by the Company (the "Plan"), charge

that the KV Defendants are Plan fiduciaries and that they breached their fiduciary duties under

the Employee Retirement Income Security Act of 1974 ("ERISA") by, *inter alia*, imprudently

maintaining a Company stock fund as an investment option in the Plan, and by providing false

and misleading information regarding the Company's financial and operational health.  Plaintiffs

seek to represent a class of Plan participants whose accounts included Company stock at any

time between February 2, 2003 and the present (the "Class Period"), and who allegedly suffered

---

[1]  Defendants Marc S. Hermelin, David S. Hermelin, Ronald J. Kanterman, and Richard H. Chibnall
each have separate counsel.  Although Thomas Tomaro was also named in the Complaint, plaintiffs
have since voluntarily dismissed the claims against him without prejudice.

[2]  Although plaintiffs in some of these cases have survived motions to dismiss, our research has
uncovered no case in which plaintiffs have been awarded summary judgment or prevailed after trial.

losses because "KV's books and records did not accurately reflect its financial condition" and "KV had not properly disclosed its financial condition to the public." Compl. at 1-2.[3]

The gravamen of plaintiffs' Complaint is that in February 2003 the KV Defendants knew or should have known that the Company would suffer financial distress due to product recalls and adverse regulatory action by the Food and Drug Administration ("FDA") in late 2008 and early 2009 (*see* Compl. ¶ 107 *et seq.*) and, based on their divining of these future events, should have divested the Plan of Company stock at the beginning of the Class Period, an act that no court has ever held is required by ERISA in the circumstances alleged in the Complaint. Although plaintiffs catalogue every regulatory hurdle faced by the Company "[s]ince the mid-1990's," Compl. ¶ 47 *et seq.*, all that this demonstrates is that plan fiduciaries need not and should not divest company stock from 401(k) plans merely because there is the possibility of some regulatory, operational, or financial obstacle in the future. The fact that KV has faced financial and regulatory obstacles in the past—as all public companies, especially those in highly regulated industries do from time to time—and has overcome these obstacles, and proceeded to thrive, underscores the point that "[a] fiduciary cannot be placed in the untenable position of having to predict the future of the company stock's performance." *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 256 (5th Cir. 2008).[4] Plaintiffs allege no facts plausibly suggesting

---

[3] As is typical of ERISA "stock-drop" cases, the ERISA claims here follow on the heels of a federal securities fraud action pending in this Court brought on behalf of a class of KV shareholders. *See Pub. Pension Fund Group v. KV Pharm. Co., et al.*, No. 4:08-CV-1859 (CEJ).

[4] The facts that plaintiffs allege with respect to the Company's past interactions with the FDA underscore the point that plan fiduciaries could not have predicted the future developments. *See Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009) ("If the plaintiff voluntarily provides unnecessary facts in her complaint, the defendant may use those facts to demonstrate that she is not

[Footnote continued on next page]

2

that, at the beginning of the Class Period or at any time after, the KV Defendants knew or should have known of some impending and permanent decline in the value of Company stock. For that reason among many others, the Complaint states no claim upon which relief can be granted.

## BACKGROUND

**The Parties**

Defendant KV develops, manufactures, and markets branded and generic/non-branded prescription pharmaceutical products. Compl. ¶ 9. KV was incorporated under the laws of Delaware in 1971 as a successor to a business originally founded in 1942. Form 10-K Fiscal Year Ended March 31, 2008 at 3 (cited at Compl. ¶¶ 92-95). The Company has for many decades been involved in the development of proprietary drug delivery systems and formulation technologies that enhance the effectiveness of new therapeutic agents, existing pharmaceutical products and nutritional supplements, and holds many patents in these areas. *Id.* KV is both the sponsor and named Administrator of the Plan.

Defendant Melissa Hughes currently serves as Director of Human Resources for KV. Compl. ¶ 16. Defendant Mary Ann Tickner is Benefits Manager for KV. *See* Compl. ¶ 17. Defendant Gerald R. Mitchell is the former Chief Financial Officer and a former Director of KV. *See* Compl. ¶ 13. Plaintiffs Harold S. Crocker, Jr. (a current employee) and Anna Bodnar (a former employee) are participants in the Plan. *Id.* at ¶¶ 7, 8.[5]

---

[Footnote continued from previous page]
  entitled to relief."); *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008) (noting that "a plaintiff can plead himself out of court by alleging facts that show there is no viable claim").

 [5]  The Consolidated Amended Complaint filed by interim co-lead counsel in this matter supersedes three separate complaints originally brought by Crocker, Bodnar, and a third plaintiff, Heather Knoll. *See* May 7, 2009 Order at D.E. 68. Interim co-lead counsel has not included Knoll as a named plaintiff in the Consolidated Amended Complaint, and her original complaint is no longer operative.

**The Plan**

The KV Fifth Restated Profit Sharing Plan and Trust—the governing Plan document during the Class Period—describes a now common 401(k) defined contribution plan, consisting of individual accounts into which participants may contribute a portion of their earnings to save for retirement.  Compl. ¶¶ 21-22.  KV makes generous matching and profit-sharing contributions on behalf of participants in the Plan.  Compl. ¶¶ 27-30.  The Plan offers participants nearly thirty investment options, including a company stock fund as a core component of the Plan.  Compl. ¶ 9.  Plan participants have total control over the investment of their own contributions, as well as KV's matching and profit-sharing contributions.  Compl. ¶¶ 9, 28-30.

In light of participants' control over the investment of the assets in their individual accounts, the participants were expressly advised that "[t]he Plan is intended to qualify as a participant-directed plan under Section 404(c) of ERISA."  Summary Plan Description ("SPD") at 11 (cited at Compl. ¶ 26), attached hereto as Exhibit A.[6]  The participants were told in this regard, that "[t]his means that you are responsible for your investment decisions under the plan. The plan fiduciaries . . . are not responsible for any losses incurred as a result of your investment decisions."  *Id.*

**Plaintiffs' Claims**

The Complaint asserts that all defendants—KV, the Individual Defendants, and defendants Marc Hermelin, David Hermelin, Richard Chibnall, and Ronald Kanterman— breached their fiduciary duties under ERISA by maintaining Company stock as an investment

---

[6] In deciding a motion to dismiss, the Court "may consider the complaint and documents whose contents are alleged in [the] complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (internal quotation marks omitted).

option in the Plan when they knew or should have known KV stock was an imprudent investment for a retirement plan (Count I), and by misrepresenting and/or failing to disclose KV's actual deteriorating financial condition (Count II). Plaintiffs also assert a claim of "co-fiduciary" liability against all defendants for enabling or allowing other fiduciaries to breach their duties (Count IV), and a claim against KV and Director Defendants[7] for breach of a duty to monitor Plan fiduciaries (Count III). Finally, plaintiffs allege that KV has secondary liability for breaches of fiduciary duties by other defendants under the doctrine of *respondeat superior*. Compl. ¶ 180.

Plaintiffs also assert that the ERISA § 404(c) safe harbor provision is inapplicable because a "plan fiduciary has concealed material non-public facts regarding the investment from the participant." Compl. ¶ 158.

## STANDARD OF REVIEW

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept as true all factual allegations in the complaint," *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007), but "is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

To survive the motion, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) ("The complaint must allege facts, which, when taken as true, raise more than a speculative right to

---

[7] Plaintiffs define the "Director Defendants" as Marc and David Hermelin, Ronald Kanterman, and Gerald Mitchell. Compl. ¶ 14.

relief."). The plaintiff must do more than allege "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Instead, to stay in court, the plaintiff must allege facts that, if proven, would show an entitlement to relief. The complaint "must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims." *Stalley*, 509 F.3d at 521 (citing *Twombly,* 550 U.S. at 554-55). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 1949-50 (internal quotation marks omitted). Moreover, to the extent claims are predicated on allegations of fraudulent conduct, the heightened pleading requirement of Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997) ("This means the who, what, when, where, and how.").

## ARGUMENT

Notice pleading under the Federal Rules of Civil Procedure "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Because the Complaint in this case offers nothing more than that, it must be dismissed. *See, e.g., Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008) (dismissing ERISA stock-drop class action under *Twombly*); *Johnson v. Radian Group, Inc.*, No. 08-2007, 2009 WL 2137241 (E.D. Pa. July 16, 2009) (same); *In re Bausch & Lomb Inc. ERISA Litig.*, No. 06-CV-6297, 2008 WL 5234281 (W.D.N.Y. Dec. 12, 2008) (same).

6

I.    **Plaintiffs' Claims Against The Individual Defendants Should Be Dismissed Because The Complaint Fails To Sufficiently Allege That Individual Defendants Were ERISA Fiduciaries.**

"The Supreme Court has noted that the first question pertinent to establishing ERISA liability is whether the defendant is in fact a fiduciary." *Kirschbaum*, 526 F.3d at 250-51 (citing *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)).  Under ERISA:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A); *see Ince v. Aetna Health Mgmt., Inc.*, 173 F.3d 672, 674-75 (8th Cir. 1999).  Accordingly, a person may become a fiduciary by express designation in plan documents (a so-called "named fiduciary"[8]), or may be deemed to be a fiduciary by exercising fiduciary responsibility (a so-called "functional fiduciary"[9]).

Congress' inclusion of the statutory phrase "to the extent" means that "[t]he fiduciary status applies . . . only when the individual is performing a fiduciary duty." *Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 732 (8th Cir. 2008).  And because fiduciary status "is not an all or nothing concept," *id.*,

---

[8]  Under ERISA § 402(a)(1), the plan documents must designate a "named fiduciary" charged with the authority to "control and manage the operation and administration of the plan."  29 U.S.C. § 1102(a)(1).  If the plan documents do not designate a plan "administrator," the plan sponsor is deemed to be the administrator.  29 U.S.C. § 1002(16)(A).  In this case, it is undisputed that KV is both the Plan sponsor and the Plan administrator.  Compl. ¶¶ 9, 32.

[9]  ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2); ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A); *see also Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 732 (8th Cir. 2008).

"[a]n ERISA fiduciary for one purpose is not necessarily a fiduciary for other purposes." *Kirschbaum*, 526 F.3d at 251. For example, an individual might be a fiduciary with regard to determining eligibility for benefits, but not with respect to the selection of investment options.

"Before proceeding with the merits of any breach-of-fiduciary duty claim" the Court "must address the threshold issue of whether the defendants were acting in a fiduciary or an employer capacity when the acts in question took place." *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 644 (8th Cir. 2007). The question "is not whether the actions of some person . . . adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, performing a fiduciary function) *when taking the action subject to the complaint*." *Pegram*, 530 U.S. at 226 (emphasis added); *see also Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998) (en banc) (holding that "fiduciary duties under ERISA attach not just to particular persons, but to particular persons performing particular functions" (internal citation omitted)).

Where, as here, the Company is the named fiduciary, the plaintiffs must allege facts as to each of the Individual Defendants that, if proven, would show that the particular defendant had an "*individual* discretionary role[] as to plan administration." *Confer v. Custom Eng'g Co.*, 952 F.2d 34, 37 (3d Cir. 1991) (emphasis in original). In other words, as the Third Circuit explained in *Confer*, unless the corporate fiduciary directly delegates discretionary authority to its officers, the officers who discharge the company's fiduciary duties are not themselves fiduciaries. To hold otherwise, the *Confer* court concluded, would be to adopt a rationale that would exclude any corporation from ever being viewed as a fiduciary. Since a corporation only exercises its discretion through its employees, without imputing the discretionary decisions of the employees to the corporation, the corporation would never meet the statute's requirement of "having

discretion." *Id.*  Consequently, where, as here, the corporation is named as a fiduciary by a benefits plan, the employees and/or officers acting on behalf of the corporation in that regard are not fiduciaries unless they also have been assigned some individualized discretionary role in plan administration.  An officer or employee of a corporation that is the named administrator of a plan may become a fiduciary if, for example, the corporation delegates some or all of its fiduciary responsibilities to that officer or employee pursuant to 29 U.S.C. § 1105(c)(1)(B) (stating that a plan may "expressly" provide procedures for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities under the plan).[10]

Here, plaintiffs expressly allege that "the Company has made no formal delegations of ERISA fiduciary responsibilities as Plan Administrator."  Compl. ¶ 41.  Consequently, the allegations that the Individual Defendants served as members of a committee that administered the Plan, and that the committee was responsible for Plan investments (Compl. ¶¶ 13, 16-18, 42), only plausibly show that the Individual Defendants have not been personally assigned any discretionary responsibilities, and are only acting to discharge KV's duties as Plan Administrator.  As a result, the Individual Defendants are not Plan fiduciaries and the claims against them must be dismissed for that reason alone.[11]

---

[10]  The Eighth Circuit has not addressed *Confer*.  While the Ninth Circuit has not agreed with *Confer*'s precise holding, it has recognized that ERISA "provides a functional definition of a fiduciary which depends, in part, upon whether a person 'exercises any discretionary authority or discretionary control respecting management or disposition of its assets . . . ."  *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1459 (9th Cir. 1995).  The KV Defendants submit that the Third Circuit's view better aligns with ERISA.

[11]  Allegations that Individual Defendant Mitchell "signed the 11-K filed on September 27, 2006 and September 27, 2007 on behalf of the trustees or other persons who administer the Plan," Compl. ¶ 13, and that he was a member of the Board of Directors that signed SEC filings on behalf of the Company, Compl. ¶ 41, do not make him an ERISA fiduciary.  In rejecting the argument that signing

[Footnote continued on next page]

9

**II.    Plaintiffs' Claims Against The KV Defendants Should Be Dismissed Because The Complaint Does Not Allege Specific Facts Plausibly Suggesting A Breach Of Fiduciary Duties.**

    **A.    The Complaint Fails To Allege Facts Sufficient To Overcome The Presumption Of Prudence In Retaining Employer Stock.**

The KV Plan is an Eligible Individual Account Plan (EIAP) under ERISA.  29 U.S.C. § 1107(d)(3)(A); *accord* Compl. ¶ 22.  EIAPs have many forms, including profit-sharing plans, stock bonus plans, 401(k) savings plans, and employee stock ownership plans (ESOPs).  *See id.* EIAPs differ from traditional retirement plans in that they serve "to promote investment in employer securities."  *Edgar v. Avaya, Inc.*, 503 F.3d 340, 347 (3d Cir. 2007); *see also Martin v. Feilin*, 965 F.2d 660, 664 (8th Cir. 1992) ("Congress explicitly intended . . . [to] encourage employee ownership.").  Congress has expressed a strong preference that company stock be made available to participants in 401(k) plans and other EIAPs.  *See, e.g., Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1098 n.3 (9th Cir. 2004); *Edgar*, 503 F.3d at 347; *Kirschbaum*, 526 F.3d at 253.

---

[Footnote continued from previous page]

    SEC filings on behalf of a plan renders an individual a fiduciary, one court explained that:  "The complaint does not claim that [] defendant exercised discretionary control over the administration of the Plans when [he] signed the documents in question.  Ministerial actions of this sort do not give rise to fiduciary responsibilities."  *In re Tyco Int'l Ltd.*, MDL No. 02-1357, 2004 WL 2903889, at *3 (D.N.H. Dec. 2, 2004).  In fact, courts are in agreement that "[t]hose who prepare and sign SEC filings do not become ERISA fiduciaries through those acts."  *In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d 745, 766 (S.D.N.Y. 2003); *see, e.g., Kirschbaum*, 526 F.3d at 251.  Nor does alleging that Defendant Mitchell served as the Company's CFO and also sat on KV's Board of Directors for a portion of the Class Period satisfy plaintiffs' obligation to plead facts that would plausibly establish his *fiduciary* status.  It is beyond dispute that an individual cannot be liable as an ERISA fiduciary "solely by virtue of his role as officer, shareholder or manager."  *Sasso v. Cervoni*, 985 F.2d 49, 50 (2d Cir. 1993) (collecting cases); *see also In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d at 757; Department of Labor Interpretive Bulletin 75-8, 29 C.F.R. § 2509.75-8, at D-4 ("Members of the board of directors of an employer which maintains an employee benefit plan will be fiduciaries only to the extent that they have responsibility for the functions described in [ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A)].").

This congressional preference and encouragement for investment in company stock is statutorily manifested in ERISA § 404(a)(2), which excepts such investments from the obligation otherwise imposed on fiduciaries to diversify plan assets, 29 U.S.C. § 1104(a)(2), and in ERISA § 408(3)(3)(A), which excepts 401(k) plan investments in company stock from the prohibition otherwise applicable to transactions involving the plan sponsoring employers. 29 U.S.C. § 1108(e)(3)(A). Congress has also provided favorable tax treatment to investments in company stock. Net appreciation obtained by participants in 401(k) plans is, upon sale following distribution, taxed at the capital gains rate, while appreciation on other 401(k) plan investments is taxed at the ordinary income rate. 26 U.S.C. § 402(e)(4).

Given this strong congressional preference—and, indeed, encouragement—for investment in company stock by participants in 401(k) plans, a general consensus has formed that fiduciaries of 401(k) plans that offer company stock as an investment option are entitled to a "presumption of prudence." *Edgar*, 503 F.3d at 345-47 (citing the seminal *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995)); *Kirschbaum*, 526 F.3d at 254-55. Their decision to continue offering company stock as an investment option under the plan is, accordingly, subject to judicial review under a deferential abuse of discretion standard. *Edgar*, 503 F.3d at 347-48.

To overcome the presumption of prudence that attaches to a fiduciary's decision to continue offering company stock, plaintiffs must allege facts that plausibly establish that the fiduciaries knew or should have known that the company was on the precipice of a catastrophic financial failure calling into serious question the status of the company as a going concern. *In re Bausch & Lomb Inc. ERISA Litig.*, 2008 WL 5234281, at *6 ("*Moench* and its progeny have established that the presumption of prudence is rebutted only when a company's overall viability appear[s] to be in jeopardy."). Not every obstacle—even serious ones—that a company faces

11

requires plan fiduciaries to examine the prudence of continuing to offer company stock as an investment option. Rather, there must be "persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves *bound* to divest." *Kirschbaum*, 526 F.3d at 256 (emphasis added).

It is, of course, the case that a company's stock price goes up and down with some regularity. Although the price of the company's stock reflects the market's current evaluations of the company's future prospects, a decline in the price of company stock, even a sharp decline over a short period, is alone not enough to make company stock an imprudent investment. *See, e.g., Kirschbaum*, 526 F.3d at 255 n.12 (noting 75% drop in stock price in *Wright*, 360 F.3d at 1096, and 80% drop in stock price in *Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995), insufficient to overcome the presumption); U.S. Dep't of Labor, Field Assistance Bulletin 2004-03 (Dec. 17, 2004), *available at* http://www.dol.gov/ebsa/regs/fab_2004-3.html ("because stock prices fluctuate as a matter of course, even a steep drop in a stock's price would not, in and of itself, indicate that a named fiduciary's direction to purchase or hold such stock is imprudent").

Retirement plans, like the 401(k) plan here, are not intended to be day trading platforms, but have long-term investment horizons. *Rogers v. Baxter Int'l Inc.*, 521 F.3d 702, 705 (7th Cir. 2008) ("People who pursue a buy-and-hold strategy, one particularly appropriate for pension investments, are unaffected by the volatility in market prices that accompanies the announcement of particular pieces of good and bad news."); *Kirschbaum*, 526 F.3d at 254 (noting "long-term horizon" of retirement plans). Fiduciaries are not in the business of responding to the transient fluctuating fortunes of the company as reflected in its stock price. As one commentator has put the point:

> The fact that stock values fluctuate all of the time, combined with the fact that 401(k) plans generally have fairly long-term horizons, means that the plan

sponsor should be justified in continuing to make available a company stock investment option unless the fiduciary has information leading it to reasonably believe the company has no future prospects.

Susan J. Stabile, *Another Look at 401(k) Plan Investments in Employer Securities*, 35 J. Marshall L. Rev. 539, 562 (2002). Any other rule would mean that a plan would need to divest and then repurchase employer stock with every significant movement of the price of the stock. This is clearly untenable, and ERISA "does not require fiduciaries to diversify their EIAP holdings before or after each major corporate development." *In re Bausch & Lomb Inc. ERISA Litig.*, 2008 WL 5234281, at *6.[12]

The *Bausch & Lomb* case is instructive. There, plaintiffs alleged that company stock in the employer's 401(k) plan was artificially inflated due to misrepresentations concerning financial and FDA regulatory matters. 2008 WL 5234281, at *6. The court granted defendants' motion to dismiss the duty of prudence and all other claims (virtually the same claims presented here) because plaintiffs' "broad allegations" were insufficient to overcome the presumption of prudence or otherwise show a breach of fiduciary duty. *Id.* Plaintiffs here similarly allege that "the price of the KV stock was artificially inflated as a direct result of Defendants' scheme to misrepresent the state of the [sic] KV's manufacturing process" and "Defendants' scheme to misrepresent the state of the [sic] KV's financial and accounting activities." Compl. ¶¶ 161-62. What is missing is any supporting factual allegation that would plausibly show that such

---

[12] Moreover, "[i]n determining whether the plaintiff has overcome the presumption [of prudence], the courts must recognize that if the fiduciary, in what it regards as an exercise of caution, does not maintain the investment in the employer's securities, it may face liability for that caution, particularly if the employer's securities thrive." *Moench*, 62 F.3d at 571-72; *see Edgar*, 503 F.3d at 348-49. This is not a theoretical concern. Fiduciaries who have removed company stock as an investment option have in fact been sued for breach of the fiduciary duty of prudence when the price of the stock subsequently increased. *See, e.g.*, *Bunch v. W.R. Grace & Co.*, 555 F.3d 1 (1st Cir. 2009), *Tatum v. R.J. Reynolds Tobacco Co.*, 392 F.3d 636 (4th Cir. 2004).

"schemes" existed or, even if they did, that the KV Defendants in their fiduciary capacities were in any way involved with them.

For example, plaintiffs identify the Company's disclosure of the Audit Committee's investigation of "FDA regulatory and other compliance matters and management misconduct," Compl. ¶ 112, but never allege that any KV Defendant was aware of such compliance matters or involved with any such alleged misconduct. Plaintiffs are left to rely on the fact that the Individual Defendants were employees of the Company, and are alleged to have been members of a committee involved with the administration of the Plan, to charge them with such knowledge. But these allegations are insufficient to show that the individuals were in a position to know about or predict regulatory or operational troubles that might cause a precipitous decline in the price of Company stock. As the Seventh Circuit noted in *Pugh v. Tribune Co.*:

> A conclusory statement that all defendants should have known specific facts about a company is generally insufficient to state a claim; *it must be alleged that each defendant was in a position to know or learn of the information. See, e.g., Howell v. Motorola, Inc.,* 337 F. Supp. 2d 1079, 1089-92 (N.D. Ill. 2004) (collecting cases finding that *allegations that a defendant was a member of a plan's investment committee is, without more, an insufficient basis for inferring that he should have been privy to certain company information*).

521 F.3d at 701 (emphases added).

The court in *Pugh* went on to affirm the dismissal of the breach of fiduciary duty claims against the defendants there because, among other reasons, they were not alleged to have knowledge of the underlying problems at the company. *Id.* The court noted that the defendants "only held positions relating to benefits and human resources" (compare Defendants Tickner and Hughes here), or "were directors of [the company] during the class period, but they are not alleged to have been involved with the day-to-day operations and internal controls" (compare

14

Defendant Mitchell here, who is not alleged to have been involved with or had knowledge of operational or FDA regulatory problems). *Id.*[13]

In short, plaintiffs' allegations at best might be viewed as "*consistent with*" liability on the part of the KV Defendants, but their "well-pleaded facts do not permit the court to infer more than the mere *possibility* of misconduct," and "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *See Iqbal*, 129 S. Ct. at 1950 (internal quotation marks omitted; emphasis added). Indeed, no court has held that a fiduciary breaches his duties by continuing to offer company stock in the circumstances alleged in the Complaint. *Cf.* 29 U.S.C. § 1104(a)(1) ("a fiduciary shall discharge his duties . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use").[14]

---

[13] Although KV necessarily had involvement with operational and FDA regulatory matters, plaintiffs make no allegation that the Company (or any Individual Defendant for that matter) was involved with such issues while wearing its "fiduciary hat." While an individual who is both a fiduciary and a corporate officer may have two hats but only "one head," *In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d at 765, a corporation that is a fiduciary also has two hats, *Pegram*, 530 U.S. at 225, but many heads—the individual officers and employees that carry out the company's affairs, both on the corporate and fiduciary sides. With respect to its fiduciary responsibilities, KV can only be charged with the knowledge of those officers and employees who carried out those functions for the Company. *See Bjorkedal*, 516 F.3d at 732 ("What ERISA requires, is that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." (internal quotation marks and alteration omitted)). Although plaintiffs allege that members of the committee discharged those duties, they have not plausibly alleged that the Individual Defendants and the other members of the committee had knowledge about KV's operational problems and/or its FDA regulatory issues.

[14] Plaintiffs maintain that the Individual Defendants breached their fiduciary duty of loyalty because they "had a conflict of interest in continuing to invest in Company Stock for the Plan" because "[d]ue to the Hermelin family's controlling ownership of the Company, all of the employee fiduciaries held their positions at the will of various members of the CEO's family." Compl. ¶ 164. Even if true, the allegation that the Individual Defendants' employment could be terminated by KV's CEO does not plausibly suggest a breach of the duty of loyalty. To credit plaintiffs' claim as stating a plausible claim for a breach of the duty of loyalty would open the door to claims against every ERISA plan in

[Footnote continued on next page]

**B.     The Complaint Fails To Allege Facts Sufficient To Overcome The ERISA § 404(c) Safe Harbor.**

Plaintiffs' allegations are also insufficient to overcome ERISA § 404(c), a "safe harbor" defense applicable to fiduciaries of defined contribution plans, like the KV Plan here, in which participants exercise control over the assets in their individual accounts.  Section 404(c) provides that:

> In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account . . . (i) such participant or beneficiary shall not be deemed to be a fiduciary by reason of such exercise, and (ii) *no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control.*

29 U.S.C. § 1104(c) (emphasis added).

The Third Circuit explained that section 404(c) "allows a fiduciary, who is shown to have committed a breach of duty in making an investment decision, to argue that despite the breach, it may not be held liable because the alleged loss resulted from a participant's exercise of control." *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 445 (3d Cir. 1996).  And the legislative history confirms that the provision was enacted to provide a defense in the circumstances presented here. As the Conference Committee Report puts the point:  "if the participant instructs the plan trustee to invest the full balance of his account in, *e.g.,* a single stock, the trustee is not to be liable for

---

[Footnote continued from previous page]

the country in which plan fiduciaries are employees or officers of the plan sponsor, an arrangement that is expressly permitted by ERISA.  *See* 29 U.S.C. § 1108(c)(3) (expressly providing that it is not a prohibited practice for an officer or employee of the plan sponsor to serve as a plan fiduciary). Moreover, "the duty of loyalty requires fiduciaries to refrain from *actual* disloyal conduct, not simply running the risk that such behavior will occur."  *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 812, 834-35 (N.D. Cal. 2005) (emphasis added).  The Complaint here alleges nothing more than speculation that the Individual Defendants acted other than in the interests of the Plan and its participants.  The plaintiffs offer not one factual allegation that plausibly supports their conclusory allegation.

any loss because of a failure to diversify or *because the investment does not meet the prudent man standards*." H.R. Rep. No. 93-1280, at 48 (1974), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5086 (emphasis added). Consequently, the courts interpreting § 404(c) have held that the protection it affords to fiduciaries extends to a fiduciary's allegedly imprudent decision to include a particular investment option in the plan where the participants invested their assets in that option and later experienced a loss. *See Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 309-13 (5th Cir. 2007); *In re Unisys Sav. Plan Litig.*, 74 F.3d at 445; *see also Hecker v. Deere & Co.*, 556 F.3d 575, 587 (7th Cir. 2009). *But see DiFelice v. U.S. Airways, Inc.,* 497 F.3d 410 (4th Cir. 2007).

Three key criteria must be satisfied for § 404(c) to apply: "First, the participant must have the right to exercise independent control over the assets in her account and in fact exercise such control. Next, the participant must be able to choose 'from a broad range of investment alternatives' . . . . Third, the participant must be given or have the opportunity to obtain 'sufficient information to make informed decisions with regard to investment alternatives under the plan.'" *Hecker*, 556 F.3d at 587 (quoting 29 C.F.R. § 2550.404c-1).

Each of those criteria are satisfied here. Under the terms of the Plan, participants exercise control over the assets in their account as they select how to invest both their contributions as well as KV's matching contributions in the various investment options offered by the Plan. Compl. ¶¶ 28-29, 31. The nearly thirty Plan investment options, which include stable value, long-term growth, high-yield, foreign investment, and other options, as well as a KV stock fund, afford participants a broad range of investment alternatives with differing risk and return characteristics. Exhibit A, Summary Plan Description at 30-31 (cited at Compl. ¶ 26). It is also clear that "[t]he Plan is intended to qualify as a participant-directed plan under Section

404(c) of ERISA." *Id.* at 11 (also notifying participants that "[t]his means that you are responsible for your investment decisions under the plan. The plan fiduciaries, including Fidelity Management Trust Company and KV Pharmaceutical Company, are not responsible for any losses incurred as a result of your investment decisions."). Finally, the SPD provides information concerning each of the investment alternatives, information concerning fees, and instructions for obtaining prospectuses and additional detailed information with which to make informed investment decisions. *Id.* at 29-32.

In an effort to preempt the § 404(c) defense, plaintiffs allege that the fiduciary safe harbor is inapplicable where, as here, a "plan fiduciary has concealed material non-public facts regarding the investment from the participant." Compl. ¶ 158.[15] What is notably absent from the Complaint, however, are any factual allegations plausibly suggesting that the KV Defendants in their fiduciary capacities withheld material non-public information from participants. Although plaintiffs spend a great deal of paper cataloguing KV's public disclosures, including those identifying financial and FDA regulatory issues (*see, e.g.*, Compl. ¶¶ 80-81, 89-90), they never identify a specific item of material information that they maintain the KV Defendants had a fiduciary duty to disclose under ERISA. *See infra* Section II(C).

---

[15] "Although normally a district court should not base a dismissal under Rule 12(b)(6) on its assessment of an affirmative defense, that rule does not apply when a party has included in its complaint facts that establish an impenetrable defense to its claims." *Hecker*, 556 F.3d at 588 (internal quotation marks omitted). As in *Hecker*, "[p]laintiffs here chose to anticipate the § 1104(c) defense in their Complaint and thus put it in play." *Id.* In such cases, a reviewing court properly examines the challenges to 404(c) alleged in the complaint to determine whether they defeat the safe harbor. *Id.* at 589 ("Restricting our analysis to the challenges in the Complaint, we see no plausible allegation that the Plans do not comply with § 1104(c). Plaintiffs have focused on matters that are not helpful to them in the end, namely, the defendant's failure to disclose non-public material information . . . .").

Because plaintiffs in this case challenge the applicability of section 404(c) on the sole ground that the KV Defendants withheld material non-public information from participants, but fail to include a single allegation plausibly supporting such a claim, the KV Defendants are protected by the safe harbor provision of section 404(c).

**C.    Plaintiffs' Misrepresentation Claims Are Not Plead With Particularity, The Public Statements Plaintiffs Allege To Be Misleading Were Not Made In Any Alleged Fiduciary Capacity, And Plaintiffs Fail To Allege Detrimental Reliance.**

To make out an ERISA breach of fiduciary duty claim based on alleged misrepresentations, "a plaintiff must establish each of the following elements:  (1) the defendant's status as an ERISA fiduciary *acting as a fiduciary*; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation."  *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir. 2001) (emphasis added).  Plaintiffs have alleged in general terms that the KV Defendants, as an undifferentiated mass, made misrepresentations concerning KV's financial and operational health through the Company's SEC filings and public statements.  They have not, however, alleged facts that would plausibly establish that any material misrepresentations were made by the KV Defendants in any fiduciary capacity, or that plaintiffs relied upon any such misrepresentations to their detriment.

**1.    Plaintiffs' Misrepresentation Allegations Do Not Satisfy The Pleading Requirements Of Rule 9(b) Or Even Rule 8(a).**

Plaintiffs allege that "Defendants' *scheme to misrepresent*" the state of KV's finances and operations "caused other Plan fiduciaries and certain participants and beneficiaries to maintain substantial investments in Company Stock at a time when these Defendants knew or should have known that Company Stock was not a prudent investment for the Plan or for its participants and beneficiaries."  Compl. ¶¶ 161-62, 172 (emphasis added).  There can be little

doubt that such allegations sound in fraud, and plaintiffs' generalized, conclusory, and undifferentiated allegations fail to satisfy Rule 9(b)'s heightened pleading requirement.  Fed. R. Civ. P. 9(b) ("a party must state with particularity the circumstances constituting fraud"); *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (noting application of Rule 9(b) in ERISA context where breach of fiduciary duty is claimed based on alleged fiduciary misrepresentations); *Radian Group*, 2009 WL 2137241, at *12 ("Although Rule 8's pleading requirements apply generally to ERISA claims for breach of fiduciary duty . . . to the extent that any claims sound in fraud, they are subjected to the heightened pleading requirements of Rule 9(b).").

As the Eighth Circuit has held:

> [T]his particularity requirement serves three purposes:  First, it deters the use of complaints as a pretext for fishing expeditions of unknown wrongs designed to compel *in terrorem* settlements.  Second, it protects against damage to professional reputations resulting from allegations of moral turpitude.  Third, it ensures that a defendant is given sufficient notice of the allegations against him to permit the preparation of an effective defense.

*Parnes*, 122 F.3d at 549.[16]  It is to avoid these types of irresponsible and unsupported claims that plaintiffs are required to plead with particularity "such matters as the time, place and contents of false representations, as well as the identity of the person making the representation and what was obtained or given up thereby," and the reason that "conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."  *Id.*

A review of the Complaint reveals the notable absence of the required particularity.  Rather, plaintiffs base their claims on vague allegations that unidentified individuals were

---

[16]  The second factor is particularly significant here, where the plaintiffs have named the Individual Defendants and accused them of engaging in "schemes to misrepresent" the facts of the Company's situation to Plan participants (*i.e.*, their co-workers ) without alleging a single fact that would tie any one of the individuals to such "schemes."

"personally made aware of . . . warnings and dire consequences" relating to FDA regulatory

action. Compl. ¶ 59. Plaintiffs then attempt to exploit such vague allegations of knowledge by

identifying more than two dozen SEC filings and various press releases concerning financial and

regulatory issues in an attempt to establish that the KV Defendants were engaged in a scheme to

misrepresent. Compl. ¶¶ 57-108. But how the Individual Defendants can be charged with

personal knowledge of such issues, or responsibility for the statements, or involvement in any

"schemes," is left unsaid.[17] Nor, as discussed below, are there any allegations that such public

statements were made by KV (or the Individual Defendants) in any fiduciary capacity.

Moreover, even if there were no Rule 9(b), the type of undifferentiated allegations

plaintiffs have made do not satisfy Rule 8(a). In *In re Providian Financial Corp. ERISA

Litigation*, for example, the district court dismissed an ERISA class action under Rule 8(a)

where, as here, plaintiffs "lumped the various classes of defendants into an undifferentiated mass

and alleged that all of them violated all of the asserted fiduciary duties." No. 01-5027, 2002 WL

31785044, at *1 (N.D. Cal. Nov. 14, 2002). The court there found that such pleading "fails to

put the various defendants on notice of the allegations against them." *Id.* What is required, by

contrast, is that the complaint allege "specifically each of the alleged breaches of fiduciary duty,

identify each defendant who is alleged to be liable for such breach, allege facts to support the

assertion that the duty was breached, and allege what harm resulted from each specific breach."

*In re McKesson HBOC, Inc. ERISA Litig.*, No. 00-20030, 2002 WL 31431588, at *16 (N.D. Cal.

Sept. 30, 2002). The allegations must of course also satisfy "the threshold issue of whether the

---

[17] Plaintiffs' allegations with respect to KV are similarly insufficient. In light of ERISA's "two-hat" doctrine, *Bjorkedal*, 516 F.3d at 732, the knowledge imputed to the Company in its fiduciary capacity is only the knowledge that those who discharge its fiduciary duties have in *their* fiduciary capacities. *See* note 13, *supra*.

defendants were acting in a fiduciary or an employer capacity when the acts in question took place." *Kalda*, 481 F.3d at 644.

Plaintiffs have utterly failed to satisfy these standards.  The fact that the Individual Defendants receive only passing mention in the "Parties" section of the Complaint (*see* Compl. ¶¶ 13, 16, 17), and make no other appearance in its fifty-two pages and 193 numbered paragraphs, amply illustrates the point.  And the repeated lumping of all defendants together for virtually all purposes without alleging that they were acting in a fiduciary capacity demonstrates that plaintiffs have no basis to establish a plausible entitlement to relief.  *See, e.g.*, Compl. ¶ 108 (classifying the history of the Company's public statements as "Defendants' certifications"); ¶ 110 (same).  This pleading tactic would not have historically passed muster under Rule 8(a), but most certainly does not do so in light of the Supreme Court's recent guidance in *Twombly* and *Iqbal*.  By not differentiating among defendants with respect to alleged misrepresentations, but instead lumping them all together without any individualized allegations whatsoever, plaintiffs have failed to plead "factual content that [would] allow[] the court to draw the reasonable inference that [each] defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  Although plaintiffs' allegations, viewed in the light most favorable to them, might be "consistent with" liability, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," *id.* at 1950, and they are therefore insufficient.

> **2.  KV's Public Statements And SEC Filings Are Not Fiduciary Communications, The KV Defendants Cannot Be Liable For Failing To Disclose Information In Advance Of Public Statements, And Plaintiffs Have Not Plausibly Alleged Detrimental Reliance.**

Plaintiffs allege that the KV Defendants are liable for "conveying incomplete and inaccurate information about the soundness of investing in Company Stock."  Compl. ¶ 171.  But nowhere do plaintiffs identify any such statements made by any defendant in a *fiduciary*

22

capacity, as is required.  *See Pegram*, 530 U.S. at 226; *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 492 (3d Cir. 2000) ("An employee may recover for a breach of fiduciary duty if he or she proves that an employer, *acting as a fiduciary*, made a material misrepresentation that would confuse a reasonable beneficiary about his or her benefits, and the beneficiary acted thereupon to his or her detriment."  (emphasis added)).  Rather, plaintiffs simply catalogue SEC filings and press releases KV has made over the last fifteen years without any allegations that any of these filings or statements were made by KV or the Individual Defendants as fiduciaries.  This is plainly insufficient, as "no fiduciary liability can be implicated" from "press releases and periodic filings with the Securities and Exchange Commission" because these are "statements made to the market in general, not to Plan participants specifically."  *Stein v. Smith*, 270 F. Supp. 2d 157, 173 (D. Mass. 2003); *In re Bausch & Lomb Inc. ERISA Litig.*, 2008 WL 5234281, at *7.[18]

    To the extent plaintiffs suggest that the KV Defendants had a fiduciary duty to make affirmative statements about KV's financial and operational status in advance of the Company's public statements, the law does not support such a proposition.  As an initial matter, "ERISA does not create an obligation to disclose information about an investment option that the public itself does not know about when *the fiduciaries* have made no false or misleading statement to the beneficiaries."  *Lingis v. Motorola, Inc.*, No. 03-5044, 2009 WL 1708097, at *11 (N.D. Ill.

---

[18]  Plaintiffs do allege that KV incorporated its SEC filings into the SPD and a Plan Prospectus that were disseminated to Plan participants.  Compl. ¶ 37.  But incorporating SEC filings into a Plan Prospectus is a corporate, not a fiduciary act.  *Kirschbaum*, 526 F.3d at 257 ("When it incorporated its SEC filings into the Forms S-8 and 10a Prospectus, [the company] was discharging its corporate duties under the securities laws and was not acting as an ERISA fiduciary.").  And plaintiffs do not identify any provision of the SPD incorporating the Company's SEC filings.  Compl. ¶ 26.

June 17, 2009) (emphasis added).  Here, plaintiffs have made no allegation that the KV Defendants made any false or misleading statements in their *fiduciary* capacities.

Moreover, had the KV Defendants been aware of material non-public information concerning financial or operational problems, which plaintiffs have not plausibly alleged, any selective disclosure of or trading on that information for the benefit of Plan participants would likely have violated the insider trading laws.  *See Wright*, 360 F.3d at 1098 n.4; *Lingis*, 2009 WL 1708097, at *15 ("selling off [company] stock based on non-public information known by Defendants risks running afoul of the insider trading laws").  This is certainly not required, as "the fiduciary's duty of loyalty does not extend to violating the law."  *Harzewski v. Guidant Corp.*, 489 F.3d 799, 808 (7th Cir. 2007) ("It probably would have been unlawful . . . to sell the [defendant] stock held by the pension plan on the basis of inside knowledge of the company's problems.  If so, there are no damages, and indeed no breach of fiduciary duty.").

And had the KV Defendants been in possession of material non-public information and disclosed that information to the public generally, any detrimental effect on plaintiffs would have been the same because the market would have quickly captured the information and the price of the Company stock would have undergone the same correction.  *See, e.g.*, *Kirschbaum*, 526 F.3d at 256 ("compelling fiduciaries to sell off a plan's holdings of company stock may bring about precisely the result plaintiffs seek to avoid:  a drop in the stock price"); *Edgar v. Avaya, Inc.*, No. 05-3598, 2006 WL 1084087, at *9 (D.N.J. Apr. 25, 2006) ("under the 'efficient capital markets hypothesis,' such a disclosure would have resulted in a swift market adjustment, and the Plans would not have been able to sell their [Company] stock holdings at the higher, pre-announcement price, and the Plans would have sustained the same losses they incurred"), *aff'd*

503 F.3d at 350.[19]  As one court just recently explained in this very regard, "[e]liminating [company stock] as an investment option for its employees is a clarion call to the investment world that the [fiduciaries] lacked confidence in the value of the [company] stock, and could have a catastrophic effect on [the company's] stock price, severely harming all . . . stockholders, including Plan members."  *In re Computer Sciences Corp. ERISA Litig.*, Nos. 08-2398, 08-2409, 2009 WL 2156696, at *6 (C.D. Cal. July 13, 2009).

Finally, even if plaintiffs had plausibly alleged misleading fiduciary communications, the Complaint would still fail because it includes no allegation of "detrimental reliance by the plaintiff[s] on [any alleged] misrepresentation."  *Wiseman v. First Citizens Bank & Trust Co.*, 215 F.R.D. 507, 510 (W.D.N.C. 2003); *see also Burstein v. Ret. Account Plan*, 334 F.3d 365, 384 (3d Cir. 2003).  Plaintiffs bear the burden to prove reliance, *James v. Pirelli Armstrong Corp.*, 305 F.3d 439, 449 (6th Cir. 2002), and, because their misrepresentation claims sound in fraud, they must plead their supporting allegations, including reliance, with particularity, *Koch v. Dwyer*, No. 98-5519, 1999 WL 528181, at *6 (S.D.N.Y. July 22, 1999), which they have not done.  *See supra* Section II(C)(1).

---

[19] To the extent the market would not have adversely reacted to the disclosure, the information would not have been material and need not have been disclosed.  *See Nelson v. Hodowal*, 512 F.3d 347, 350-51 (7th Cir. 2008) ("the materiality requirement entitles fiduciaries to limit their disclosures and advice to those facts that concern real economic values").

III.    **Plaintiffs' Co-Fiduciary, Duty To Monitor, And *Respondeat Superior* Claims Must Be Dismissed.**

A.    **Plaintiffs' Co-Fiduciary Claim Must Be Dismissed Because There Is Nothing In Plaintiffs' Complaint Suggesting That The KV Defendants Had Knowledge Of Any Alleged Fiduciary Violations By Other Alleged Fiduciaries.**

"The claim of co-fiduciary liability . . . must co-exist with some breach by a fiduciary of their duties under ERISA." *In re Bausch & Lomb Inc. ERISA Litig.*, 2008 WL 5234281, at *11; 29 U.S.C. § 1105(a) ("a fiduciary with respect to a plan shall be liable *for a breach of fiduciary responsibility of another fiduciary* with respect to the same plan in the following circumstances . . ." (emphasis added)).  Because the Complaint does not properly allege any primary breach, *see supra* Sections I and II, the co-fiduciary claim must be dismissed.  *Radian Group*, 2009 WL 2137241, at *24.

But even if plaintiffs' Complaint did properly allege a primary breach against one or more defendants, the co-fiduciary claim would still fail because facts satisfying the statutory requirements for co-fiduciary liability have not been alleged.  ERISA co-fiduciary liability only attaches in three situations:  (1) if the fiduciary knowingly participates in or conceals another fiduciary's breach; (2) the fiduciary's own breach enables the breach by the other fiduciary; or (3) the fiduciary has knowledge of another fiduciary's breach and does not take reasonable efforts to remedy the breach.  29 U.S.C. § 1105(a).  The Complaint does not allege any facts, let alone facts that would plausibly suggest that any of the KV Defendants has co-fiduciary liability.  Rather, the Complaint merely parrots the statutory language and states without more that "all Defendants knew that the other Defendants had breached their duties."  Compl. ¶ 186.  Such generalized and conclusory allegations do nothing "to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555; *see also In re Providian Financial Corp. ERISA Litig.*, 2002

WL 31785044, at *1 (rejecting allegations failing to differentiate among defendants); *In re McKesson HBOC, Inc. ERISA Litig.*, 2002 WL 31431588, at *16 (same).

> **B.    Plaintiffs' Duty To Monitor Claim Must Be Dismissed Because Plaintiffs Have Not Properly Alleged A Primary Breach Of Fiduciary Duty Or Any Delegation Of Fiduciary Duties.**

In the absence of a properly alleged primary breach of fiduciary duty, a duty to monitor claim cannot withstand a motion to dismiss. *In re Bausch & Lomb Inc. ERISA Litig.*, 2008 WL 5234281, at *10 ("Because the plaintiffs' Complaint fails to state a claim for breach of fiduciary duty by any of the Plan's fiduciaries, the plaintiffs' claims for failing to adequately monitor these fiduciaries must also be dismissed."). Further, to state a claim for breach of the duty to monitor, plaintiffs must allege facts that "(1) [the] entity charged with the breach was responsible for appointing and removing fiduciaries responsible for fiduciary conduct in question; and (2) [the] entity charged with this duty to monitor also had knowledge of or participated in fiduciary breaches by the appointees." *Id.* "[C]ourts have properly taken a restrictive view of the scope of this duty and its attendant potential for liability." *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1466 n.10 (4th Cir. 1996).

In support of their duty to monitor claim, plaintiffs assert in the Complaint that "[f]iduciaries who are responsible for appointing other fiduciaries have a concomitant duty to monitor *those fiduciaries they appoint*." Compl. ¶ 155 (emphasis added). Although the Complaint says that KV had the authority to appoint fiduciaries, Compl. ¶ 33, it also states that "the Company has made no formal delegations of ERISA fiduciary responsibilities as Plan Administrator." Compl. ¶ 41. As the Plan Administrator and only fiduciary, then, the Company had no other appointed fiduciaries to monitor.

**C.    Plaintiffs' *Respondeat Superior* Claim Must Be Dismissed Because Plaintiffs Have Not Properly Alleged A Primary Breach Of Fiduciary Duty And Because ERISA Implies No Such Cause Of Action.**

Plaintiffs allege that "KV is also liable for breaches of duty by other Defendants and for losses caused by them, under the law of agency, including principles of vicarious liability and *respondeat superior*." Compl. ¶ 180. A defendant "cannot vicariously be subject to liability which does not exist," however, and the Complaint has not alleged facts plausibly supporting any primary breach of any fiduciary duties. *In re Bausch & Lomb Inc. ERISA Litig.*, 2008 WL 5234281, at *11 (dismissing *respondeat superior* claim in the absence of primary liability).

Perhaps more importantly:

> [T]here is no reason to recognize an implied ERISA cause of action under the doctrine of *respondeat superior,* in light of the Supreme Court's unwillingness to infer causes of action in the ERISA context, since the statute's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02-8853, 2005 WL 563166, at *4 n.5 (S.D.N.Y. Mar. 10, 2005) (internal quotation marks omitted).

Finally, although *respondeat superior* claims under ERISA have been entertained in certain circumstances, courts have recognized that "[f]or respondeat superior liability to attach, the employee must have breached his duty to a third party while acting in the course and scope of his employment" as an agent of the employer as plan sponsor rather than as an agent for the employer as fiduciary. *Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assur. Soc'y*, 841 F.2d 658, 665 (5th Cir. 1988). And under ERISA, fiduciaries "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), and thus do not serve as an agent of the employer's interests. This is consistent with ERISA's "two-hat" doctrine, which provides that an employee may serve as both an employee and a fiduciary, but wears different hats in those roles. *Pegram*, 530 U.S. at 225.

To establish *respondeat superior* liability in these circumstances, plaintiffs must at least allege that the Individual Defendants, when wearing their fiduciary hats, were acting on behalf of KV in its corporate role.  Here, plaintiffs have not alleged any facts that would plausibly suggest that the fiduciary activities of the Individual Defendants were controlled by KV in its capacity as Plan sponsor, or that the Individual Defendants, whatever their other failings allegedly might be, were not acting in the exclusive interests of the Plan and its participants.

## CONCLUSION

For all of the foregoing reasons, the KV Defendants respectfully request that the Court dismiss plaintiffs' Complaint.

Respectfully Submitted,

Dated:  August 25, 2009

/s/ Robert P. Berry
Robert P. Berry, # 200680
BERRY & MAXSON, LLC
16150 Main Circle Drive, Suite 120
St. Louis, Missouri 63017
Telephone:  (314) 480-5882
Facsimile:  (314) 480-5884
rberry@berrymaxson.com

William J. Kilberg, P.C., *pro hac vice pending*
Paul Blankenstein, *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue N.W.
Washington, D.C.  20036
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539

*Attorneys for Defendants KV Pharmaceutical Company, Melissa Hughes, Gerald R. Mitchell, and Mary Ann Tickner*

I certify that a true copy of the foregoing was served electronically via the CM/ECF system on all counsel of record on this 25th day of August, 2009.

/s/ Robert P. Berry