**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| HAROLD S. CROCKER, JR. and ANNA BODNAR, on behalf of themselves and others similarly situated, | Civil Action No.:  4:09-cv-0198-CEJ |
| Plaintiffs, | Judge Carol E. Jackson |
| v. | Class Action |
| KV PHARMACEUTICAL, MARC S. HERMELIN, RONALD J. KANTERMAN, DAVID S. HERMELIN, MELISSA HUGHES, RICHARD H. CHIBNALL, GERALD R. MITCHELL, MARY ANN TICKNER, , and DOES 1-20, | |
| Defendant. | |

Robert I. Harwood
Peter W. Overs, Jr.
**Harwood Feffer LLP**
488 Madison Avenue, 8th Floor
New York, NY 10022
(212) 935-7400
(212) 753-3630
*Interim Co-Lead Counsel*

Paul J. D'Agrosa
**Wolf and D'Agrosa**
7710 Carondelet Avenue, Suite 200
Clayton, MO 63105
Tel. (314) 725-8019
Fax. (314) 725-8443
*Interim Co-Liason Counsel*

Mark Potashnick, E.D.Mo. #35970
S. Sheldon Weinhaus, E.D.Mo. #4670
**Weinhaus & Potashnick**
11500 Olive Blvd., Suite 133
St. Louis, MO 61341
Tel.: (314) 997-9150
Fax: (313) 997-9170
*Interim Co-Liason Counsel*

Ellen Doyle
John Stember
Pamina Ewing
Stephen Pincus
**Stember Feinstein Doyle & Payne, LLC**
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, P A 15219
Tel: (412) 281-8400
Fax:(412) 281-1007
*Interim Co-Lead Counsel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES

I.      INTRODUCTION ...................................................................................................1

II.     THE FACTS ALLEGED IN THE COMPLAINT ................................................2

        A.      The Parties .................................................................................................2

        C.      The Plan .....................................................................................................5

        D.      Defendants' Conduct .................................................................................6

III.    PLAINTIFFS' CLAIMS .....................................................................................15

IV.     ARGUMENT .......................................................................................................17

        A.      General ERISA Principles .......................................................................17

        B.      The Complaint Alleges That The Individual Defendants Were ERISA
                Fiduciaries ...............................................................................................18

                1.      Standards ......................................................................................18

                2.      Determination not appropriate on a motion to dismiss ...............21

                3.      Plaintiffs have adequately alleged Defendants' fiduciary status ..............25

        C.      Count I: Plaintiffs Allege An Actionable Breach Of Fiduciary Duties ...............29

                1.      No presumption of prudence applies here ...................................29

                2.      Even if presumption applies, it does not form the basis for dismissal .....37

        D.      Defendants' § 404(c) Affirmative Defense Does Not Bar Plaintiffs' Claims. .....39

        E.      Count II:  The Complaint Sufficiently Alleges Defendants Breached Their Duty
                Of Loyalty By Failing To Provide Information Material To Participants'
                Elections. ................................................................................................43

        F.      Count III: Plaintiffs Have Stated A Claim For Breach Of Duty to Monitor .........47

        G.      Count IV: Plaintiffs Have Stated Claims For Co-Fiduciary Breach. ..................49

# TABLE OF AUTHORITIES

## Cases

*Alvidres v. Countrywide Financial Corporation*, 07-05810 (C.D.Ca.) .......................................37

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)........................................................21, 24, 36

*Baker v. Kingsley*, 387 F.3d 649 (7th Cir.2004) ......................................................48

*Beam v. HSBC Band USA*, No. 02-CV-0682 (W.D.N.Y. 2005) ................................................38

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................passim

*Blatt v. Marshall & Lassman*, 812 F.2d 810 (2d Cir. 1987)................................19, 20

*Board of Trustees of Bricklayers & Allied Craftsmen Local 6 Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270 (3d Cir. 2001) ................................................................22

*Bunch v. W.R. Grace & Co.*, 555 F.3d 1 (1st Cir. 2009)................................................30

*Chicago Bd. Options Exch., Inc. v. Conn. Gen. Life Ins. Co.*, 713 F.2d 254 (7th Cir. 1983) .......19

*Cokenour v. Household Intern., Inc.*, No. 02-7921 (N.D.Ill. 2004)................................38

*Confer v. Custom Eng'r Co.*, 952 F.2d 34 (3d Cir. 1991)................................................20, 27

*Consolidated Beef Indus. v. New York Life Ins. Co.*, 949 F.2d 960 (8th Cir. 1991)...................18

*Coyne & Delany Co. v. Selman*, 98 F.3d 1457 (4th Cir. 1996) ..............................................21, 48

*Croucher v. MidCon Corp Employee Stock Ownership Plan*, No. 98-4159 (S.D.Tex.)..............38

*Custer v. Sweeney*, 89 F.3d 1156 (4th Cir. 1996) ..........................................................20

*Darcangelo v. Verizon Communications Inc.*, 292 F.3d 181 (4th Cir. 2002) ............................20

*DiFelice v. US Airways*, 397 F.Supp.2d 758 (E.D.Va. 2005) ..................................................31, 42

*Edgar v. Avaya, Inc.*, 503 F.3d 340 (3d Cir. 2007)................................................31, 32

*Evans v. Akers*, No. 04-11380 (D.Mass. 2009) ...........................................................38

*Fernandez v. K-M Industries Holding Co., Inc.*, No. 06-7339 (N.D.Ca. 2009) .........................38

*Furstenau v. AT&T Corp.*, No. 02-5409 (D.N.J. 2005) ....................................................38

*Graden v Conexant Systems, Inc.*, No. 05-0695 (D.N.J.)................................................38

*Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009) ................................................................. 41

*In re ADC Telecom, Inc. ERISA Litigation.*, 2004 WL 1683144 (D.Minn., July 26, 2004) .. 19, 34, 45, 48

*In re AEP ERISA Litigation*, 327 F.Supp.2d 812 (S.D.Ohio 2004) ........................................ 36, 39

*In re AIG ERISA Litigation*, 04-9387 (S.D.N.Y. 2008) ............................................................... 38

*In re AOL Time Warner ERISA Litigation*, 2006 WL 2789862 (S.D.N.Y. 2006) ...................... 37

*In re Aquila, Inc. ERISA Litigation*, 04-865 (W.D.Mo. 2007) ..................................................... 38

*In re Bristol- Myers Squibb Co. ERISA Litigation*, No. 02-10129 (S.D.N.Y. 2005) ................... 38

*In re Broadwing, Inc. ERISA Litigation*, 252 F.R.D. 369 (S.D.Ohio 2006) .............................. 38

*In re Cardinal Health, Inc. ERISA Litigation*, 422 F.Supp.2d 1002 (S.D.Ohio 2006) ............... 35

*In re Cardinal Health, Inc. ERISA Litigation*, No. 04-643 (S.D.Ohio 2007) .............................. 38

*In re CMS Energy ERISA Litigation*, 312 F.Supp.2d 898 (E.D.Mich. 2004) ............ 22, 27, 36, 38

*In re Delphi Corp. Securities, Derivative & "ERISA" Litigation*, 248 F.R.D. 483 (E.D.Mich. 2008) ................................................................................................................................. 38

*In re Diebold ERISA Litigation*, 2008 WL 2225712 (N.D. Ohio May 28, 2008) ................. 24, 35

*In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 228 F.R.D. 541 (S.D.Tex. 2005) ......................................................................................................................... 37, 40, 42

*In re Ford Motor Co. ERISA Litigation*, 590 F.Supp.2d 883 (E.D.Mich. 2008) ........................ 33

*In re Fruehauf Trailer Corp.*, 250 B.R. 168 (D.Del 2000) ......................................................... 22

*In re General Motors ERISA Litigation*, 2006 WL 897444 (E.D.Mich. Apr. 6, 2006) ............... 35

*In re General Motors ERISA Litigation*, No. 05-71085 (E.D.Mich. 2008) ................................. 38

*In re Global Crossing Securities and "ERISA" Litigation*, 225 F.R.D. 436 (S.D.N.Y. 2004) ..... 37

*In re Goodyear*, 438 F.Supp.2d 783 (N.D.Ohio 2006) ...................................................... 33, 35, 38

*In re Healthsouth Corp. ERISA Litigation*, 2006 WL 2109484 (N.D.Ala. June 28, 2006) .......... 38

*In re Honeywell International ERISA Litigation*, No. 03-1214 (D.N.J. 2005) ............................ 38

*In re Ikon Office Solutions, Inc. Securities Litigation*, 86 F.Supp.2d 481 (E.D.Pa. 2000) ........... 23

*In re Lucent Technologies, Inc., Securities Litigation*, 327 F.Supp.2d 426 (D.N.J. 2004)..........37

*In re Marsh Erisa Litigation*, 2006 WL 3706169 (S.D.N.Y. Dec 14, 2006) ..............................36

*In re McKesson HBOC, Inc. ERISA Litigation*, 00-20030 (N.D.Ca. 2005) ...............................38

*In re Merck & Co., Inc.*, 2009 WL 2834792 (D.N.J. Sept. 1, 2009)......................................21, 36

*In re Merrill Lynch & Co., Inc., Securities, Derivative & "ERISA" Litigation*, No. MDL 1933 (U.S.Jud.Pan.Mult.Lit. 2009)...............................................................................................37

*In re Polaroid ERISA Litigation*, 362 F.Supp.2d 461 (S.D.N.Y. 2005) ...............................36, 38

*In re Providian Financial Corp.*, 2003 WL 22005019 (N.D.Cal. June 30, 2003) ......................38

*In re Qwest Savings and Inv. Plan Erisa Litigation*, 2007 WL 295545 (D.Colo. 2007).............38

*In re RadioShack Corp. ERISA Litigation*, 547 F.Supp.2d 606 (N.D.Tex. 2008)......................40

*In re Royal Dutch/Shell Transport ERISA Litigation*, 04-1398 (D.N.J. 2006)...........................37

*In re Schering-Plough Corp. ERISA Litigation*, 420 F.3d 231 (3d Cir. 2005)...........................31

*In re Schering-Plough Corp.*, 2007 WL 2374989  (D.N.J. Aug. 15, 2007)...........................21, 25

*In re Sears, Roebuck & Co. ERISA Litigation*, 2006 WL 1593902 (N.D.Ill. 2006)....................38

*In re Sprint Corp. ERISA Litigation*, 443 F.Supp.2d 1249 (D.Kan. 2006) ................................38

*In re State Street Bank and Co. ERISA Litigation*, No.: 07-8488 (S.D.N.Y. 2007) ....................37

*In re Syncor ERISA Litigation*, 516 F.3d 1095 (9th Cir. 2008)..........................................30, 33

*In re Unisys Corp. Retiree Med. Ben. ERISA Litigation*, 57 F.3d 1255 (3d Cir. 1995)..........19, 42

*In re Westar Energy, Inc., ERISA Litigation*, 2005 WL 2403832, 18 (D.Kan. Sept. 29, 2005) ..31, 38

*In re Williams Companies ERISA Litigation*, No. 02-153 et al (N.D.Okla. 2005)......................38

*In re Xcel Energy, Inc., Securities, Derivative & ERISA Litigation*, 312 F.Supp.2d 1165 (D.Minn. 2004) ..................................................................................................... 19, 35, 38, 46

*In re Xerox Corp. ERISA Litigation*, 2008 WL 918539 (D. Conn. Mar. 31, 2008) ... 20, 25, 38, 42

*Jones v. NovaStar Financial, Inc.*, 2009 WL 331553 (W.D.Mo. Feb. 11, 2009)........................34

*Jordan v. Fed. Express Corp.*, 116 F.3d 1005 (3d Cir.1997)......................................................46

*Kayes v. Pac. Lumber Co.*, 51 F.3d 1449 (9th Cir. 1995)....................................................20, 22

*Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. 2008)....................................32

*Kling v. Fidelity Management Trust Co.*, No. 01-11939 (D.Mass 2006)....................................38

*Kolar v. Rite Aid Corp.*, 2003 WL 1257272 (E.D.Pa. Mar. 11, 2003) ....................................38

*Kramer v. Smith Barney*, 80 F.3d 1080  (5th Cir. 1996)....................................22

*Kuper v. Iovenko*, 66 F.2d 1447 (6th Cir. 1995)....................................passim

*Lalonde v. Textron, Inc.*, 270 F.Supp.2d 272 (D.R.I. 2003)....................................22

*LaLonde v. Textron, Inc.*, 369 F.3d 1  (1st Cir. 2004) ....................................30, 33, 36

*LaRue v. DeWolff, Boberg & Assocs., Inc.*, 128 S.Ct. 1020 (2008) ....................................18

*Lewis v. El Paso Corporation*, No. 02-4860 (S.D.Tex. 2009) ....................................38

*Liss v. Smith*, 991 F.Supp. 278 (S.D.N.Y. 1998)....................................48

*Lopresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997)....................................19

*Lowen v. Tower Asset Mgmt., Inc.*, 653 F. Supp. 1542 (S.D.N.Y. 1986) ....................................19

*Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 12009 (2d Cir. 1987)....................................19

*Martin v. Feilin*, 965 F.2d at 660 (8th Cir. 1992)....................................48

*Mason Tenders Dist. Counsel Pension Fund v. Messera*, 958 F.Supp. 869 (S.D.N.Y. 1997)......20

*Mehling v. New York Life Ins. Co.*, 163 F.Supp.2d 502 (E.D.Pa. 2001)....................................48

*Mertens v. Hewitt Assoc.*, 508 U.S. 248 (1993)....................................18, 20, 27

*Morrison v. MoneyGram International, Inc.*, 607 F.Supp.2d 1033 (D.Minn. 2009)..............32, 44

*Olson v. E.F. Hutton & Co., Inc.*, 957 F.2d 622 (8th Cir. 1992) ....................................18, 21

*Overby v. Tyco International Ltd.*, 02-1357 (D.N.H.) ....................................37

*Page v. Impac Mortgage Holdings, Inc.*, No. 87-1447, 2009 WL 890722 (C.D.Cal. Mar. 31, 2009)....................................43

*Pietrangelo v. NUI Corp.*, 2005 WL 1703200  (D.N.J. July 20, 2005) ....................................25

*Presley v. Carter Hawley Hale Profit Sharing Plan*, 2000 WL 16437 (N.D.Cal. Jan. 7, 2000)...38

*Rankin v. Rots*, 278 F.Supp.2d 853 (E.D.Mich. 2003)....................................passim

*Rogers v. Baxter Int'l Inc.*, 417 F.Supp.2d 974 (N.D.Ill. 2006) ................................................28

*Shanehchian v. Macy's, Inc.*, 2009 WL 2524562 (S.D.Ohio Aug. 14, 2009) ................29, 35, 45

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983) ....................................................................17

*Shea v. Esensten*, 107 F.3d 625 (8th Cir.1997) ..........................................................................46

*Sherrill v. Fed.-Mogul Corp. Ret. Programs Comm.*, 413 F.Supp.2d 842 (E.D.Mich. 2006) 35, 38

*Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157 (M.D.N.C. 2007) ...........................38

*Spivey v. Southern Co.*, No. 04-1912 (N.D.Ga. 2007) ................................................................38

*Summers v. State Street Bank & Trust, Co.*, 453 F.3d 404 (7th Cir. 2006) ................................33

*Tussey v. ABB, Inc.*, 2008 WL 379666 (W.D.Mo. Feb. 11, 2008) ...........................18, 22, 24, 41

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) .........................................................................44, 46

*Vivien v. Worldcom*, 2002 WL 31640557 (N.D.Ca. July 26, 2002) ...........................................40

*Woods v. Southern Co.*, 396 F.Supp.2d 1351 (N.D.Ga. 2005) .............................................35, 41

*Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004) ...............................29, 33

*Young v. Principal Financial Group, Inc.*, 547 F.Supp.2d 965 (S.D.Iowa 2008) ............18, 21, 24

*Zilhaver v. UnitedHealth Group, Inc.*, 2009 WL 2581387 (D.Minn. 2009) ...............................38

**Statutes**

21 U.S.C. § 331 ...........................................................................................................................14

29 U.S.C. § 1001 ..............................................................................................................18, 33, 34

29 U.S.C. § 1002 ...................................................................................................................passim

29 U.S.C. § 1104 ...................................................................................................................passim

29 U.S.C. § 1105 ...................................................................................................................16, 49

29 U.S.C. § 1107 ...........................................................................................................................5

29 U.S.C. § 1109 .............................................................................................................1, 18, 40

29 U.S.C. §1104 ..........................................................................................................................49

29 U.S.C. § 1132 ...........................................................................................................................1

**Rules**

Fed.R.Civ.P. 12...................................................................................................1

**Regulations**

21 C.F.R. § 211...........................................................................................13, 14

29 C.F.R. § 2509..............................................................................................48

29 C.F.R. § 2550..............................................................................................39

## I.    INTRODUCTION

KV Pharmaceutical Company ("KV" or "Company") manufactures and markets prescription drug products.  This class action seeks to recover losses to KV's Fifth Restated Profit Sharing Plan and Trust ("Plan") arising from the imprudent acquisition and investment in KV common stock by the Plan's fiduciaries.  Plan fiduciaries caused the Plan to buy and hold KV shares at the same time that they were misrepresenting the state of KV's manufacturing processes and concealing KV's violations of Food and Drug Administration ("FDA") regulations.  As a result, the Plan purchased shares at inflated prices and then lost millions as the truth emerged.  Defendant fiduciaries knew or should have known that it was not prudent to continue to acquire and invest in KV stock since they were well aware that KV's books and records neither reported nor disclosed KV's enormous manufacturing and financial problems.

This class action is brought pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), including §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2), and alleges violations of ERISA §§ 404(a) and 405(a).  Harold S. Crocker, Jr. and Anna Bodnar seek to represent all participants in or beneficiaries of the Plan (collectively, "Participants") for whose accounts the fiduciaries invested in KV Class A and/or Class B common stock ("KV Stock" or "Company Stock") between February 2, 2003 and the present (the "Class Period").

Although the vast weight of case authority counsels against dismissal on the theories they espouse, Defendants have filed five motions to dismiss Plaintiffs' First Amended Complaint ("Complaint" or "CAC") under Fed.R.Civ.P. 12(b)(6).  Plaintiffs herein respond to all five motions.  Defendants' arguments do not withstand scrutiny and are premature as to the issue of fiduciary status given the inherently fact-dependent nature of this inquiry.  Further, courts

routinely deny motions to dismiss based on a presumption of prudence that Defendants seek to

apply, and just as routinely deny such motions based on the ERISA § 404(c) affirmative defense

that Defendants also proffer.  In sum, since Plaintiffs have sufficiently alleged claims on which

relief may be granted, Defendants' motions should be denied and discovery should proceed.

## II.    FACTS ALLEGED IN THE COMPLAINT

### A.    The Parties

**Plaintiff Crocker** has worked for KV for more than 23 years and **Plaintiff Bodnar** has

worked for KV for more than 10 years.  CAC ¶¶ 7-8.  Both are Plan Participants.  *Id.*

**Defendant KV**, the Plan Sponsor, is a specialty pharmaceutical company that develops,

manufactures, acquires, and markets branded and generic/non-branded prescription

pharmaceutical products.  *Id.* ¶ 9.  According to the Summary Plan Description ("SPD"), KV is

the Plan Administrator.  SPD Art. X (KVE 000006).[1]  Similarly, the Adoption Agreement Article

1.01 "Plan Information" "(c) Administrator Name (if not employer)" is left blank to signify that

KV is the Plan Administrator.  KVE 000095.  Article 19.01 of "The Fidelity Basic Plan

Document No. 07" ("2002 Plan Document") (copy attached as "Exhibit 2"), which is the plan

adopted by the Adoption Agreement, sets forth KV's obligations as the Plan Administrator:

> <u>**Powers and Responsibilities of the Administrator**</u>.  Except to the extent such
> authority is delegated to the Investment Professional as agent for the Employer, as
> provided in § 19.02, *<u>the Administrator has the full power and the full responsibility to
> administer the Plan in all of its details, subject, however, to the requirements of
> ERISA.</u>*  In addition to the powers and authorities expressly conferred upon it in the
> Plan, the Administrator shall have all such powers and authorities as may be
> necessary to carry out the provisions of the Plan, including the discretionary power
> and authority to interpret and construe the provisions of the Plan, such interpretation
> to be final and conclusive on all persons claiming benefits under the Plan; to make
> benefit determinations; to utilize the correction programs or systems established by the
> Internal Revenue Service (such as the Employee Plans Compliance and Resolution
> System) or the Department of Labor; and to resolve any disputes arising under the
> Plan. The Administrator may, by written instrument, allocate and delegate its fiduciary

---

[1] Defendants KV, Hughes, Mitchell, and Tichner submitted this SPD at Dkt. #89-2.

responsibilities in accordance with ERISA § 405, including allocation of such
responsibilities to an administrative committee formed to administer the Plan.

KV 000282 (emphasis added).

Regarding KV's obligation to Participants and concerning such Participants' option to
invest in KV Stock through the Plan, Article 20.12 of the Plan Document, entitled Employer
Stock Investment Option, explains, in pertinent part:

> **(b) Fiduciary Duty of Named Fiduciary.** The Administrator or any person
> designated by the Administrator as a named fiduciary under § 19.01 (the "named
> fiduciary") **shall continuously monitor the suitability under the fiduciary duty
> rules of ERISA § 404(a)(l) (as modified by ER1SA § 404(a)(2)) of acquiring and
> holding Employer Stock.**

KV 000288 (emphasis added).

Defendant **Marc S. Hermelin** served as Chairman of the KV Board ("Board") as well as
Chief Executive Officer ("CEO") from 1973 until December 2008, when he was terminated for
cause.  CAC ¶ 10.  He continues to serve on the Board.  Mr. Hermelin served as an Officer and
Director during the relevant Class Period.  *Id.*  According to Senior Executives Code of Ethics,
as CEO, Hermelin was required to:

> Produce full, fair, accurate, timely, and understandable disclosure in reports and
> documents that the Company or its subsidiaries files with, or submits to, the [SEC]
> and other regulators and in other public communications made by the Company of
> its subsidiaries; Comply with applicable governmental laws, rules, and regulations,
> as well as the rules and regulations of self-regulatory organizations with which the
> Company, its subsidiaries, or its securities are associated; and Promptly report any
> possible violations of KV's Code of Ethics to the Corporate Compliance Officer.

*Id.*

Defendant **Ronald Kanterman** has served on the Board since March 26, 2008, and as
Vice President, Chief Financial Officer ("CFO"), Treasurer, and Assistant Secretary since March
23, 2008.  *Id.* ¶ 11.  Mr. Kanterman has been a KV Vice President since he joined the Company
in 2004, and served as a Director and Officer during the relevant Class Period.

3

Defendant **David S. Hermelin s**erved as a Director and Vice President until he resigned in December 2008. *Id.* ¶ 12. He continues to serve on the Board, and served as a Director and Officer during the relevant Class Period. *Id.*

Defendant **Gerald R. Mitchell** served as KV's CFO and a Board member during the Class Period. *Id.* ¶ 13. Mr. Mitchell signed the 11-Ks filed September 27, 2006 and September 27, 2007 on behalf of the Trustees or other persons who administer the Plan. *Id.*

Defendant **Richard Chibnall** has been Vice President, Finance and Chief Accounting Officer of KV since June 2005, and served as Vice President, Finance of KV from February 2000 through June 2005. *Id.* ¶ 15. Mr. Chibnall signed the 11-K filed on September 30, 2008 on behalf of the Trustees or other persons who administer the Plan. *Id.*

Defendant **Melissa Hughes** has been KV's Director of Human Resources since at least January 2006. *Id.* ¶ 16.

Defendant **Mary Ann Tichner** is or was a KV employee. *Id.* ¶ 17.

On information and belief, Defendants Kanterman, Mitchell, Chibnall, Hughes, and Tichner ("Committee Defendants") were at various times during the Class Period members of an "*ad hoc*" committee of KV executives and employees that administers the Plan and serves as a Plan fiduciary that exercises authority and control over Plan assets and/or manages and administers the Plan. *Id.* ¶¶ 11, 13, 15-17.

Throughout the Class Period, the Director Defendants (Marc Hermelin, David Hermelin, Kanterman, and Mitchell), in their capacities as Board members, were Plan fiduciaries within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that they exercised discretionary authority or discretionary control respecting Plan management, exercised authority or control respecting management or disposition of Plan assets, and/or had

discretionary authority or discretionary responsibility in Plan administration. *Id.* ¶ 40. Director Defendants also were Plan fiduciaries because they issued Plan communications to Participants by signing SEC filings that were specifically incorporated into Plan documents. *Id.* Indeed, Director Defendants signed the Form 10-Ks filed with the SEC on March 26, 2008 and June 27, 2008 on behalf of KV in their capacities as Directors. Defendants Marc Hermelin and Kanterman also signed 10-Ks on KV's behalf. *Id.* Further, because KV is the Plan Administrator but has made no formal delegations of ERISA fiduciary responsibilities, the Board is responsible for carrying out the duties of Plan Administrator. CAC ¶ 41.

B.    **The Plan**

The Plan is an "employee pension benefit plan" within the meaning §§ 3(3) and 3(2)(A) of ERISA, 29 U.S.C. §§ 1002(2)(3) and 1002(2)(A), and a "defined contribution plan" or eligible "individual account plan" ("EIAP") within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), and ERISA § 407(d)(3), 29 U.S.C. § 1107(d)(3), in that separate individual Plan accounts are maintained for each participant based on the amount contributed to each participant's account. *Id.* ¶¶ 21-22. At all relevant times, the Plan was maintained under what Plaintiffs herein refer to as the 2002 Plan Document. *Id.* ¶ 24. The Plan does not mandate investment in KV Stock.

Full-time employees are eligible to participate in both Deferral Contribution and Matching Employer Contribution Plan benefits. *Id.* ¶ 27 (citing 2002 Plan Document § 1.04(b)). CAC ¶ 28 (citing 2002 Plan Document § 1.123(b)). KV matches 50% of each Participant's contribution, and Participants become fully vested in the matching contributions gradually over a six-year period. *Id.* ¶ 29 (citing 2002 Plan Document § 1.10 (a)(1)(C)(i)). In addition, the Company may also make a profit sharing contribution on a discretionary basis on behalf of all

eligible Plan Participants, whether or not Participants make an elective contribution for the Plan year. CAC ¶ 30 (citing 2002 Plan Document § 1.11(b) and attached Amendment thereto).

There are approximately 27 investment options. CAC ¶ 31 (citing Appendix A to the 2002 Plan Document, "Mutual Fund Options"). While one such option is the KV A Stock Fund, *id.*, the Plan does not mandate such an option. According to the Plan's 2008 Form 5500, approximately 22% of the Plan's total assets were invested in KV Stock. CAC ¶ 31. According to the Company's 2008 Form 11-K, as of March 31, 2008, the Plan held 703,582 shares of KV common stock – Class A and 157,328 shares of KV common stock – Class B. *Id.*

## C.    Defendants' Conduct

KV has been the subject of various government actions since the mid-1990s. *Id.* ¶ 47. After the FDA instituted a civil seizure action involving the Company's solid oral dosage form drug products, KV entered into a 1993 Consent Decree under which it is required to adopt current Good Manufacturing Processes ("cGMP"). *Id.* ¶¶ 48-49. In 1995, the Company pled guilty to four misdemeanors involving failure to file required reports and inappropriate shelf life labels; KV settled another investigation by a misdemeanor plea agreement. *Id.* ¶¶ 51-52. As a result of the FDA's enforcement actions, KV informed investors that it had "implemented new programs to ensure full compliance with all of the FDA's regulatory requirements and their increasingly vigorous interpretation by the government." *Id.* ¶ 53. Despite KV's assurances, the FDA continued to discover violations, issuing formal Warning Letters in 2000 and 2002, and eight more Letters during the Class Period. *Id.* ¶¶ 45, 55-58.

Throughout the Class Period, KV disseminated false and misleading statements regarding its compliance with federal regulations that govern the manufacture and marketing of generic drug products as well as KV's current and future financial prospects. *Id.* ¶ 62. Many of these

6

inaccurate statements were made in Forms 10-Ks and 10-Qs that were signed by Defendants

Marc Hermelin (as Principal Executive Officer), Kanterman (as Principal Financial

Officer), and Chibnall (as Principal Accounting Officer), were certified by Marc Hermelin

and Kanterman in accordance with the Sarbanes-Oxley Act of 2002, and were incorporated by

reference into the Plan documents.  *Id.* ¶ 63.

On October 31, 2006, KV announced that a suit filed against it in St. Louis City Circuit

Court alleged that stock option grants Officers and Directors issued between 1995 and 2002 had

been improperly dated.  *Id.* ¶ 65.  After an investigation, KV announced that its accounting for

most of the stock option grants during FY 1996 through FY 2006 was not in accord with

Generally Accepted Accounting Principles ("GAAP").  *Id.* ¶ 66.  The Company also announced:

> Accordingly, the previously issued consolidated financial statements of the
> Company for the fiscal years ending March 31, 1996 through 2006 and the quarter
> ended June 30, 2006 should no longer be relied upon. **In addition,
> management's assessment of internal control over financial reporting, and
> the auditor's report on internal control over financial reporting for the year
> ended March 31, 2006 should also no longer be relied upon.** In addition, the
> Company's earnings and press releases and other communications should no
> longer be relied upon to the extent they relate to these financial statements.

*Id.* ¶ 68.

On February 15, 2008, KV announced that it "anticipates its 13th consecutive

year of record revenues in fiscal 2008" and that "[t]he financial condition of the Company

remains strong."  *Id.* ¶¶ 79-80.  That day, KV Stock closed at $26.69 per share.  *Id.* ¶ 73.

On February 27, 2008, Defendant Marc Hermelin declared that "KV enjoyed a solid

third quarter...With continuing momentum in our branded business...we expect to

capitalize on our performance momentum during the remainder of fiscal 2008 and beyond"

and touted the "continued acceleration of revenue and profits at both the Company's branded

drug subsidiary Ther-Rx Corporation, and generic/non-branded drug subsidiary ETHEX

Corporation." *Id.* ¶¶ 74-75. That day, KV common stock closed at $25.27 per share.

On March 26, 2008, KV belatedly filed its Form 10-K with the SEC for the period ending

March 31, 2007 ("2007 10-K"). CAC ¶ 78. Therein, KV disclosed that the SEC was conducting

a formal investigation of its improper stock-option granting practices. *Id.* ¶ 79. KV also stated:

"WE HAVE MATERIAL WEAKNESSES IN INTERNAL CONTROL OVER FINANCIAL

REPORTING AND CANNOT ASSURE YOU THAT ADDITIONAL MATERIAL

WEAKNESSES WILL NOT BE IDENTIFIED IN THE FUTURE." *Id.* ¶ 80. The Company

explained in pertinent part as follows:

> ...significant deficiencies or material weaknesses in our internal control over
> financial reporting may be identified in the future. Any failure to maintain or
> implement required new or improved controls, or any difficulties we encounter in
> their implementation, could result in significant deficiencies or material
> weaknesses, cause us to fail to timely meet our periodic reporting obligations, or
> result in material misstatements in our financial statements. Any such failure
> could also adversely affect the results of periodic management evaluations and
> annual auditor attestation reports regarding disclosure controls and the
> effectiveness of our internal control over financial reporting required under § 404
> of the Sarbanes-Oxley Act of 2002 and the rules promulgated thereunder. If our
> internal control over financial reporting or disclosure controls and procedures are
> not effective, there may be errors in our financial statements that could require a
> restatement or our filings may not be timely and investors may lose confidence in
> our reported financial information, which could lead to a decline in our stock
> price.

*Id.* ¶ 81.

> On June 16, 2008, Defendant Marc Hermelin stated:
>
> Overall, we believe KV is well positioned in both business for future growth
> and profitability. We remain positive about the Company's overall
> prospects from existing products as well as anticipated new product
> introductions.

*Id.* ¶ 83. In the same press release, KV stated: "We believe the financial condition of

the Company is solid." *Id.* ¶ 85.

In June 25, 2008 filings, KV announced that the FDA had initiated enforcement actions against the Company in March 2008 that involved placing a hold on certain inventory, and that it was inititating a product recall.  *Id.* ¶ 89-90.  KV Stock closed that day at $19.21.  *Id.* ¶ 91.

KV's 10-K filed June 26, 2008 stated: "[t]he consolidated financial statements that we file with the SEC are prepared in accordance with GAAP."  *Id.* ¶ 94.  The 10-K stated that KV's manufacturing procedures and operations conformed to FDA requirements and guidelines, and:

**We believe that all of our facilities are in material compliance with applicable regulatory requirements.**

*Id.* ¶ 95.  KV made similar statements asserting that the Company was in material compliance with cGMP in its 2004, 2005, and 2006 10-Ks.  *Id.*

On July 29, 2008, federal agents seized $24.2 million worth of unapproved drugs from KV.  *Id.* ¶ 96.  During the seizure, federal investigators also discovered that KV was manufacturing and distributing other unapproved new drugs, including drugs for coughs, colds, topical wound healing, skin bleaching, and gastrointestinal conditions.  *Id.* ¶ 97.  The U.S. Attorney who filed suit against KV and obtained the seizure warrant declared: "American consumers are entitled to have safe and effective drugs. The majority of the products being seized *were* made after the FDA required an end to their production."  *Id.* ¶ 98.  That same day, KV issued a press release stating that because KV "had written off the value of all affected products and recognized the financial impact of its decision not to resume the manufacture or sale of the products in question…there will be no further financial impact to KV related to the products to be destroyed."  *Id.* ¶ 99.

Less than two weeks later, Defendants were back to praising the Company's future.  In an August 11, 2008 press release, Defendant Marc Hermelin stated:

Performance was led by strong growth at ETHEX Corporation and continued competitiveness of our category-leading branded products at Ther-Rx. Both of these businesses are poised for further growth over the balance of fiscal 2009 helped by recent introductions like metoprolol succinate extended-release tablets and our branded transdermal spray Evamistä. The Company's pipeline remains strong as well, with expectations of receiving one NDA approval and at least six ANDA approvals during the current fiscal year.

*Id.* ¶ 103. Further, in a departure from KV's previously stated policy, the Company's release included earning guidance:

**The Company currently expects to report net revenue of between $650 million and $675 million and net income per diluted Class A share of between $1.65 and $1.75 for the fiscal year ending March 31, 2009. Although KV historically has not issued revenue or earnings guidance, in light of potential competitive challenges related to certain of the Company's products, as well as new product launches planned during fiscal 2009 and their potential impact on fiscal 2009 financial performance, we are providing guidance for the current fiscal year.** It is not the Company's expectation to further update this guidance during the course of the fiscal year or for future periods.

*Id.* ¶ 104 (emphasis added). However, the same press release warned about possible management misconduct:

The Company was notified last week that the Audit Committee of its Board of Directors has recently commenced an independent inquiry into allegations made by sources not identified to management regarding alleged misconduct by management of the Company....Management is not aware of and does not believe that there has been any misconduct that would have a material impact on the Company's financial results

*Id.* ¶ 103.

KV's statements and the certifications and signatures of Defendants Marc Hermelin, Chibnall, Kanterman, and Mitchell as set forth above and as further alleged in the Complaint were inaccurate and/or failed to disclose, among other things, that:

(1)    KV continued to manufacture and distribute unsafe generic drug products despite FDA warnings;

(2)    KV would need to take additional write-offs related to unapproved products subject to FDA holds and FDA recalls;

(3)     KV's manufacturing facilities failed to comply with federal regulations
        and guidelines;

(4)     KV would need to take additional write-offs and incur additional expenses
        related to manufacturing interruptions and inefficiencies;

(5)     as a result of the foregoing, KV's statements regarding its current financial
        health and fiscal 2009 guidance lacked a reasonable basis when made; and

(6)     by disseminating and/or certifying false and misleading statements
        contained in SEC filings, several Defendants engaged in multiple violations
        of KV's Code of Ethics.

*Id.* ¶ 108.

On October 23, 2008, the Board approved indemnification agreements for each of the

Company's Directors, providing that KV would indemnify the Directors against all costs,

judgments, penalties, fines, liabilities, and amounts paid in settlement for any action taken by any

Director in his or her official capacity.  *Id.* ¶ 109.

On November 13, 2008, KV filed a Form 12b-25 with the SEC explaining why its Form 10-

Q filing for the quarter ending September 30, 2008 would be delayed:

> the Audit Committee of KV…with the assistance of legal counsel, including FDA
> regulatory counsel, and other advisers, is conducting an internal investigation with
> respect to a range of specific allegations, from multiple sources, involving, among
> other items, FDA regulatory and other compliance matters and management
> misconduct. One previously announced FDA recall of a Company product is
> associated with the investigation as are two new recalls involving several products
> dated November 7 and November 10, 2008.

*Id.* ¶ 112.  Also in its Form 12b-25, KV reported an estimated loss of $0.06 per share for the

second quarter of 2009, a decline of $0.76 per share from the prior year, and announced that

second quarter 2009 net revenues declined 16% ($28.6 million) compared to the same quarter

last year.  *Id.* ¶¶ 113-14.  KV also stated that it was withdrawing the revenue and earnings

guidance for FY 2009 issued in August 2008, in which KV announced that it expected to report

net revenue of between $650 million and $675 million and net income per diluted Class A

share of between $1.65 and $1.75 for FY 2009.  *Id.* ¶ 115.

On this news, KV Stock plummeted from a closing price of $14.26 per share on November 12 to $5.90 on November 13, a drop of approximately 59% on trading volume of over 6.6 million shares -- an increase of approximately 3,300% compared to November 23's trading volume, and more than 4,700% compared to the average trading volume for the prior week. *Id.* ¶ 116. KV Stock continued to slide over the next few weeks with Class A shares closing at $3.85 and Class B shares at $3.89 on December 4, 2008. *Id.* ¶ 117.

On December 2, 2008, KV investors sued Defendants Marc Hermelin and Kanterman in a securities class action lawsuit filed in the Eastern District of Missouri. *Id.* ¶ 118. Additional securities lawsuits also have been filed against KV, its Officers and Directors. *Id.*

On the morning of December 5, 2008, KV CEO Defendant Marc Hermelin announced his retirement. *Id.* ¶ 120. Later that day, KV announced that the Board had terminated his employment "for cause." *Id.* ¶ 121. KV stated that the Board acted based on recommendations of the Audit Committee, which had investigated specific allegations involving, among other things, FDA regulatory and compliance matters and management misconduct. *Id.* In early December 2008, Marc Hermelin's wife and son (Defendant David Hermelin) left KV. *Id.* ¶ 124.

On December 23, 2008, KV announced that it was suspending shipments of all FDA approved drugs in tablet form, which accounted for $159 million of KV's $602 million in revenue in FY 2008. *Id.* ¶¶ 126-27. According to KV, this action was "a precautionary measure to allow KV to expeditiously review and enhance comprehensively the company's manufacturing and quality systems, and to implement efficiency improvements in its production facilities." *Id.* KV also announced recall of a shipment of its painkiller hydromorphone due to a report of an oversized tablet. *Id.* ¶ 129. Following these disclosures, KV Class A stock plunged

to close at $2.71, down from $5.39 the previous day. *Id.* ¶ 130. The Company Stock slid even further the following day, closing at $1.99. *Id.*

On January 26, 2009, KV announced suspension of all manufacturing and shipping of its products and a recall of most products. *Id.* ¶ 132. KV also disclosed that as of December 31, 2009, it may be out of compliance with covenants in its revolving line of credit agreement, from which it had borrowed approximately $30 million. *Id.* ¶ 133. KV further disclosed that it was responding to inquiries from a U. S. Attorney and the FDA, and announced that its drug Gestiva, that prevents pre-term births, would again be delayed at the FDA's behest. *Id.* ¶¶ 135, 137. KV's Class A Stock closed at $0.51, down from the previous close of $2.24. *Id.* ¶ 138.

On January 30, 2009, KV disposed of its existing inventory and certain raw materials. *Id.* ¶ 139. On February 2, 2009, the FDA issued a Form 483 report concerning product quality and deficiencies in KV compliance with cGMP regulations. *Id.* ¶ 140. On March 2, 2009, the United States filed a Complaint for Permanent Injunction against KV, Ethex, Ther-Rx, and four KV executives, among them Defendant Marc Hermelin, alleging that FDA investigators had documented thirty-five separate deviations from the FDA's cGMP during inspections of KV's facilities between December 15, 2008 and February 2, 2009 ("February 2009 Inspection"). *Id.* ¶ 141. KV's failures included the following:

    a.   Failure to follow the responsibilities and procedures applicable to the quality control unit, as required by 21 C.F.R. § 211.22(d);

    b.   Failure to establish control procedures to validate the performance of those manufacturing processes that may be responsible for causing variability in the characteristics of in-process material and the drug product, as required by 21 C.F.R. § 211.110(a);

    c.   Failure to make written records of investigations into unexplained discrepancies and investigations of a batch or any of its components to meet specifications, as required by 21 C.F.R. § 211.192;

    d.   Failure to review and approve drug product production and control records by the quality control unit to determine compliance with all established, approved

written procedures before a batch is released or distributed, as required by 21 C.F.R. § 211.192;

e. Failure to review and approve changes to written procedures by the quality control unit, as required by 21 C.F.R. § 211.100(a);

f. Failure to clean, maintain, and sanitize equipment and utensils at appropriate intervals to prevent contamination that would alter the safety, identity, strength, quality or purity of the drug product, as required by 21 C.F.R. § 211.67(a); and

g. Failure to follow written production and process control procedures in the execution of production and process control functions, as required by 21 C.F.R. § 211.100(b).

*Id.* ¶ 141.  The United States also alleged the following violations, in summary form:

a. 21 U.S.C. § 331(a), by introducing and delivering for introduction into interstate commerce articles of drug.

b. 21 U.S.C. § 331(k), by causing the adulteration, within the meaning of 21 U.S.C. § 351(a)(2)(B), of articles of drug.

c. 21 U.S.C. § 331(d), by introducing or causing to be introduced into interstate commerce unapproved new drugs.

d. 21 U.S.C. § 331(a), by introducing and delivering for introduction into interstate commerce articles of drug that are misbranded.

e. 21 U.S.C. § 331(k), by causing the misbranding of articles of drug while such articles are held for sale after shipment of one or more of their components in interstate commerce.

*Id.* ¶ 142.  The U.S. Complaint made it plain that the deficiencies that the FDA observed in the February 2009 Inspection were the same as, or similar to, violations that the FDA observed in inspections in January 2004, January 2005, March 2006, April 2007, March 2008, August 2008, and February 2009.  *Id.* ¶ 143.

On June 23, 2009, the Audit Committee announced that its investigation revealed:

a. instances of noncompliance with FDA and other healthcare regulations and deficiencies in KV's regulatory compliance policies and procedures;

b. deficiencies in KV's financial analysis and budgeting controls and procedures;

c. deficiencies in KV's HR functions and employment policies and procedures; and

d. deficiencies in the conduct of certain members of Senior Management in, among other things, their interaction with the Board.

14

*Id.* ¶ 147.  Because KV did not provide further detail for the findings of the Audit Committee, additional information on which Plaintiffs' claims are based are, very likely, solely within Defendants' possession and control.  *Id.* ¶ 149.

### III.     PLAINTIFFS' CLAIMS

Plaintiffs bring this action on behalf of more than 1500 members of a Class defined as:

> All persons who were participants in or beneficiaries of the KV Pharmaceutical Company Fifth Restated Profit Sharing Plan whose accounts in the Plan were invested in Class A and/or Class B shares of KV stock at any time during the period of February 2, 2003 through the present.  Excluded are any Defendants, KV's officers and directors, members of their immediate families, or their heirs, successors or assigns.

*Id.* ¶¶ 188, 190.  Plaintiffs allege four theories of relief:

In Count I, Plaintiffs allege that all Defendants violated ERISA § 404, 29 U.S.C. § 1104, by continuing to invest in KV Stock and offer it as a Plan investment even though they knew or should have known that it was not prudent to do so because KV's books and records did not disclose substantial manufacturing and financial problems.  *Id.* ¶ 163.  In addition, Defendants had a conflict of interest stemming from the fact that KV was controlled by the family of CEO Marc Hermelin, and employees serving at his behest made Plan investment decisions.  *Id.* ¶ 164.  Defendants could have addressed this conflict of interest by appointing an independent fiduciary, selecting an independent financial advisor for the Plan, or requesting that the Department of Labor be involved in selecting an appropriate method for managing the conflict, but failed to do so.  *Id.*

In Count II, Plaintiffs allege that Defendants breached their duty of loyalty by failing to provide information material to participant investment decisions in violation of § 404(a)(1).  Defendants breached their duty to inform by failing to provide complete and accurate information regarding KV Stock, the extent of KV's exposure to losses in connection with the

Company's deteriorating financial condition, KV's artificial inflation of the value of the stock, and, generally, by conveying incomplete and inaccurate information about the soundness of investing in Company Stock. *Id.* ¶ 172. These actions and failures caused other Plan fiduciaries and certain Participants to maintain substantial investments in KV stock at a time when these Defendants knew or should have known that it was not prudent to acquire or further invest in Company Stock for the Plan and its Participants. *Id.* ¶ 173.

In Count III, Plaintiffs allege that KV and Director Defendants breached their fiduciary duties under § 404 by failing to adequately monitor the investment fiduciaries to whom they delegated Plan management and investment responsibilities. *Id.* ¶ 177. These Defendants knew that the Plan's other fiduciaries were abusing their discretion as ERISA fiduciaries because a prudent fiduciary could not have reasonably believed that further and continued investment in KV Stock, including continued purchases at inflated prices prior to KV's public disclosure of its financial problems, protected the interests of Participants. *Id.* Despite this, the Defendants named in this Count failed to take action to protect the Plan and its Participants from the failures of these other fiduciaries. *Id.*

In Count IV, Plaintiffs allege that all Defendants breached their co-fiduciary duties in violation of ERISA § 405, 29 U.S.C. § 1105. By virtue of the alleged facts and events, Defendants, by failing to comply with their specific fiduciary responsibilities under ERISA § 404(a), 29 U.S.C. §1104(a), enabled their co-fiduciaries to commit ERISA violations, and, with knowledge of such breaches, failed to make reasonable efforts to remedy them. *Id.* ¶ 185. Defendants are liable for each others' violations under ERISA §§ 405(a)(2) and (3).

Defendants are also liable because of their own breaches in failing to appropriately monitor the fiduciaries they appointed, which enabled these appointed fiduciaries to breach their

ERISA duties by, among other things, continuing to invest Plan assets in KV Stock when they knew that KV was not accurately reporting in its books and records the true financial condition of the Company, such that shares were being purchased at inflated prices and Participants were informed that their accounts were worth more than their actual value. *Id.* ¶ 186. In addition, at least Defendants KV and Marc Hermelin participated knowingly in, or knowingly undertook to conceal, breaches of their co-fiduciaries, in violation of § 405(a)(1) of ERISA. *Id.* ¶ 187.

## IV.    ARGUMENT

### A.    General ERISA Principles

ERISA is "a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). An ERISA fiduciary's duties are set forth in § 404(a)(1), 29 U.S.C. § 1104(a)(1):

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and-
>
> (A) for the exclusive purpose of:
>
> > (i) providing benefits to participants and their beneficiaries; and
> >
> > (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;…and
>
> (D) in accordance with the documents and instruments governing the plan....

Under ERISA, plan fiduciaries charged with selecting investment alternatives and managing Plan investment must act in accordance with ERISA's exclusive purpose rule and Prudent Man standard of care, which requires that fiduciaries act "solely in the interests of the participants and beneficiaries" and "for the exclusive purpose" of providing benefits and paying expenses of the plan, and with "care, skill, prudence and diligence." ERISA § 404(a), 29 U.S.C. § 1104(a). Any plan participant or beneficiary may bring an ERISA action for fiduciary breach

against fiduciaries, "who shall be personally liable to make good to such plan any losses to the plan resulting from each such breach…" ERISA § 409(a), 29 U.S.C. § 1109(a); *see also LaRue v. DeWolff, Boberg & Assocs., Inc.*, 128 S.Ct. 1020 (2008).

**B.    The Complaint Alleges That The Individual Defendants Were ERISA Fiduciaries**

**1.    Standards**

ERISA defines a plan "fiduciary" as follows:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, …or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

§ 3(21)(A), 29 U.S.C. § 1002(21)(A). ERISA defines "fiduciary" not in terms of formal trusteeship, but in functional terms of control and authority over the plan, "thus expanding the universe of persons subject to fiduciary duties - and to damages - under § 409(a)." *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 262 (1993).

Courts in both this and other circuits broadly construe whether particular entities and/or individuals are considered fiduciaries under ERISA.

The Eighth Circuit has stated that courts should construe the term 'fiduciary' broadly under ERISA, and in favor of finding that a fiduciary exists. *Olson v. E.F. Hutton & Co., Inc.*, 957 F.2d 622, 625 (8th Cir. 1992) (citing *Consolidated Beef Indus. v. New York Life Ins. Co.*, 949 F.2d 960, 964 (8th Cir. 1991). Consequently, courts will find that a party is a fiduciary if it performs fiduciary-like duties, regardless of whether that party has been explicitly named a fiduciary in the plan agreement. *Id.* The Eight Circuit explained that favoring a finding that a fiduciary duty exists is consistent with "Congress' desire that ERISA protect 'the interests of participants in employee benefit plans and their beneficiaries, [29 U.S.C. § 1001(b) (1988)], because it imposes fiduciary status upon those who act like fiduciaries as well as those who are named as fiduciaries.'"

*Young v. Principal Financial Group, Inc.*, 547 F.Supp.2d 965, 979 (S.D.Iowa 2008); *see also Tussey v. ABB, Inc.*, 2008 WL 379666, at *7 (W.D.Mo. Feb. 11, 2008) ("Under ERISA, 'the term "fiduciary" is to be broadly construed'") (quoting *Consolidated Beef*, 949 F.2d at 964); *In*

*re Xcel Energy, Inc., Securities, Derivative & ERISA Litigation.*, 312 F.Supp.2d 1165, 1181

(D.Minn. 2004) ("fiduciary status under ERISA is to be construed liberally, consistent with

ERISA's policies and objectives") (internal quotation marks omitted); *In re ADC Telecom, Inc.*

*ERISA Litigation*, 2004 WL 1683144, at * 5 (D.Minn., July 26, 2004) ("given the mixed factual

and legal questions involved in the determination and the liberal interpretation of ERISA

fiduciary status, ...allegations of named and functional status suffice"); *In re Unisys Corp.*

*Retiree Med. Ben. ERISA Litigation,* 57 F.3d 1255, 1261 n.10 (3d Cir. 1995) ("ERISA broadly

defines a fiduciary."); *Lopresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) ("As this Court has

recognized, Congress intended ERISA's definition of fiduciary 'to be broadly construed.'")

(quoting *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir. 1987)); *Chicago Bd. Options*

*Exch., Inc. v. Conn. Gen. Life Ins. Co.*, 713 F.2d 254, 260 (7th Cir. 1983) ("It is clear that

Congress intended the definition of fiduciary under ERISA to be broad"). Indeed, Congress'

intent to give broad scope to the term "fiduciary" is clearly set out in the legislative history of

ERISA:

> The term "fiduciary"...includes persons to whom "discretionary" duties have been
> delegated by named fiduciaries. While the ordinary functions of consultants and
> advisors to employee benefit plans...may not be considered as fiduciary functions,
> it must be recognized that there will be situations where such consultants and
> advisors may because of their special expertise, in effect, be exercising
> discretionary authority or control with respect to the management or
> administration of such plan or some authority regarding its assets. In such cases,
> they are to be regarded as having assumed fiduciary obligations within the
> meaning of the applicable definition.

*Lowen v. Tower Asset Mgmt., Inc.*, 653 F.Supp. 1542, 1550 (S.D.N.Y. 1986), *aff'd*, 829 F.2d

12009 (2d Cir. 1987) (quoting 1974 U.S. Code Cong. & Admin. News 5103).

Defendants argue that the Individual Defendants are not Plan fiduciaries because they are

not specifically designated as such. This reflects a misunderstanding of the law governing who is

a "fiduciary" under ERISA. While named fiduciaries such as KV, named as Plan administrator,

owe a fiduciary duty to the Plan and its Participants, the scope of persons and entities who might also owe a fiduciary duty is not limited by the contents of plan documents.

The definition of "fiduciary" is not limited to those specifically named as fiduciaries, but rather is a matter of the actual function served by the individual or entity with respect to the plan. *Olson*, 957 F. 2d at 625 ("'[W]hether or not an individual or entity in an ERISA fiduciary must be determined by focusing on the function performed, rather than the title held.'") (quoting *Blatt*, 812 F.2d at 812-13)); *Darcangelo v. Verizon Communications Inc.*, 292 F.3d 181, 192 (4th Cir. 2002) ("Generally speaking, an ERISA fiduciary is 'any individual who *de facto* performs specified discretionary functions with respect to the management, assets, or administration of a plan.'") (quoting *Custer v. Sweeney*, 89 F.3d 1156, 1161 (4th Cir. 1996)); *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1461 (9th Cir. 1995) (noting "broadly based liability policy underpinning ERISA and its functional definition of 'fiduciary'"); *Mason Tenders Dist. Counsel Pension Fund v. Messera*, 958 F.Supp. 869, 881 (S.D.N.Y. 1997).[2]  As one court has stated:

> Under this functional approach, a fact sensitive inquiry into the extent of the responsibility and control exercised by [a member of the committee named as Plan Administrator] with respect to the [] Plan must be undertaken to determine whether she exercised sufficient discretionary authority and control to be a deemed a fiduciary who can be held personally liable for a breach of fiduciary duties.  **Whether [such defendant] actually possessed such authority and control is a factual issue not properly resolved on a motion to dismiss**.

*In re Xerox Corp. ERISA Litigation*, 2008 WL 918539, at *5 (D.Conn. Mar. 31, 2008) (emphasis added).

In applying this broad definition of "fiduciary" to various circumstances, courts consistently hold persons and entities that are not named as fiduciaries in plan documents to be

---

[2] Defendants' citation to *Confer v. Custom Eng'r Co.*, 952 F.2d 34 (3d Cir. 1991), highlights their confusion. *Confer* was decided *before* the Supreme Court's decision in *Mertens* and has since been recognized as abrogated by that decision. *See Kayes*, 51 F.3d at 1458-61 (fact that company is named fiduciary does not shield from liability company officers and directors who carry out fiduciary functions on company's behalf); *In re Xerox Corp. ERISA Lit.*, 2008 WL 918539, at *5 (D.Conn. Mar. 31, 2008) (noting *Confer's* abrogation by *Mertens*).

*de facto* fiduciaries under ERISA. *Olson*, 957 F.2d at 625 ("Subsection one [of 29 U.S.C. § 1002(21)(A)] imposes fiduciary status on those who exercise discretionary, regardless of whether such authority was ever granted….Thus the absence of any grant of authority to [a defendant] does not automatically preclude a finding that he is a fiduciary."); *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir. 1996) (holding sponsor/company not named in plan to be fiduciary to extent it had duty to monitor appointees, which power of appointment stemmed from power to amend plan). Here, the allegations as to each of the Defendants satisfy ERISA's broad view as to who is a fiduciary as well as the notice requirements under Rule 8(a).

### 2.      Determination not appropriate on a motion to dismiss

Even taking into account the Supreme Court's recent holdings in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (discussed *infra*), the Complaint must only satisfy the notice pleading standard of Rule 8(a), and the allegations contained in the Complaint amply apprise each Defendant of the nature of the claim against that individual or entity sufficient to allow for a defense. Indeed, the cases are legion (including post-*Twombly* and post-*Iqbal* decisions) where courts have denied motions to dismiss where the argument for dismissal was that the defendant was not a fiduciary or was not acting as a fiduciary.

> [T]he question at this early stage of the litigation is not whether Defendants will ultimately be found to have been fiduciaries, but whether Plaintiffs have alleged sufficient facts in the Amended Complaint, which taken as true, create a plausible claim for relief. Indeed, "[f]iduciary status is a fact sensitive inquiry and courts generally do not dismiss claims at this early [motion to dismiss] stage where the complaint sufficiently pleads defendants' ERISA fiduciary status."

*Young*, 547 F.Supp.2d at 980 (post-*Twombly* decision, quoting *In re Schering-Plough Corp.*, 2007 WL 2374989, at *7 (D.N.J. Aug. 15, 2007) (also post-*Twombly*)); *see also In re Merck & Co., Inc.*, 2009 WL 2834792, *4 (D.N.J. Sept. 1, 2009) (same, quoting *Schering-Plough*)

(post-*Iqbal*).

> ***On a 12(b)(6) motion, the court should not endeavor to interpret the extent of delegation or the fiduciary interrelationships under the Plan.*** At this stage, given the mixed factual and legal questions involved in the determination and the liberal interpretation of ERISA fiduciary status, such allegations of named and functional status suffice. Without the opportunity for discovery, Plaintiffs cannot fairly be expected to ascertain all the factual details of Defendants' precise responsibilities and actions. "[W]hether the evidence will bear out the allegations...will be a separate question addressable on summary judgment."

*ADC Telecom., Inc.*, 2004 WL 1683144, at *5 (D.Minn. July 26, 2004) (emphasis added, internal quotations omitted); s*ee also Tussey v. ABB, Inc.*, 2008 WL 379666, at *7 (W.D.Mo. Feb. 11, 2008) (post-*Twombly* decision denying motion to dismiss for failure to allege actual role of alleged ERISA fiduciary); *In re CMS Energy ERISA Litigation*, 312 F.Supp.2d 898, 909 (E.D.Mich. 2004) ("the court is convinced that it is premature to dismiss inside directors of the [Company] as non-fiduciaries absent specific findings on what responsibilities were actually assumed by them."); *Lalonde v. Textron, Inc.*, 270 F.Supp.2d 272, 277 n.4 (D.R.I. 2003) ("the fiduciary status of an entity in the ERISA context is highly fact specific. As a result, this Court cannot reach this fact intensive issue on a motion to dismiss") (citing *Board of Trustees of Bricklayers & Allied Craftsmen Local 6 Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 275 (3d Cir. 2001) (fiduciary status is mixed question of law and fact) and *Kayes*, 51 F.3d at 1461 (fiduciary status is "based on questions of fact regarding discretionary duty and control that must be determined at trial")), *aff'd in part, vacated in part,* 369 F.3d 1 (1st Cir. 2004); *Kramer v. Smith Barney*, 80 F.3d 1080, 1084 n.2 (5th Cir. 1996) (ERISA fiduciary status is mixed question of law and fact); *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 204 (D.Del. 2000) ("Determining whether someone is a fiduciary is a very fact specific inquiry which is difficult to solve on a motion to dismiss.").

Generally, issues concerning both the existence and extent of "control" exercised by each defendant are not properly resolved on a motion to dismiss. Because these matters are highly fact-intensive and case-specific, it is premature at this early stage of the litigation to make a ruling on an undeveloped factual record. Indeed, courts are loath to make a determination concerning the fiduciary status of a person or entity even at the summary judgment stage of an ERISA action. For example, in *Kayes*, 51 F.3d at 1461, the Ninth Circuit held that:

> …the district court did not err in finding that a genuine issue of fact exists. While PLC is correct that fiduciary status rests on an objective evaluation of functions performed, and not on an individual's state of mind, such an objective evaluation will be based on questions of fact regarding discretionary duty and control that must be determined at trial.

*See also In re Ikon Office Solutions, Inc. Securities Litigation,* 86 F.Supp.2d 481, 491 n.15 (E.D.Pa. 2000) ("The court believes that at the pleading stage, it would be premature to say that Ikon could not have been, in any circumstances, a fiduciary, given both the lack of information regarding its formal role in the plans and the plaintiffs' allegations that Ikon affirmatively involved itself by providing information about the plans to participants.").

This is especially true where, as here, the Plan documents name only the Company as Plan Administrator, and it is unclear to what extent, if any, the Board delegated any of its fiduciary duties under ERISA. Plaintiffs were compelled to rely on statements from defense counsel in alleging the existence of an "*ad hoc*" Board committee that purportedly was charged with certain undisclosed aspects of Plan administration. Relying on such representations, Plaintiffs dropped certain outside directors in drafting the Amended Complaint. It is plausible that the remaining inside director defendants who were members of the purported "*ad hoc*" committee possessed fiduciary duties to the Plan either as a consequence of Board membership (if the Board did not properly delegate its fiduciary duties), or as a result of membership on the Board's "*ad hoc*" committee, as to which it has yet to be determined whether delegation of

23

fiduciary duties was proper, or as "*de facto*" fiduciaries. Both parties, apparently, do not yet know the extent to which the individual defendants were involved in Plan administration.

Defendants' repeated invocations of *Iqbal* and *Twombly* do not warrant a different result. *Iqbal* and *Twombly* are cited for the proposition that "[f]actual allegations must be enough to raise a right to relief above the speculative level," 550 U.S. at 555, to "permit the court to infer more than the mere possibility of misconduct." 129 S.Ct. at 1949. Defendants appear to suggest that *Twombly* and *Iqbal* go further, effectively elevating Rule 8(a) to a 9(b) standard whereby Plaintiffs are required to plead specific facts on actions taken by specific individuals. Not only is this wrong, but it would encourage companies to be purposefully vague on Plan oversight and administration to avoid liability. Not surprisingly, that is exactly what Defendants are doing here, obfuscating the names and roles of Plan fiduciaries. Indeed, other than the fact that KV is identified as Plan sponsor and designated as Plan Administrator, no other document or publicly available information exists concerning Plan fiduciaries.

Given the inherently opaque state of the facts at this stage of the litigation -- opaque because only KV and its Board have knowledge as to whom undertook responsibility for Plan oversight and administration -- it cannot be said that Plaintiffs' claims against Plan fiduciaries (which are premised on losses that could not have occurred without fiduciary misconduct) are any less plausible. Indeed, a recent decision in this circuit has explained that even considering the plausibility standard set forth in *Twombly*, allegations about the exercise of discretionary power in an ERISA plan are not required to detail the precise contours of a defendant's involvement. *See Tussey*, 2008 WL 379666, at *7 ("The Supreme Court in *Twombly* reaffirmed the concept of notice pleading with discovery being used to develop a factual record."). Likewise, the court in *In re Diebold ERISA Litigation*, 2008 WL 2225712, at *5 (N.D. Ohio May 28, 2008) (citation omitted), which was decided well after *Twombly*, noted:

> It is typically premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings.  Thus, under Federal Rule of Civil Procedure 8(a)'s notice pleading requirements, courts will typically have insufficient facts at the motion to dismiss stage from which to make the law/fact analysis necessary to determine functional or named fiduciary status.

*See also Young*, 547 F.Supp.2d at 981 (post-*Twombly* decision upholding ERISA claims and noting "Defendants would have the Court determine [defendants' fiduciary status], on a contested and incomplete record, that the allegations in Plaintiffs' Amended Complaint are without merit.  This Court declines to do so."); *In re Merck*; *In re Xerox*, 2008 WL 918539, at *5 (post-*Twombly* decision sustaining CAC against individual members of entity that was named plan administrator despite lack of specificity concerning individuals' possession or exercise of discretionary power respecting plan); *In re Schering-Plough Corp. ERISA Litigation*, 2007 WL 2374989, at *7 (D.N.J. Aug. 15, 2007) (post-*Twombly* decision noting "[f]iduciary status is a fact sensitive inquiry and courts generally do not dismiss claims at this early stage") (citing *Pietrangelo v. NUI Corp.*, 2005 WL 1703200, at *6-7 (D.N.J. July 20, 2005)).

Accordingly, Defendants' motions to dismiss with respect to their status as fiduciaries should be denied as premature.

### 3. Plaintiffs have adequately alleged Defendants' fiduciary status

As noted, Director Defendants are liable as Plan fiduciaries to the extent they exercised discretionary authority respecting the Plan.  Specifically, the Complaint alleges:

> Throughout the Class Period, the Director Defendants, in their capacities as Board members, were fiduciaries of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21) in that they exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of Plan assets and/or had discretionary authority or discretionary responsibility in Plan administration.

CAC ¶ 40.  Director Defendants also were Plan fiduciaries because they issued Plan communications to Participants by signing SEC filings that were specifically incorporated into

Plan documents. *Id.* ¶ 41.[3]  Similarly, the remaining Committee Defendants who were not Board members are "*ad hoc*" committee members alleged to have "exercise[d] authority and control over Plan assets and or manage[d] and administer[ed] the Plan." *Id.* ¶¶ 15-17.

As also noted above, the Plan designates KV as Plan Administrator, and Plaintiffs have learned from Defendants' counsel that KV's Board never officially delegated any Plan fiduciary duties to any entity or individual; all the Board did was to form an "*ad hoc*" committee comprised of certain Officers and Directors.  In light of these facts, it is impossible to know who on either the Board and/or the "*ad hoc*" committee exercised discretionary authority respecting Plan administration, including the decision to maintain KV stock as an investment option despite such individual's knowledge of the continued failure by KV to adhere to FDA manufacturing and safety standards affecting KV's core business.

Based on Defendants' representations, Plaintiffs refrained from naming as defendants certain outside Directors who were not part of the "*ad hoc*" committee and did not otherwise appear to have fiduciary responsibilities for the Plan.  However, it is not realistic, or in the Supreme Court's words, not "plausible," for there to be *no one* on KV's Board and/or on the "*ad hoc*" committee who exercised discretionary authority.  But that is precisely what Defendants argue.  Not surprisingly, courts have consistently rejected this notion, with one referring to it as "the old shell game."

*Rankin v. Rots*, 278 F.Supp.2d 853 (E.D.Mich. 2003), is directly on point.  There, like here, the plan named only the corporation as plan administrator.  *Id.* at 871.  Plaintiffs in *Rankin* alleged that a company director who was not a named fiduciary "exercised 'discretionary authority or control respecting management of the Plan and authority or control respecting

---

[3] These allegations stand in stark contrast to Defendants' misreading of the Complaint as alleging that Director Defendants were fiduciaries solely as a consequence of their status as Directors of the Company.  *See* David Hermelin Br. at 7; Marc Hermelin Br. at 7-8.

management or disposition of assets' [of the Plan]..." *Id.* These factual allegations are identical to those alleged with respect to each Individual Defendant. The court ruled:

> The Plan names only [the Company] as the Plan Administrator, but it does say that [the Company] can appoint an investment manager or managers with regard to an investment fund and may delegate its duties to any person or persons or committee or committees. The Board of Directors passed a resolution giving some, but not all, of their authority to [a committee of the Board]. Thus, the Plan Documents imbue [all members of the Board of Directors] with some degree of authority over the Plan. However, **the manner in which each defendant, [all of] which are in the universe of possible decision makers, operated is for now something of a black box. To expect a plaintiff to be able to turn on the light and point to the particular individuals who exercised decision making authority is simply too much to require at this stage of the case**. To accept defendants' positions that they are not fiduciaries would mean that there was no one responsible for the discretionary decision making. Their position is reminiscent of the 'old shell game.'

278 F.Supp. at 879 (citations omitted and emphasis added).[4]

The court in *In re CMS Energy ERISA Litigation*, 312 F.Supp.2d 898 (E.D.Mich. 2004), also addressed whether plaintiffs adequately alleged fiduciary status against inside directors who, as here, were not named fiduciaries, and where the plan gave "general and broad Plan administrative responsibilities to the [Company]...." *Id.* at 907. Denying dismissal, the court distinguished *Confer v. Custom Eng'r Co.*, 952 F. 2d 34 (3d Cir. 1991), which Defendants cite repeatedly here.[5] First and foremost, *Confer* was decided on a full record after discovery. *Id.* at 907. Second, the court explained that the *Confer* plan did not specifically grant fiduciary duties to the company, whereas the *CMS* plan, like the Plan here, gave the company broad

---

[4] Defendants argue that because there was never a formal delegation of fiduciary duties to the "*ad hoc*" committee that was allegedly tasked to aid in Plan administration, committee members cannot be ERISA fiduciaries. Obviously, given the functional analysis dictated by the Supreme Court in *Mertens*, this is not the case.

[5] As noted, *Confer* has been implicitly abrogated by the Court in *Mertens*. Defendants cite authority specifically rejecting *Confer* to the extent it instructs that membership in a fiduciary entity somehow shields individual members of the entity from fiduciary liability. *See Smith v. Stein*, 270 F.Supp. 2d 157, 169 (D.Mass. 2000) ("The defendants who were members of the [fiduciary] Committee cannot prevail in their efforts to dismiss this CAC solely on the basis of a claim that their membership in the Committee does not subject them to liability.").

administrative responsibilities.  *Id.*  Last, "unlike *Confer*, the allegations here center on the

defendants' failure to act, rather than specific acts which were themselves alleged to be breaches

of fiduciary duty."  *Id.*  Such is precisely the case here, where Plaintiffs' claims are based on

Defendants' failure to protect Participants from investing retirement savings in KV, which

Defendants knew to be in dire financial straits.  Relying primarily on *Rankin*, the *CMS* court

concluded, *id.* at 909:

> [I]n this case, where the [Board of Directors] may choose a Plan administrator,
> and the Employers may choose an Investment Manager, but the Plan does not
> delegate investment policy or decision making power to such manager,
> administrator, or any other individual or committee, but in fact reserves the
> broadest administrative and management responsibility to the [Company], the
> court is convinced that it is premature to dismiss inside directors of the
> [Company] as non-fiduciaries absent specific findings on what responsibilities
> were actually assumed by them.

What is more, at least one court has held that board members may be sued as fiduciaries

where they are alleged to have exercised discretionary authority respecting the plan even though

the plan does not name them as individual fiduciaries and does not name the company itself as a

plan fiduciary.  *Rogers v. Baxter Int'l Inc.*, 417 F.Supp.2d 974, 987 (N.D.Ill. 2006) ("Plan does

not appear to name *any* fiduciaries") (emphasis in original).  In sustaining the complaint against

such board members, the court noted that the complaint alleged that the "question remains open

as to whether [the director defendants] exercised *de facto* authority over the Plans" because of

the allegation that they "exercised discretionary authority with respect to: (i) management and

administration of the Plan, and or (ii) management and disposition of the Plans' assets" and that

such allegation "does not necessarily purport to base [their] fiduciary status on powers expressly

conferred in the Plan documents; [the complaint] can also be understood as alleging that [the

director defendants] each exercised authority concerning various aspects of the Plan irrespective

of whether they were formally granted the power to do so."  *Id.* at 990.

Accordingly, the Complaint here should be sustained as to the Individual Defendants.

**C.    Count I:  Plaintiffs Allege An Actionable Breach Of Fiduciary Duties**

**1.    No presumption of prudence applies here**

In seeking dismissal of Count I, Defendants offer a *pro forma* argument based on limited case law from other circuits to the effect that Plaintiffs have not alleged facts sufficient to overcome a presumption of prudence that some courts have applied to company stock investment.  Defendants' theory fails for several reasons.

First, while ERISA exempts plans and funds holding employer securities from a diversification requirement that otherwise applies, ERISA does **not** include a presumption that Defendants assume applies.  Rather, ERISA mandates that fiduciaries exercise prudence, and courts that have addressed this issue invariably conclude that ERISA imposes a duty of prudence when investing plan assets in employer securities.  *See, e.g., Shanehchian v. Macy's, Inc.*, 2009 WL 2524562, *4 (S.D.Ohio Aug. 14, 2009).

Second, Defendants' argument is based on the fact that some circuits have adopted a rebuttable presumption that fiduciaries of Employee Stock Ownership Programs ("ESOPs") act prudently when they invest in company stock.  *See, e.g., Kuper v. Iovenko*, 66 F.2d 1447 (6th Cir. 1995); *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995).  As discussed below, ESOPs, which are created to invest in employer securities, are materially different from non-ESOP EIAPs, particularly EIAPs like the Plan here, which do not mandate investment in employer securities.

Moreover, some circuits do not apply any presumption even in the ESOP context.  The First Circuit has rejected the presumption in the context of a motion to dismiss:

> As an initial matter, we share the parties' concerns about the court's distillation of the breach of fiduciary standard into the more specific decisional principle extracted from *Moench*, *Kuper*, and *Wright* and applied to plaintiffs' pleading. Because the important and complex area of law implicated by plaintiffs' claims is neither mature nor uniform, we believe that we would run a very high risk of error

were we to lay down a hard-and-fast rule (or to endorse the district court's rule) based only on the statute's text and history, the sparse pleadings, and the few and discordant judicial decisions discussing the issue we face. Under the circumstances, further record development-and particularly input from those with expertise in the arcane area of the law where ERISA's ESOP provisions intersect with its fiduciary duty requirements-seems to us essential to a reasoned elaboration of that which constitutes a breach of fiduciary duty in this context.

*LaLonde v. Textron, Inc.*, 369 F.3d 1, 6 (1st Cir. 2004); *see also Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 10 (1st Cir. 2009) (referencing presumption in dicta in summary judgment case while citing *LaLonde* for its hesitance to apply a "hard-and-fast rule" in ERISA fiduciary duty cases, and instead noting the importance of record development of the facts).

The Ninth Circuit does not apply the *Kuper/Moench* ESOP presumption, and has declined to do so even in the **summary judgment** context, where, unlike here, plaintiffs have had the benefit of discovery:

Viewing the evidence in the light most favorable to the Class, we find there are genuine issues of material fact for trial rendering summary adjudication inappropriate. As an initial matter, this Circuit has not yet adopted the *Moench* presumption, and we decline to do so now. In any event, the district court's determination that the Class did not rebut the *Moench* presumption based solely upon Syncor's financial viability…is not an appropriate application of the prudent man standard set forth in either *Moench* or 29 U.S.C. § 1104.

*In re Syncor ERISA Litigation*, 516 F.3d 1095, 1102 (9th Cir. 2008) (citations omitted).

As noted, this case does not involve an ESOP. *Kuper* and *Moench* both involved ESOPs that mandated company stock investment, not a non-ESOP EIAP with no such mandate. This distinction, ignored by Defendants, is significant. No presumption of prudence applies where company stock investment is optional. In *Kuper*, the ESOP mandated a single investment in company stock; the plan was designed to hold the stock on behalf of participants until they separated or company assets were sold. 66 F.3d at 1450. The plan's sole focus and clear purpose was to provide employee ownership of company stock, and plan terms required

30

fiduciaries to act accordingly. The court sought to balance employee ownership with the other congressionally mandated ESOP objective, prudent retirement savings. *Id.* at 1457. To do so, it applied an abuse of discretion standard for ESOP fiduciaries required to invest exclusively in company stock. Accord *Moench*, 62 F.3d at 569, 571.

Because the Plan here is not an ESOP and does not mandate investment in company stock, there is no presumption of prudence. *See, e.g., In re Schering-Plough Corp. ERISA Litigation*, 420 F.3d 231, 238 n.5 (3d Cir. 2005) (*Moench* presumption not applicable where fiduciary was "simply permitted" to invest in employer stock); *DiFelice v. US Airways*, 397 F.Supp.2d 758, 772, 773 n.15 (E.D.Va. 2005) (declining to extend presumption of prudence to 401(k) plan with company stock fund). As one court explains:

> Defendants argue that the presumption of prudence also applies to non-ESOP EIAP's. But the genesis of the presumption of prudence is a recognition that ESOPs are different; they are designed to invest in company stock with a goal of employee ownership in the company, rather than diversification and minimization of risk. Congress intended that ESOP plans function as both "an employee retirement benefit plan and a 'technique of corporate finance' that would encourage employee ownership," recognizing that "ESOPs are not designed to guarantee retirement benefits, and place employee retirement assets at much greater risk than the typical diversified ERISA plan." Thus, an ESOP fiduciary who is charged with breach of the duty of prudent investment is accorded a presumption of prudence, given the fiduciary's duty to invest in accordance with the terms of the Plan. Needless to say, the presumption can be rebutted, by showing an abuse of discretion. All ERISA fiduciaries have an overriding duty of loyalty and prudence, which may mean that they cannot follow the dictates or directives of a Plan when doing so would be to the detriment of the Plan participants and beneficiaries. **Nevertheless, the special nature of ESOP plans is the basis for the presumption of prudence accorded ESOP fiduciaries.**

*In re Westar Energy, Inc., ERISA Litigation*, 2005 WL 2403832, 18-19 (D.Kan. Sept. 29, 2005) (emphasis added).[6]

---

[6] Some courts have extended the ESOP presumption to 401(k) plans that <u>require</u> a company stock option. *See, e.g., Edgar v. Avaya, Inc.*, 503 F.3d 340, 343 (3d Cir. 2007) ("[o]f particular significance to this litigation, the Plans provide that the investment options 'shall include the Avaya Stock Fund, which shall be invested primarily in shares of Avaya common stock....'").

The Eighth Circuit has never adopted the *Kuper/Moench* presumption even as to ESOPs. But even assuming *arguendo* that the Eighth Circuit would apply a presumption here, district courts in this Circuit and elsewhere routinely decline to apply it on a motion to dismiss, and most of these cases involve facts less egregious than those alleged here.

It is revealing, but not surprising, that Defendants do not cite a single case from within the Eighth Circuit. At least **four** such courts have **denied** motions to dismiss on the basis of the presumption on which Defendants premise their Count I argument. Most recently, the court in *Morrison v. MoneyGram International, Inc.*, 607 F.Supp.2d 1033 (D.Minn. 2009), denied dismissal and expressly rejected Defendants' position that the presumption may be overcome only by establishing that fiduciaries knew or should have known that "the company was on the precipice of a catastrophic financial failure calling into serious question the status of the company as a going concern." Defendants Brief at 11. Citing two of the cases on which Defendants rely as supporting this conclusion, the *Morrison* court holds:

> In other words, although everyone agrees that proving that the employer was on the verge of collapse is one way to overcome the presumption, most courts seem to hold that it is not the only way. *See, e.g., Kirschbaum*, 526 F.3d at 256 ("We do not hold that the *Moench* presumption applies only in the case of investments in stock of a company that is about to collapse."); *Edgar*, 503 F.3d at 349 n.13 ("We do not interpret *Moench* as requiring a company to be on the brink of bankruptcy before a fiduciary is required to divest a plan of employer securities.").

*Id.* at 1052 (quoting *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. 2008), and *Edgar v. Avaya, Inc.*, 503 F.3d 340 (3d Cir. 2007)). Further, neither *Kuper* nor *Moench* support Defendants' contention that Plaintiffs must establish that KV "was on the precipice of a catastrophic financial failure." As the court explained in *In re Ferro Corp. ERISA Litigation*:

---

Whatever the merits of this position, it does not support application of a presumption here, since no required company stock investment option is required.

> Nowhere in [*Moench*] does the Third Circuit limit its holding to companies facing such dire circumstances. More importantly, the Sixth Circuit opinion adopting the *Moench* presumption, has a much broader holding: "[a] plaintiff may then rebut this presumption of reasonableness by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision." *Kuper*, 66 F.3d at 1459. Nowhere in the opinion does the Sixth Circuit use the words "impending collapse."

422 F.Supp.2d 850, 860-61 (N.D.Ohio 2006); *see also In re Goodyear*, 438 F.Supp.2d 783, 794 (N.D.Ohio 2006) ("*Moench* does not limit its holding to companies facing an 'impending collapse' and *Kuper* has a much broader holding and never uses the words 'impending collapse.'").

Yet another case on which Defendants rely, *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004), holds that "an 'ESOP fiduciary's presumption of reasonableness may be overcome when a precipitous decline in the employer's stock is combined with evidence that the company is on the brink of collapse *or* undergoing serious mismanagement.'" *Id.* at 1098 (quoting *LaLonde v. Textron, Inc.*, 270 F.Supp.2d 272, 280 (D.R.I. 2003) (emphasis added)). Further, in a ruling decided after *Wright*, the Ninth Circuit noted that there were a "myriad of circumstances that could violate the standard." *In re Syncor*, 516 F.3d at 1102.

Finally, the recent comments of another court are on point:

> As in the multitude of cases cited above, Defendants' impending collapse argument must be rejected here. The standard simply makes no sense in a case like this and its application would result in needless and avoidable waste of participants' retirement savings. **ERISA's duties of prudence and loyalty are the "highest known to the law." Lowering the prudence bar to the point that a fiduciary is required to sell company stock only after it has become worthless is impossible to square with ERISA's stated mission of "establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and...providing for appropriate remedies, sanctions, and ready access to the Federal courts."** ERISA § 2(b), 29 U.S.C. § 1001(b). **Such a standard is akin to requiring monitoring of a patient only after he is dead.**

*In re Ford Motor Co. ERISA Litigation*, 590 F.Supp.2d 883, 907 (E.D.Mich. 2008) (some citations omitted and emphasis added); *Summers v. State Street Bank & Trust, Co.*, 453 F.3d 404, 411 (7th Cir. 2006) ("selling when bankruptcy is declared will almost certainly be too late"). Lowering the prudence bar so that a fiduciary is required to sell company stock only after it is worthless cannot be squared with ERISA's mission of "establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and…providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b).

In *Jones v. NovaStar Financial, Inc.*, 2009 WL 331553 (W.D.Mo. Feb. 11, 2009), the court gave short shrift to Defendants' presumption argument where defendants were alleged to have acted in a manner far less egregious than alleged here by:

> (i) relying on originating, purchasing, securitizing, selling, investing in and servicing subprime residential mortgages for revenue; (ii) manipulation of its mortgage origination process; (iii) failing to abide by its stated mortgage underwriting process and criteria; (iv) failing to implement, maintain and/or abide by proper risk management processes; (v) improper financial accounting for, among other matters, its portfolio of mortgages; and (vi) engaging in practices that endangered and ultimately eliminated its ability to elect to be taxed as a real estate investment trust or REIT, all of which caused its financial statements to be misleading and which artificially inflated the value of shares of NovaStar common stock....

*Id.* at *1. The court concluded that "though the evidence will eventually show whether Jones can prove the allegations of Count I, she has adequately pleaded facts overcoming any presumption of prudence applicable to the NovaStar stock investments." *Id.* at *6.

In another Eighth Circuit district court ruling, *In re ADC Telecommunications, Inc., ERISA Litigation*, 2004 WL 1683144 (D.Minn. 2004), the court rejected the notion that a plaintiff must plead that a defendant company's viability was in jeopardy in order to state a claim for imprudent investment in company stock. *Id.* at *6. The court concluded that where (as here), fraudulent practices are alleged, there is no need to plead impending collapse of the company.

*Id.*  The court also emphasized that "although ERISA exempts EIAPs from the duty to diversify plan assets with respect to employer stock, the overriding fiduciary duties of prudence and loyalty still apply and 'when the failure to [divest] is not in the best interests of beneficiaries' a breach may occur despite the statutory exemption." *Id.*  The court continued:

> **Determination of whether Defendants "could not have believed reasonably that continued adherence" to heavy investment in ADC stock was prudent under the circumstances is better decided after greater elucidation of the facts.**  *Moench*, 62 F.3d at 571.

*Id.* (emphasis added).  The court also noted that "at this early phase of the litigation it would be unjust to allow Defendants to disclaim all fiduciary responsibility except with regard to the Retirement Committee, and simultaneously disavow any knowledge by Committee members of the economic difficulties the company faced."  *Id.*

A fourth Eighth Circuit district court ruling, *In re Xcel Energy*, also denied a motion to dismiss.  Citing the defendants' reliance on the *Kuper* presumption, the court concluded: "**presumptions are evidentiary standards that should not be applied to motions to dismiss**." *Id.* at 1178 (emphasis added).

These Eighth Circuit district rulings are the norm, as courts **routinely** deny motions to dismiss based on the *Kuper/Moench* presumption.  *See In re Merck & Co., Inc.*, 2009 WL 2834792 (D.N.J. Sept. 1, 2009); *Shanehchian v. Macy's, Inc.*, 2009 WL 2524562 (S.D.Ohio Aug. 14, 2009); *In re Diebold Erisa Litigation*, 2008 WL 2225712 (N.D.Ohio May 28, 2008) ("'[c]ourts have consistently rejected application of *Kuper* at the pleading stage in the manner proposed by Defendants,'" i.e., as a basis for dismissal); *In re General Motors ERISA Litigation*, 2006 WL 897444 (E.D.Mich. Apr. 6, 2006); *In re Marsh Erisa Litigation*, 2006 WL 3706169 (S.D.N.Y. Dec 14, 2006); *In re Goodyear Tire & Rubber Co. ERISA Litigation*, 438 F.Supp.2d 783 (N.D.Ohio 2006); *In re Ferro Corp. ERISA Litigation*, 422 F.Supp.2d 850 (N.D. Ohio

2006); *In re Cardinal Health, Inc. ERISA Litigation*, 422 F.Supp.2d 1002 (S.D.Ohio 2006);

*Sherrill v. Fed.-Mogul Corp. Ret. Programs Comm.*, 413 F.Supp.2d 842 (E.D.Mich. 2006);

*Woods v. Southern Co.*, 396 F.Supp.2d 1351 (N.D.Ga. 2005); *In re Polaroid ERISA Litigation*,

362 F.Supp.2d 461 (S.D.N.Y. 2005) ("Whether a plaintiff has overcome the presumption of

prudence is an evidentiary determination that is ill-suited to resolution on a motion to dismiss");

*LaLonde v. Textron, Inc.*, 369 F.3d 1 (1st Cir. 2004) (reversing dismissal); *In re AEP ERISA*

*Litigation*, 327 F.Supp.2d 812, 829 (S.D.Ohio 2004) ("[P]resumptions are evidentiary standards

that should not be applied to motions to dismiss); *In re CMS Energy ERISA Litigation*, 312

F.Supp.2d 898 (E.D.Mich. 2004); *Rankin v. Rots*, 278 F.Supp.2d 853 (E.D.Mich. 2003).

A post-*Iqbal* ruling issued earlier this month, *In re Merck*, is particularly on point. There,

the court concluded that the plaintiffs had alleged sufficient facts that, accepted as true, made it

plausible that the plaintiffs could overcome the presumption of prudence. 2009 WL 2834792, at

*3. Plaintiffs had argued that the defendants abused their discretion by continuing to designate

Merck stock as an investment option because they knew, or should have known, that:

> (1) sales of Vytorin, Merck's top drug, would be decimated upon disclosure of
> the ENHANCE study results; (2) Merck's stock price dropped 38% from its
> January 11, 2008 pre-disclosure price to the end of the class period, resulting in a
> market capitalization loss of $49 billion; (3) Merck faced investigations from,
> inter alia, the attorneys general of New York and Connecticut, as well as
> congressional investigations by the Senate Finance Committee and the House
> Committee on Energy and Finance; and (4) Merck faced potential legal liabilities
> from Vytorin users who had "rais[ed] their risks of heart attacks and [been]
> expos[ed] to potential side effects."

*Id.* Based on these allegations, the court ruled that plaintiffs "raised sufficient facts to make it

plausible that Defendants abused their discretion in contravention of the Moench presumption."

*Id.* Plaintiffs' allegations here are factually similar and, if anything, more specific.

### 2.    Even if presumption applies, it does not form the basis for dismissal

Even if a presumption applies, Plaintiffs have alleged sufficient facts to overcome it.

KV had a history of non-compliance with FDA mandates and pled guilty to misdemeanor violations.   Throughout the class period, KV failed to comply with the requisite cGMP, and received multiple warning letters from the FDA, advising KV of possible grave consequences. Defendants also knew or should have known that KV and/or some individual defendants and others associated with KV were flouting accounting requirements and engaging in serious misconduct.   The facts set forth here and in the Complaint paint a picture of a world where KV's walls were crumbling down, and predictably enough, it collapsed.   Yet Defendants did nothing to protect Participants from this foreseeable end.   While Plaintiffs dispute Defendants' contention that they must allege that KV "was on the precipice of a catastrophic financial failure," Plaintiffs' allegations easily show this in any event.

Defendants ignore these facts, just as they ignore the wealth of case authority, offering only this footnote:   "[a]lthough plaintiffs in some of these cases have survived motions to dismiss, our research has uncovered no case in which plaintiffs have been awarded summary judgment or prevailed at trial."   Memorandum of KV, Hughes, Mitchell, and Tickner ("KV Brief") at 1 n.2.   This comment not only fails to grapple with the great weight of authority discussed above but disingenuously suggests that claims like this one have little merit since they do not result in summary judgment or verdicts for plaintiffs.   There is a reason for this: defendants typically settle them before they get that far, frequently for very large sums. Settlements in ERISA breach of fiduciary duty cases include the following:

> *In re AOL Time Warner ERISA Litigation*, 2006 WL 2789862 (S.D.N.Y. 2006) (**$100 million**); *In re Royal Dutch/Shell Transport ERISA Litigation*, 04-1398 (D.N.J. 2006) (**$91 million**); *In re State Street Bank and Co. ERISA Litigation*, No.: 07-8488 (S.D.N.Y. 2007) (**$89.75 million**); *In re Enron Corp. Securities,*

*Derivative & "ERISA" Litigation*, 228 F.R.D. 541 (S.D.Tex. 2005) (**$85 million**); *In re Merrill Lynch & Co., Inc., Securities, Derivative & "ERISA" Litigation*, No. MDL 1933 (U.S.Jud.Pan.Mult.Lit. 2009) (**$75 million**); *Overby v. Tyco International Ltd.*, 02-1357 (D.N.H.) (**$70.2 million**) (final approval of settlement pending; *In re Global Crossing Securities and "ERISA" Litigation*, 225 F.R.D. 436 (S.D.N.Y. 2004) (**$69 million**); *In re Lucent Technologies, Inc., Securities Litigation*, 327 F.Supp.2d 426 (D.N.J. 2004) (**$69 million**); *Alvidres v. Countrywide Financial Corporation*, 07-05810 (C.D.Ca.) (**$55 million**) (final approval of settlement pending; *see* Dkt. #240); *Kolar v. Rite Aid Corp.*, 2003 WL 1257272 (E.D.Pa. Mar. 11, 2003) (**$67.76 million**); *In re Williams Companies ERISA Litigation*, No. 02-153 et al (N.D.Okla. 2005) (**$55 million**); *In re Xerox Corp. Erisa Litigation*, No. 02-01138 (D.Conn. 2009) (**$51 million**); *In re WorldCom, Inc. ERISA Litigation*, 2004 WL 2338151 (S.D.N.Y. 2004) (**$47.15 million**); *In re Delphi Corp. Securities, Derivative & "ERISA" Litigation*, 248 F.R.D. 483 (E.D.Mich. 2008) (**$47 million**); *Cokenour v. Household Intern., Inc.*, No. 02-7921 (N.D.Ill. 2004) (**$46.5 million**); *In re Bristol-Myers Squibb Co. ERISA Litigation*, No. 02-10129 (S.D.N.Y. 2005) (**$41.22 million**); *In re Cardinal Health, Inc. ERISA Litigation*, No. 04-643 (S.D.Ohio 2007) (**$40 million**); *Fernandez v. K-M Industries Holding Co., Inc.*, No. 06-7339 (N.D.Ca. 2009) (**$40 million**); *In re General Motors ERISA Litigation*, No. 05-71085 (E.D.Mich. 2008) (**$37.5 million**); *In re Qwest Savings and Inv. Plan Erisa Litigation*, 2007 WL 295545 (D.Colo. 2007) (**$37.5 million**); *Presley v. Carter Hawley Hale Profit Sharing Plan*, 2000 WL 16437 (N.D.Cal. Jan. 7, 2000) (**$36 million**); *Furstenau v. AT&T Corp.*, No. 02-5409 (D.N.J. 2005) (**$29 million**); *In re Healthsouth Corp. ERISA Litigation*, 2006 WL 2109484 (N.D.Ala. June 28, 2006) (**$28.75 million**); *Croucher v. MidCon Corp Employee Stock Ownership Plan*, No. 98-4159 (S.D.Tex.) (**$28.5 million**); *In re CMS Energy ERISA Litigation*, 2006 WL 2109499 (E.D.Mich. 2006) (**$28 million**); *In re Sprint Corp. ERISA Litigation*, 443 F.Supp.2d 1249 (D.Kan. 2006) (**$25 million**); *In re AIG ERISA Litigation*, 04-9387 (S.D.N.Y. 2008) (**$24.2 million**); *In re McKesson HBOC, Inc. ERISA Litigation*, 00-20030 (N.D.Ca. 2005) (**$18.5 million** for one settlement class; **$18.2 million** for second settlement class); *Zilhaver v. UnitedHealth Group, Inc.*, 2009 WL 2581387 (D.Minn. 2009) (**$17 million**); *Lewis v. El Paso Corporation*, No. 02-4860 (S.D.Tex. 2009) (**$17 million**); *Sherrill v. Federal-Mogul Corp. Retirement Programs Committee*, No. 04-72949 (E.D.Mich. 2007) (**$15.45 million**); *In re Polaroid*, 2007 WL 2116398 (S.D.N.Y. 2007) (**$15 million**); *Spivey v. Southern Co.*, No. 04-1912 (N.D.Ga. 2007) (**$15 million**); *In re Sears, Roebuck & Co. ERISA Litigation*, 2006 WL 1593902 (N.D.Ill. 2006) (**$14.5 million**); *In re Honeywell International ERISA Litigation*, No. 03-1214 (D.N.J. 2005) (**$14 million**); *Rankin v. Rots*, 2006 WL 1876538 (E.D.Mich. 2006) (**$11.75 million**); *In re Broadwing, Inc. ERISA Litigation*, 252 F.R.D. 369 (S.D.Ohio 2006) (**$11 million**); *Kling v. Fidelity Management Trust Co.*, No. 01-11939 (D.Mass 2006) (**$10.85 million**); *In re Aquila, Inc. ERISA Litigation*, 04-865 (W.D.Mo. 2007) (**$10.5 million**); *Graden v Conexant Systems, Inc.*, No. 05-0695 (D.N.J.) (**$12.25 million**) (settlement preliminarily approved; not yet finally approved); *Evans v. Akers*, No. 04-11380 (D.Mass. 2009) (**$10 million**); *Beam v. HSBC Band USA*, No. 02-CV-0682

(W.D.N.Y. 2005) (**$9.35 million**); *In re Westar Energy, Inc., ERISA Litigation*, No.
03-4032 (D.Kan. 2006) (**$9.25 million**); *In re Providian Financial Corp.*, 2003 WL
22005019 (N.D.Cal. June 30, 2003) (**$8.6 million**); *Smith v. Krispy Kreme
Doughnut Corp.*, 2007 WL 119157 (M.D.N.C. 2007) (**$8.57 million**); *In re: The
Goodyear Tire & Rubber Company ERISA Litigation*, No. 03-2182 et al (N.D.Ohio
2008) (**$8.375 million**); and *In re Xcel Energy, Inc., Securities, Derivative &
"ERISA" Litigation*, 364 F.Supp.2d 980 (D.Minn. 2005) (**$8 million**).

**D.      Defendants' § 404(c) Affirmative Defense Does Not Bar Plaintiffs' Claims.**

Defendants argue that Count I should be dismissed because they are immunized from

liability by ERISA § 404(c), 29 U.S.C. § 1104(c).  KV Brief at 16-19.  Section 404(c) provides

fiduciaries with a narrow affirmative defense to claims for losses "which result[] from"

participants' exercise of control over their investments, not from losses attributable to fiduciary

misconduct.  29 U.S.C. § 1104(c)(1)(B); 29 C.F.R. § 2550.404c-1.  Defendants' reliance on

§ 404(c) fails for several reasons.

First, the United States Department of Labor ("DOL") has issued highly particularized

and complex requirements which must be satisfied in order before a plan can qualify as a

§ 404(c) plan.  *See* 29 C.F.R. § 2550.404c-1.  These provide that "[w]hether a participant or

beneficiary has exercised independent control in fact with respect to a transaction **depends on**

**the facts and circumstances of the particular case**."  29 C.F.R. 2550.404c-1(c)(2) (emphasis

added).  Consistent with the regulatory emphasis on particular facts and circumstances, courts

almost invariably refuse to dismiss § 404(c) cases prior to discovery:

> The determination of whether an ERISA plan is an individual account plan is fact-
> intensive.  Courts must look to the evidence and determine whether the
> participants could move their assets from one fund to another and whether the
> plan provided the participants with ample information, including adequate
> information to understand and evaluate the risks and consequences of alternative
> investment options.  Courts also inquire into whether the participants were
> provided information about their rights and the obligations of the plan's
> fiduciaries.  Such information, however, comes only from discovery.  For this
> reason, courts routinely refuse to dismiss an ERISA action because the defendant

argues § 404(c) applies.

*In re AEP ERISA Litigation*, 327 F.Supp.2d 812, 829 (S.D.Ohio 2004) (citations omitted).

> the statutory bar to liability under § 1104(c)(1)(B) does not warrant dismissal at
> this early stage. This matter is more properly reserved for a summary-judgment
> motion (**made at an appropriate time after adequate discovery**) since
> "[w]hether a participant or beneficiary has exercised independent control in fact
> with respect to a transaction depends on the facts and circumstances of the
> particular case." *See* 29 C.F.R. 2550.404c-1(c)(2). Given its factual nature, the §
> 1104(c)(1)(B) point is better reserved for summary judgment or trial, if need be.

*Vivien v. Worldcom*, 2002 WL 31640557, *6 (N.D.Ca. July 26, 2002) (emphasis added).

> And another court instructs:

> Because § 404(c) in essence exempts a fiduciary from liability that he normally
> would have under 29 U.S.C. § 1109(a), the fiduciary seeking protection under
> § 404(c), and not the plaintiff, has the burden of demonstrating that it applies.
> The court must review evidence relating to whether a participant could remove his
> assets from one fund and place them in an acceptable alternative fund, whether
> the plan provided the participants with adequate information for an average
> participant to understand and evaluate his investments and the risks and financial
> consequences that might be associated with his taking control, information about
> the rights provided to participants and obligations imposed on fiduciaries by
> ERISA, the financial condition and performance of the investments, the
> alternative funds available, and developments which substantially affected that
> financial status.

*In re Enron Corp. Securities, Derivative & ERISA Litigation*, 284 F.Supp.2d 511, 578-79

(S.D.Tex. 2003) (citations omitted). Other courts have ruled similarly:

- *Rankin v. Rots*, 278 F.Supp.2d 853, 872 (E.D.Mich. 2003) ("Regardless of any merit it
  may have, this argument is premature at this stage in the case. Whether or not § 404(c)
  applies is not a question on a motion to dismiss");

- *In re RadioShack Corp. ERISA Litigation*, 547 F.Supp.2d 606, 617 (N.D.Tex. 2008)
  (denying motion to dismiss in part because "cases cited by Cormier on this issue suggest
  that dismissal on 404(c) grounds at this stage of the litigation would be premature");

- *In re Ferro Corp. Erisa Litigation*, 422 F.Supp.2d 850, 862 (N.D.Ohio 2006) (citations
  omitted) ("However, regardless of the merits of this defense, § 1104(c) is just that, an
  affirmative defense, not a pleading requirement. Thus, it is inapplicable at this early stage
  of the litigation. Indeed, § 1104(c) defenses require fact-intensive inquiries into whether
  the plan meets all of the relevant DOL regulatory requirements. Such inquiries are
  especially complex in cases, such as the instant one, when material information was

allegedly withheld from plan participants. Thus, the Court will not evaluate the defense at this early stage of the litigation");

- *In re WorldCom, Inc.*, 263 F.Supp.2d 745, 764 n.12 (S.D.N.Y. 2003) (§ 404(c) "does not require dismissal of the claim, however, since the existence of independent control is an affirmative defense and, in any event, a question of fact. Most significantly, under regulations issued by the Department of Labor, a participant's control over his investment decisions is 'not independent' if a 'plan fiduciary has concealed material non-public facts regarding the investment from the participant' unless the disclosure would violate the law");

- *Woods v. Southern Co.*, 396 F.Supp.2d 1351, 1367 (N.D.Ga. 2005) ("Reliance on § 404(c), which is in the nature of an affirmative defense, is necessarily misplaced at this stage of the litigation");

- *Tussey v. ABB, Inc.*, 2008 WL 379666, *3 (W.D.Mo. 2008 Feb. 11, 2008) (in *dicta*: "the majority of cases have held that § 404(c) is an affirmative defense that must be pleaded and proved at trial and is not appropriately resolved in a motion to dismiss...Second, even if the Court accepts that a § 404(c) defense is properly raised on a motion to dismiss, ABB has failed to show as a matter of law that the Plan's losses were caused solely by choices made by Plan participants.").

Defendants address **none** of this authority, and in fact cite *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), for the proposition that "normally a district court should not base a dismissal under Rule 12(b)(6) on its assessment of an affirmative defense." KV Brief at 18 n.15. After citing the "normal" rule, that court stated that it did not apply when "a party has included in its complaint 'facts that establish an impenetrable defense to its claims.'" *Id.* at 588. In *Hecker*, the complaint included **14 paragraphs** of allegations regarding the defendants' alleged § 404(c) non-compliance, including ten paragraphs that "specify exactly what Deere and Fidelity allegedly failed to do." *Id.* The court concluded that the complaint "so thoroughly anticipated the safe-harbor defense" that the issue could be reached. *Id.* Here, the Complaint includes just **one general paragraph** concerning § 404(c), at ¶ 158:

> The Department of Labor's § 404(c) regulations do not apply to the Plan. The regulations provide that participants do not exercise "independent control" over investment decisions where a "plan fiduciary has concealed material non-public facts regarding the investment from the participant." Accordingly, § 404(c) does

not apply here, and Defendants are liable for losses suffered by participants during the Class Period.

There is no case support for applying § 404(c) on a motion to dismiss.  But even if the defense were properly considered at the pleading stage, Defendants would have to establish that they satisfied a number of regulatory requirements, and they have not even tried to do so.

Among other things, the controlling regulations provide that a plan cannot qualify as a § 404(c) plan unless:

> (A) Under the terms of the plan, the participant or beneficiary has a reasonable opportunity to give investment instructions (in writing or otherwise, with opportunity to obtain written confirmation of such instructions) to an identified plan fiduciary who is obligated to comply with such instructions except as otherwise provided in paragraph (b)(2)(ii)(B) and (d)(2)(ii) of this §; and

> (B) The participant or beneficiary is provided or has the opportunity to obtain sufficient information to make informed decisions with regard to investment alternatives available under the plan, and incidents of ownership appurtenant to such investments…

29 CFR § 2550.404c-1; *see also In re Unisys Sav. Plan Litigation*, 74 F.3d 420, 445 n.22 (3d Cir. 1996) (for § 404(c) to apply, fiduciaries must provide participants "complete and accurate information" concerning investment alternatives).  Here, the Complaint alleges (with detailed factual support) that Defendants failed to provide complete and accurate information regarding KV Stock, leaving Participants without information they needed to make informed investment decisions.  These allegations must be accepted as true on the motions to dismiss, and are fatal to Defendants' § 404(c) argument.  *In re Xerox Corp. ERISA Litigation*, 483 F.Supp.2d 206, 213 (D.Conn. 2007) (rejecting § 404(c) dismissal; "participants do not exercise control within the meaning of ERISA [§ 404(c)] unless plan fiduciaries provide them with complete and accurate information concerning the investments"); *In re Enron*, 284 F.Supp.2d at 578-79 (rejecting § 404(c) dismissal; plaintiffs alleged they did not receive complete and accurate information).

Finally, even if § 404(c) were ultimately to apply, it cannot immunize Defendants for imprudently offering KV Stock as an investment option, since Plaintiffs did not exercise any control over this function. *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 n.3 (4th Cir. 2007) (§ 404(c) safe harbor "does not apply to a fiduciary's decisions to select and maintain certain investment options within a participant-driven 401(k) plan"); *Page v. Impac Mortgage Holdings, Inc.*, No. 87-1447, 2009 WL 890722, at *4 (C.D.Cal. Mar. 31, 2009) (§ 404(c) does not bar claims that fiduciary breached its duty by imprudently selecting company stock).

In short, § 404(c) does not give fiduciaries a defense to liability for imprudence or disloyalty in the control, selection, or monitoring of plan investment options. Thus, while Participants may have "made their own decisions" regarding KV Stock investments based on the incomplete information given to them, this does not diminish Defendants' liability for selecting and maintaining it as a Plan investment option when it was imprudent to do so. Defendants' § 404(c) argument is premature and substantively defective.

**E.     Count II:  The Complaint Sufficiently Alleges Defendants Breached Their Duty Of Loyalty By Failing To Provide Information Material To Participants' Elections.**

In Count II, Plaintiffs allege that Defendants breached their fiduciary duties by failing to provide complete and accurate information regarding KV Stock, which prevented Participants from making adequately informed decisions regarding retirement savings.  Participants were not timely informed of KV's serious violations of FDA mandates or accounting abuses, and the dire circumstances that KV faced as a result.  KV's statements and the certifications of Defendants Marc Hermelin and Kanterman were materially false and misleading when made and misrepresented and/or failed to disclose, among other things, that:

(1)     KV continued to manufacture and distribute unsafe generic drug products despite FDA warnings;

> (2)    KV would need to take additional write-offs related to unapproved products subject to FDA holds and recalls;
>
> (3)    KV manufacturing plants failed to comply with FDA regulations and guidelines;
>
> (4)    KV would need to take additional write-offs and incur additional expenses related to manufacturing interruptions and inefficiencies,
>
> (5)    based on the foregoing, KV's statements concerning its current financial health and fiscal 2009 guidance lacked a reasonable basis when made; and
>
> (6)    By disseminating and/or certifying false and misleading statements contained in SEC filings, several Defendants engaged in multiple violations of KV's Code of Ethics.

CAC ¶ 110.

Defendants argue that the SEC filings were not fiduciary communications and, for that reason, they are immune from liability for any misrepresentations made in them.  KV Brief at 22.

An Eighth Circuit district court ruling, *Morrison*, 607 F.Supp.2d 1033, puts this argument to rest:

> Plaintiffs allege that MoneyGram incorporated its SEC filings into the SPD and into Plan prospectuses, and then, acting in its capacity as an ERISA fiduciary, MoneyGram distributed the SPD and Plan prospectuses to participants.  In other words, plaintiffs allege that MoneyGram's SEC filings became fiduciary communications by virtue of being incorporated into the SPD and Plan prospectuses.
>
> There is little in the SPD to support plaintiffs' claim, but this matter is before the Court on a Rule 12(b)(6) motion. Such a motion tests the sufficiency of allegations, not the sufficiency of evidence, and plaintiffs have alleged that MoneyGram distributed SEC filings to Plan participants in its capacity as an ERISA fiduciary. That allegation is sufficient to state a claim. *Cf. Varity Corp. v. Howe*, 516 U.S. 489, 505, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (company acted as a fiduciary when it intentionally connected statements about a subsidiary's financial health to statements about the future of benefits to be paid by that subsidiary).

*Id.* at 1054-55.  Here, Plaintiffs have alleged far more than the plaintiffs in *Morrison* with regard to the incorporation of SEC filings:

> Upon information and belief, KV was responsible for disseminating an SPD of the Plan to Participants. Upon information and belief, KV was also responsible for disseminating to Participants the Plan prospectus ("Prospectus"), which purported to describe the investment characteristics of the Plan's various investment options. The Prospectus and all information contained or incorporated in it were representations disseminated to participants by KV in its fiduciary

44

capacity and upon which Participants were entitled to rely in managing their accounts and investment in Plan assets.

KV's SEC filings, including but not limited to, annual reports (Form 10-Ks), quarterly reports (Form 8-Ks) and Registration Statements (Form DEF14-As), were part of the SPD and Prospectus. KV had control of and exercised discretion over the contents of the SPDs and the Prospectuses it disseminated. These documents were intended to communicate information necessary for Plan participants to manage their Plan accounts.

Under ERISA, KV was not required to cause the Plan to offer KV Stock as an investment option or to incorporate KV's SEC filings into the Plan documents. However, by virtue of doing so, the disclosures in KV's SEC filings became representations made in a fiduciary capacity.

CAC ¶¶ 36-38.

Other district court rulings in the Eighth Circuit provide further support for denying

Defendants' motion to dismiss Count II. *In re ADC Telecommunications, Inc., ERISA Litigation*,

2004 WL 1683144 (D.Minn. 2004), the court ruled:

> Plaintiffs assert Defendants failed to adequately and accurately inform ADC employee/investors of the significant risks and perils involved with ADC stock and that they concealed important facts necessary for making informed investment decisions. The Complaint sufficiently apprises Defendants of how they allegedly breached their duty to disclose. Like most areas of contention in the present Motion, this issue has been subject to divergent rulings and evolution, and is "more amenable to resolution on a motion for summary judgment" with the benefit of further factual detail and determination. As such, dismissal of Count III at this time is not warranted.

*Id.* at *8 (citations omitted). The court further explains:

> Defendants' argument that they are immune from this type of claim because they were acting in a corporate, rather than a fiduciary, capacity, is not supported by case law. Company officers who act as plan fiduciaries may be required to draw upon their "corporate" knowledge to properly fulfill their obligations to protect and prioritize the interests of plan beneficiaries. Additionally, courts have held that fiduciary liability may attach based upon public disclosures, such as Securities and Exchange Commission filings.

*Id.* at *7 (citations omitted); *see also Shanehchian v. Macy's, Inc.*, 2009 WL 2524562, *8

(S.D.Ohio Aug. 14, 2009) ("Here, the amended complaint details statements made during

45

conference calls, in press releases and SEC filings.  Further, the complaint alleges that these statements 'were incorporated by reference into the Plans' SPD and Prospectuses that were disseminated by the Plans' fiduciaries to Participants and/or made directly to the Participants" Therefore, the Court finds that Plaintiff has sufficiently alleged fiduciary communication which was disseminated to all Plan Participants, satisfying both the reliance element and that the alleged misrepresentations constituted fiduciary conduct'").

*In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litigation*, 312 F.Supp.2d 1165 (D.Minn. 2004), further explains why these issues should not be resolved on a 12(b)(6) motion:

> a number of courts have held that a fiduciary's duty to disclose goes beyond the specific matters identified in §§ 1021-1026 and is not triggered only by a specific inquiry. *See Varity*, 516 U.S. at 506 (suggesting but not deciding that the duty to disclose extends beyond §s 1021-1026); *Jordan v. Fed. Express Corp.*, 116 F.3d 1005, 1012-14 (3d Cir.1997); *Shea v. Esensten*, 107 F.3d 625, 628 (8th Cir.1997). The law of disclosure under ERISA is both controversial and evolving. *See In re Enron*, 284 F.Supp.2d at 555. **For that reason, the issue is more amenable to resolution on a motion for summary judgment after discovery has shed further light on the facts and circumstances of the case**.

*Id.* at 1176 (some citations omitted or shortened; emphasis added).

## F.    Count III:  Plaintiffs Have Stated A Claim For Breach Of Duty to Monitor

In Count III, Plaintiffs allege that KV and Director Defendants breached their fiduciary duties under § 404 by failing to adequately monitor the investment fiduciaries to whom they delegated Plan management and investment responsibilities.  These Defendants were charged with, responsible for, and otherwise assumed the duty of, appointing, monitoring, and, if necessary, removing Plan fiduciaries.  CAC ¶ 176.  They knew that other Plan fiduciaries were abusing their discretion because a prudent fiduciary could not have reasonably believed that further and continued investment in KV Stock, including continued purchases at inflated prices

before KV publicly disclosed its financial problems, protected the interests Participants. *Id.*

¶ 177. Despite this, KV and Director Defendants failed to take action to protect the Plan and Participants from the failures of these other fiduciaries.

> More specifically, these Defendants named breached their monitoring duties by:
>
> a.    failing to adequately monitor the investing fiduciaries' investment of Plan assets;
>
> b.    failing to adequately monitor the Plan's other fiduciaries' implementation of Plan terms, including prudent investment of plan assets in KV Stock;
>
> c.    failing to disclose to the investing fiduciaries material facts about the financial condition and practices of the Company that Defendants named in this Count knew or should have known were material to prudent investment decisions about Plan's acquisition and retention of Company Stock and with respect to implementation of Plan terms; and
>
> d.    failing to remove fiduciaries who they knew or should have known were not qualified to loyally and prudently manage the Plan's assets.

*Id.* ¶ 179.    It is also noteworthy that the Plan itself provides:

> **(b) Fiduciary Duty of Named Fiduciary.** The Administrator or any person designated by the Administrator as a named fiduciary under § 19.01 (the "named fiduciary") *shall continuously monitor the suitability under the fiduciary duty rules of ERISA § 404(a)(l) (as modified by ERISA § 404(a)(2)) of acquiring and holding Employer Stock.*

KV 000288 (emphasis added).

Once again, Defendants do not grapple with Plaintiffs' specific allegations but instead characterize them as "generalized, conclusory, and undifferentiated." KV Brief at 20. Defendants acknowledge that Plaintiffs have identified "more than two dozen SEC filings and various press releases concerning financial and regulatory issues" but argue that Plaintiffs' allegations are nonetheless insufficient because Plaintiffs do not tease out which individual Defendants should be charged with responsibility for which statements.

This type of claim is not appropriately resolved on a motion to dismiss:

> ERISA opinions and the position of the Department of Labor make clear that the power to appoint and remove plan fiduciaries implies the duty to monitor

appointees "to ensure that their performance is in compliance with the terms of the plan and statutory standards." Though Plaintiffs make broad allegations under the rubric of the ill-defined and limited duty to monitor, **courts have been unwilling to delineate and probe the scope of defendants' monitoring duties on motions to dismiss, and have permitted such claims to proceed forward to discovery.** Plaintiffs offer no legal support for the assertions in the complaint that ADC and the Director Defendants' duty to monitor includes a duty to provide information and make certain disclosures separate from the actions required by the general duty to act with prudence and loyalty. However, for present purposes they "have sufficiently pled a possible cause of action" for duty to monitor, to be tested by further factual development.

*In re ADC Telecommunications, Inc., ERISA Litigation*, 2004 WL 1683144, *7 (D.Minn. 2004) (citations omitted).

Further, like KV, Director Defendants' liability is derived from their authority and discretion to appoint, monitor, and remove Plan fiduciaries. By abdicating these duties under ERISA, Director Defendants breached the duties they owed to the Plan and Participants. The ongoing responsibilities of a fiduciary who has appointed other fiduciaries requires that "[a]t reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such a manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan." 29 C.F.R. § 2509.75-8, at FR-17. As appointing fiduciaries, the Director Defendants had a duty of oversight to monitor and promote compliance with ERISA's fiduciary obligations and to prevent misconduct or injury. *See, e.g., Baker v. Kingsley*, 387 F.3d 649, 663-64 (7th Cir.2004); *Coyne*, 98 F.3d at 1457, 1465 (power to appoint and remove comes with duty to monitor appointee); *Martin v. Feilin,* 965 F.2d at 660, 669-70 (8th Cir. 1992) (duty to monitor appointees may impose duty to prevent wrongful conduct). Implicit in the "power to select the Plans' named fiduciaries is the duty to monitor the fiduciaries' actions, including their investment of Plan assets." *Mehling v. New York Life Ins. Co.*, 163 F.Supp.2d 502, 509-10 (E.D.Pa. 2001); *see also Liss v. Smith*, 991 F.Supp. 278, 311 (S.D.N.Y. 1998).

48

*WorldCom* is directly on point on Plaintiffs' failure to monitor claims. There, plaintiffs alleged that a corporate director with fiduciary appointment power under the plan breached his fiduciary duty by failing to monitor the investment of plan assets by other plan fiduciaries and by failing to disclose material facts to the investment fiduciaries. 263 F.Supp.2d at 765. Upholding plaintiffs' claims, the court observed that "[w]hen a corporate insider puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired while acting in his corporate capacity." *Id.* Accordingly, an allegation that the appointing fiduciary failed to properly appoint and supervise plan fiduciaries and "failed to disclose to the Investment Fiduciary and the other investing fiduciaries material information he had regarding the prudence of investing in [Company] stock is sufficient to state a claim." *Id.*

Defendants also argue that Plaintiffs' duty to monitor claim must be dismissed because Plaintiffs have not alleged any delegation of fiduciary duties. KV Brief at 27. To the contrary, Plaintiffs specifically alleged that:

> KV exercised control over the activities of its directors, officers, and employees, including control over their activities related to the Plan. Through the Board or otherwise, KV had authority and discretion to hire and terminate its officers and employees. In addition, upon information and belief, KV had authority and discretion to appoint, monitor, and remove individual Company directors, officers, and employees as fiduciaries of the Plan.

CAC ¶ 33.

## G.     Count IV:  Plaintiffs Have Stated Claims For Co-Fiduciary Breach.

In Count IV, Plaintiffs allege that by failing to comply with their specific fiduciary responsibilities under ERISA § 404(a), 29 U.S.C. §1104(a), all Defendants enabled co-fiduciaries to commit ERISA violations, and, with knowledge of such breaches, failed to make reasonable efforts to remedy them. CAC ¶ 185. Defendants thus are each liable for the others' violations under ERISA § 405(a)(2) and (3), 29 U.S.C. § 1105(a)(2) and (3); see also *Morrison*,

607 F.Supp.2d at 1059 ("plaintiffs have pleaded viable claims for breach of fiduciary duty, and therefore they have pleaded viable claims for co-fiduciary liability").

Plaintiffs further allege that the Board is KV's ultimate decision making body, and that KV's business was conducted by employees and Officers under the direction of CEO Defendant Marc Hermelin, subject to Board oversight. *Id.* ¶ 39. Plaintiffs also alleged that Director Defendants were Plan fiduciaries within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that they exercised discretionary authority or discretionary control respecting Plan management, exercised authority or control respecting management or disposition of Plan assets and/or had discretionary authority or discretionary responsibility in Plan administration. *Id.* ¶ 40. Plaintiffs similarly alleged that the KV Plan Committee Defendants were Plan fiduciaries in that each had discretionary authority and control regarding the administration and management of the Plan and/or Plan assets, and possessed full authority in their absolute discretion to determine all questions of eligibility for entitlement to Plan benefits. *Id.* ¶ 41. The KV Plan Committee was also responsible for selecting, evaluating, monitoring, and altering investment alternatives offered by the Plan. *Id.* These allegations amply allege co-fiduciary breach. See *In re Merck*, 2009 WL 2834792, *4 ("Plaintiffs' claims for co-fiduciary liability are also sustainable at this stage of the litigation because Plaintiffs have alleged sufficient facts to suggest that Defendants condoned, participated in and enabled the fiduciary breaches of the other Defendants. See ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3)).

Dated: September 24, 2009

s/ Mark Potashnick

Mark Potashnick, E.D.Mo. #35970
S. Sheldon Weinhaus, E.D.Mo. #4670
**Weinhaus & Potashnick**
11500 Olive Blvd., Suite 133
St. Louis, MO 61341
Tel.: (314) 997-9150
Fax: (313) 997-9170
*Interim Co-Liason Counsel*

Ellen Doyle
John Stember
Pamina Ewing
Stephen Pincus
**Stember Feinstein Doyle & Payne, LLC**
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, P A 15219
Tel: (412) 281-8400
Fax:(412) 281-1007
*Interim Co-Lead Counsel*

Robert I. Harwood
Peter W. Overs, Jr.
**Harwood Feffer LLP**
488 Madison Avenue, 8th Floor
New York, NY 10022
(212) 935-7400
(212) 753-3630
*Interim Co-Lead Counsel*

Paul J. D'Agrosa
**Wolf and D'Agrosa**
7710 Carondelet Avenue, Suite 200
Clayton, MO 63105
Tel. (314) 725-8019
Fax. (314) 725-8443
*Interim Co-Liason Counsel*

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing document was served electronically via the

CM/ECF system on all counsel of record on this 14th day of September, 2009.

Robert Berry
Berry & Maxson, LLC
16150 Main Circle Drive, Suite 120
St. Louis, Missouri  63017
Attorney for Defendants KV Pharmaceutical Co.,
Gerald R. Mitchell, Mary Ann Tichner & Melissa Hughes

Paul Blankenstein
William J. Kilberg
Gibson & Dunn
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Attorney for Defendants KV Pharmaceutical Co.,
Gerald R. Mitchell, Mary Ann Tichner and Melissa Hughes

Edward L. Dowd, Jr.
John D. Comerford
Dowd Bennett, LLP
7733 Forsyth, Suite 1410
Clayton, Missouri  63105
Attorneys for Defendant Ronald J. Kanterman

Shawn P. Davisson
Mark J. Hulkower
Ryan T. Jenny
Patrick F. Linehan
Paul J. Ondrasik
Steptoe & Johnson L.P.
1330 Connecticut Avenue, N.W.
Washington, DC  20036
Attorneys for Defendant Mark S. Hermelin

Wendy M. Menghini
Richard E. Greenberg
Greensfelder & Hemker, P.C.
2000 Equitable Bldg.
10 South Broadway
St. Louis, Missouri  63102
Attorneys for Defendant David S. Hermelin

Bryan D. LeMoine
Polsinelli Shughart PC
7733 Forsyth Blvd., 12th Floor
St. Louis, Missouri  63105-1814
Attorney for Mary Ann Tichner

Barry A. Short
Evan Z. Reid
Lewis & Rice
500 North Broadway, Suite 2000
St. Louis, Missouri  63102-2147
Attorney for Defendant Richard Chibnail

Respectfully submitted,

/s/ Mark Potashnick
Mark Potashnick