**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| HAROLD S. CROCKER, JR. and ANNA BODNAR, on behalf of themselves and others similarly situated,<br><br>       Plaintiffs,<br><br><br>       v.<br><br>KV PHARMACEUTICAL CO., MARC S. HERMELIN, RONALD J. KANTERMAN, DAVID S. HERMELIN, MELISSA HUGHES, RICHARD H. CHIBNALL, GERALD R. MITCHELL, MARY ANN TICKNER, THOMAS TOMARO, and DOES 1-20,<br><br>       Defendants. | Civil Action No. 4:09-CV-0198 (CEJ) |

---

**REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS BY KV PHARMACEUTICAL COMPANY,
MELISSA HUGHES, GERALD R. MITCHELL, AND MARY ANN TICKNER**

Dated:  October 19, 2009

William J. Kilberg, P.C., *pro hac vice*
Paul Blankenstein, *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue N.W.
Washington, D.C.  20036
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539

Robert P. Berry, # 200680
BERRY & MAXSON, LLC
16150 Main Circle Drive, Suite 120
St. Louis, Missouri 63017
Telephone:  (314) 480-5882
Facsimile:  (314) 480-5884
rberry@berrymaxson.com

*Attorneys for Defendants KV Pharmaceutical
Company, Melissa Hughes, Gerald R. Mitchell,
and Mary Ann Tickner*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

I.     Plaintiffs Have Not Sufficiently Alleged That The Individual Defendants Are ERISA Fiduciaries. ...................................................................................... 2

II.    The *Moench* Presumption Of Prudence Is Applicable To 401(k) Plans, Like The KV Plan, And Plaintiffs Have Failed To Allege Facts Sufficient To Rebut The Presumption. ................................................................................ 8

III.   ERISA § 404(c) Bars Plaintiffs' Claims. ............................................................. 19

IV.   Plaintiffs' Misrepresentation Claims Cannot Rest On Non-Fiduciary Communications. ............................................................................................... 21

V.    Plaintiffs Have Failed To Sufficiently Plead Facts Supporting Their Duty to Monitor And Co-Fiduciary Breach Claims. .................................................... 22

CONCLUSION .................................................................................................................. 24

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ................................................................................ 1, 2, 7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................ 1, 2, 7, 25

*Benitez v. Humana, Inc.*,
No. 08-211, 2009 WL 3166651 (W.D. Ky. Sept. 30, 2009) ......................... 1, 15, 16

*Bunch v. W.R. Grace & Co.*,
555 F.3d 1 (1st Cir. 2009) ............................................................................ 9

*Caputo v. Pfizer, Inc.*,
267 F.3d 181 (2d Cir. 2001) ....................................................................... 14

*Confer v. Custom Engineering Co.*,
952 F.2d 34 (3d Cir. 1991) ........................................................................ 2, 4

*Conley v. Gibson*,
355 U.S. 41 (1957) ...................................................................................... 2

*Custer v. Sweeney*,
89 F.3d 1156 (4th Cir. 1996) ...................................................................... 8

*Daniels v. Thomas & Betts Corp.*,
263 F.3d 66 (3d Cir. 2001) ........................................................................ 21

*DiFelice v. U.S. Airways, Inc.*,
497 F.3d 410 (4th Cir. 2007) ...................................................................... 9

*Edgar v. Avaya, Inc.*,
503 F.3d 340 (3d Cir. 2007) ........................................................ 1, 9, 10, 16, 17

*Erbe v. Billeter*,
No. 06-113, 2007 WL 2905890 (W.D. Pa. Sept. 28, 2007) ............................ 5

*Fare Deals Ltd. v. World Choice Travel.Com, Inc.*,
180 F. Supp. 2d 678 (D. Md. 2001) ........................................................... 22

*Graden v. Conexant Sys., Inc.*,
574 F. Supp. 2d 456 (D.N.J. 2008) ............................................................. 2

*Halaris v. Viacom, Inc.*,
No. 06-1646, 2008 WL 3855044 (N.D. Tex. Aug. 19, 2008) ...................... 2, 18

*Harzewski v. Guidant Corp.*,
489 F.3d 799 (7th Cir. 2007) ..................................................................... 16

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ................................................................. 19, 20

**Table of Authorities**
**(Continued)**

Page(s)

*In re ADC Telecomms., Inc.,*
   *ERISA Litig.*, No. 03-2989, 2004 WL 1683144 (D. Minn. July 26, 2004) ............................. 18

*In re Avon Prods., Inc. ERISA Litig.,*
   No. 05-6803, 2009 WL 848083 (S.D.N.Y. Mar. 3, 2009) ............................................. 2, 9, 18

*In re Bausch & Lomb Inc. ERISA Litig.,*
   No. 06-6297, 2008 WL 5234281 (W.D.N.Y. Dec. 12, 2008) ........................... 2, 9, 12, 18, 21

*In re Citigroup ERISA Litig.,*
   No. 07-9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) ......................................... 1, 9, 17

*In re Computer Scis. Corp. ERISA Litig.,*
   635 F. Supp. 2d 1128 (C.D. Cal. 2009 ......................................................................... 14

*In re Dell, Inc. ERISA Litig.,*
   563 F. Supp. 2d 681 (W.D. Tex. 2008) ................................................................ 2, 9, 11, 18

*In re Ford Motor Co. ERISA Litig.,*
   590 F. Supp. 2d 883 (E.D. Mich. 2008) ................................................................... 17

*In re Harley-Davidson, Inc., Secs. Litig.,*
   No. 05-547, 2009 WL 3233747 (E.D. Wis. Oct. 8, 2009) .................................. 1, 10, 17, 21

*In re Huntington Bancshares Inc. ERISA Litig.,*
   620 F. Supp. 2d 842 (S.D. Ohio 2009) ......................................................................... 2

*In re Mut. Fund Inv. Litig.,*
   403 F. Supp. 2d 434 (D. Md. 2005) ....................................................................... 5, 8

*In re RadioShack Corp. ERISA Litig.,*
   547 F. Supp. 2d 606 (N.D. Tex. 2008) ................................................................ 2, 9, 18

*In re Syncor ERISA Litigation,*
   516 F.3d 1095 (9th Cir. 2008) ................................................................................. 10

*In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.,*
   312 F. Supp. 2d 1165 (D. Minn. 2004) ................................................................. 16, 18

*In re Xerox Corp. ERISA Litig.,*
   No. 02-1138, 2008 WL 918539 (D. Conn. Mar. 31, 2008) ...................................... 4

*Johnson v. Radian Group, Inc.,*
   No. 08-2007, 2009 WL 2137241 (E.D. Pa. July 16, 2009) ................................. 2, 18, 19

*Jones v. Novastar Financial, Inc.,*
   No. 08-490, 2009 WL 331553 (W.D. Mo. Feb. 11, 2009) ...................................... 18

*Kayes v. Pacific Lumber Co.,*
   51 F.3d 1449 (9th Cir. 1995) ................................................................................... 4

**Table of Authorities**
**(Continued)**

Page(s)

*Kirschbaum v. Reliant Energy, Inc.*,
    526 F.3d 243 (5th Cir. 2008) ........................................................ 9, 10, 12, 13, 21

*Knudsen v. United States*,
    254 F.3d 747 (8th Cir. 2001) ........................................................ 20

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
    571 F.3d 672 (7th Cir. 2009) ........................................................ 25

*Kuper v. Iovenko*,
    66 F.3d 1447 (6th Cir. 1995) ........................................................ 9

*LaLonde v. Textron*,
    369 F.3d 1 (1st Cir. 2001) ........................................................ 9

*Luckasevic v. World Kitchen, Inc.*,
    No. 06-1629, 2007 WL 2683995 (W.D. Pa. Sept. 7, 2007) ........................................................ 5

*Matusovsky v. Merrill Lynch*,
    186 F. Supp. 2d 397 (S.D.N.Y. 2002) ........................................................ 22

*Mertens v. Hewitt Associates*,
    508 U.S. 248 (1993) ........................................................ 4, 5

*Moench v. Robertson*,
    62 F.3d 553 (3d Cir. 1995) ........................................................ 9, 12

*Morrison v. Moneygram International, Inc.*,
    607 F. Supp. 2d 1033 (D. Minn. 2009) ........................................................ 18, 22, 23, 24

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003) ........................................................ 20

*Olson v. E.F. Hutton & Co.*,
    957 F.2d 622 (8th Cir. 1992) ........................................................ 6

*Parnes v.Gateway 2000, Inc.*,
    122 F.3d 539 (8th Cir. 1997) ........................................................ 7, 14

*Pugh v. Tribune Co.*,
    521 F.3d 686 (7th Cir. 2008) ........................................................ 1, 9, 14, 15

*Rogers v. Baxter Int'l, Inc.*,
    No. 04-6746, 2009 U.S. Dist. LEXIS 89565 (N.D. Ill. Sept. 28, 2009) ........................................................ 1, 16

*Stein v. Smith*,
    270 F. Supp. 2d 157 (D. Mass. 2003) ........................................................ 21

*Ward v. Avaya, Inc.*,
    299 F. App'x 196 (3d Cir. 2008) ........................................................ 1, 17

**Table of Authorities**
**(Continued)**

Page(s)

*Wright v. Or. Metallurgical Corp.*,
　360 F.3d 1090 (9th Cir. 2004) ................................................................. 10, 16

**Statutes**

29 U.S.C. § 1002(21)(A) ............................................................................. 4

29 U.S.C. § 1101(k) ..................................................................................... 1

29 U.S.C. § 1104(a)(1)(D) ........................................................................ 12

29 U.S.C. § 1104(c) ................................................................................... 19

29 U.S.C. § 1105 ......................................................................................... 3

29 U.S.C. § 1105(a) ................................................................................... 23

29 U.S.C. § 1105(c)(1) ............................................................................... 3

29 U.S.C. § 1105(c)(1)(B) ........................................................................... 4

**Other Authorities**

5A Charles Alan Wright and Arthur R. Miller,
　Federal Practice & Procedure § 1327 (2009) ........................................ 22

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................................... 2

Defendants KV Pharmaceutical Company ("KV" or the "Company") and Melissa Hughes, Mary Ann Tickner, and Gerald R. Mitchell (the "Individual Defendants," KV and the Individual Defendants collectively the "KV Defendants") respectfully submit this reply memorandum in support of their motion to dismiss plaintiffs' Consolidated Amended Complaint ("Complaint").

## INTRODUCTION

In their opposition brief, plaintiffs make much of the fact that some district courts have denied motions to dismiss ERISA 401(k) stock drop cases in the past. But that other complaints, many of which were considered under the less-rigorous pre-*Twombly*/*Iqbal* regime, have survived motions to dismiss, cannot save plaintiffs' inadequate Complaint in this case. And plaintiffs conveniently ignore the slew of more recent cases holding that dismissal is warranted in situations where, as here, the factual allegations of the complaint do not plausibly permit the inference that the defendants before the court are liable for the fiduciary misconduct that is only conclusorily alleged. As a more substantial body of law defining what constitutes a fiduciary breach in 401(k) stock drop cases has developed over time—and in light of the Supreme Court's recent decisions in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009)—motions to dismiss conclusorily asserted fiduciary breach claims, like those presented here, are now frequently granted.[1]

---

[1] *See, e.g.*, *Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008); *Edgar v. Avaya, Inc.*, 503 F.3d 340 (3d Cir. 2007); *Ward v. Avaya, Inc.*, 299 F. App'x 196 (3d Cir. 2008); *In re Harley-Davidson, Inc., Secs. Litig.*, No. 05-547, 2009 WL 3233747 (E.D. Wis. Oct. 8, 2009); *Benitez v. Humana, Inc.*, No. 08-211, 2009 WL 3166651 (W.D. Ky. Sept. 30, 2009); *Rogers v. Baxter Int'l, Inc.*, No. 04-6746, 2009 U.S. Dist. LEXIS 89565 (N.D. Ill. Sept. 28, 2009); *In re Citigroup ERISA Litig.*, No. 07-9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009); *Johnson v. Radian Group, Inc.*, No. 08-2007, 2009 WL 2137241

[Footnote continued on next page]

The plaintiffs effectively would have the Court consider the Complaint here pursuant to the old *Conley v. Gibson* standard, under which a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957). But, as the plaintiffs are undoubtedly aware, the Supreme Court in *Twombly* expressly retired the *Conley v. Gibson* "no set of facts" standard, and replaced it with the requirement that to survive a motion to dismiss, a complaint must allege facts that plausibly indicate the plaintiff is entitled to the relief claimed. *Twombly*, 550 U.S. at 554-55; *see Iqbal*, 129 S. Ct. at 1949. Moreover, given that "fraudulent practices are alleged" in the Complaint, Opp'n. Br. 34, plaintiffs must plead those claims with the particularity required by Fed. R. Civ. P. 9(b). They have not done so.

In short, because plaintiffs have failed to meet the heightened pleading standard with respect to their allegations of fraud, have otherwise failed to plead facts plausibly suggesting that the Individual Defendants are ERISA fiduciaries, and have failed to plead facts plausibly suggesting that any KV Defendant breached any fiduciary duty, the Complaint must be dismissed.

## I.     Plaintiffs Have Not Sufficiently Alleged That The Individual Defendants Are ERISA Fiduciaries.

As the KV Defendants explained in their opening brief, under *Confer v. Custom Engineering Co.*, 952 F.2d 34, 37 (3d Cir. 1991), corporate officers and employees who have not

---

[Footnote continued from previous page]
(E.D. Pa. July 16, 2009); *In re Avon Prods., Inc. ERISA Litig.*, No. 05-6803, 2009 WL 848083 (S.D.N.Y. Mar. 3, 2009); *In re Huntington Bancshares Inc. ERISA Litig.*, 620 F. Supp. 2d 842 (S.D. Ohio 2009); *In re Bausch & Lomb Inc. ERISA Litig.*, No. 06-6297, 2008 WL 5234281 (W.D.N.Y. Dec. 12, 2008); *Graden v. Conexant Sys., Inc.*, 574 F. Supp. 2d 456 (D.N.J. 2008); *Halaris v. Viacom, Inc.*, No. 06-1646, 2008 WL 3855044 (N.D. Tex. Aug. 19, 2008); *In re Dell, Inc. ERISA Litig.*, 563 F. Supp. 2d 681 (W.D. Tex. 2008); *In re RadioShack Corp. ERISA Litig.*, 547 F. Supp. 2d 606 (N.D. Tex. 2008).

been assigned any individual duties, but who merely discharge the fiduciary duties of a corporation that is the named fiduciary of a plan, are not themselves fiduciaries of the plan. *See* KV Br. 8-9. Here, defendant KV is the only fiduciary named in the KV Fifth Restated Profit Sharing Plan and Trust ("Plan") and, as the Complaint specifically alleges, the Individual Defendants have not been assigned any *individual* discretionary responsibilities. Plaintiffs' opposition brief fails to offer any persuasive argument or authority that would allow the general and conclusory allegations of the Complaint that the Individual Defendants are fiduciaries to survive the KV Defendants' motion to dismiss in this regard.

As expressly alleged in the Complaint, KV is the Plan Administrator and the named fiduciary of the Plan. Opp'n Br. 2. By virtue of this fact, KV has "the *full* responsibility to administer the Plan in all of its details." Pl.'s Ex. A, Fidelity Basic Plan Document No. 07, at 61 § 19.01 (emphasis added). However, KV "may, *by written instrument*, allocate and delegate its fiduciary responsibilities in accordance with ERISA Section 405." *Id.* (emphasis added).[2] But, as plaintiffs assert in the Complaint, "the Company has made no formal delegations of ERISA fiduciary responsibilities as Plan Administrator." Compl. ¶ 41. In these circumstances, the Individual Defendants cannot be held individually liable for any alleged breach of fiduciary duty.

> When a corporation is the "person" who performs the fiduciary functions . . . the officer who controls the corporate action is not *also* the person who performs the fiduciary function. Because a corporation always exercises discretionary authority, control, or responsibility through its employees, [ERISA] section

---

[2] ERISA Section 405 provides in relevant part that "[t]he instrument under which a plan is maintained may expressly provide for procedures (A) for allocating fiduciary responsibilities (other than trustee responsibilities) among named fiduciaries, and (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan." 29 U.S.C. § 1105(c)(1).

3(21)(A)[3] must be read to impute to the corporation some decisions by its employees.  Otherwise, the fictional "person" of a corporation could never be a fiduciary because a corporation could never meet the statute's requirement of "having discretion."  We cannot read section 3(21)(A) in a way that abrogates a use of corporate structure clearly permitted by ERISA.

> We thus hold that when an ERISA plan names a corporation as a fiduciary, the officers who exercise discretion on behalf of that corporation are not fiduciaries within the meaning of section 3(21)(A)(iii), unless it can be shown that these officers have *individual* discretionary roles as to plan administration.  For example, if the plan designates an officer as plan administrator or if, pursuant to 29 U.S.C. § 1105(c)(1)(B),[4] the corporation delegates some of its fiduciary responsibilities to an officer, then the designated individual would be a fiduciary under section 3(21)(A)(iii).

*Confer*, 952 F.2d at 37 (emphases in original).  It follows that, given the absence of any delegation of individual fiduciary responsibility in this case, *see* Compl. ¶ 41, KV officers performing Plan administrative functions exercised only the *Company's* discretion, not *individual* discretion, and are thus not ERISA fiduciaries.

 Plaintiffs' attempts to find a way around *Confer* are unavailing.  First, plaintiffs maintain that *Confer* was "abrogated" by the United States Supreme Court in *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993).  *See* Opp'n Br. 20 n.2 (citing *In re Xerox Corp. ERISA Litig.*, No. 02-1138, 2008 WL 918539, at *5 (D. Conn. Mar. 31, 2008)).[5]  But *Mertens* certainly did not

---

3  "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).

4  *See* note 2, *supra*.

5  Plaintiffs also cite a Ninth Circuit decision that expressed disagreement with *Confer*, *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1459 (9th Cir. 1995), an issue noted in footnote 10 of the KV Defendants'

[Footnote continued on next page]

abrogate *Confer*, which has continued to be cited favorably more than a decade after *Mertens* was decided. *E.g.*, *Erbe v. Billeter*, No. 06-113, 2007 WL 2905890, at *4 (W.D. Pa. Sept. 28, 2007); *Luckasevic v. World Kitchen, Inc.*, No. 06-1629, 2007 WL 2683995, at *6 (W.D. Pa. Sept. 7, 2007); *In re Mut. Fund Inv. Litig.*, 403 F. Supp. 2d 434, 447 (D. Md. 2005). In *Mertens*, the Supreme Court observed that ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan," and concluded that "[p]rofessional service providers such as actuaries become liable for damages when they cross the line from adviser to fiduciary." 508 U.S. at 262. The Court had no occasion to reach the question presented by *Confer*—whether officers of a named corporate fiduciary who are not delegated individual discretionary functions exercise their own discretion or exercise the company's discretion when administering or managing the plan. Contrary to what plaintiffs would have the Court believe, there is simply no irreconcilable inconsistency between *Mertens* and *Confer*, and *Mertens* most certainly did not "abrogate" *Confer* on this point.[6]

Second, plaintiffs devote much attention to the general propositions that ERISA defines the term "fiduciary" broadly, Opp'n Br. 18-19; and that ERISA provides for *de facto* fiduciaries in addition to named fiduciaries. Opp'n Br. 20-21. But these general principles are not in dispute, and do not undermine the holding in *Confer*. In the Eighth Circuit decision on which

---

[Footnote continued from previous page]

opening brief. But *Kayes*, which was decided after *Mertens*, does not even remotely suggest that the Supreme Court in *Mertens* somehow abrogated the Third Circuit's decision.

[6] The block quote of ERISA legislative history upon which plaintiffs rely underscores the point: "The term 'fiduciary' . . . includes persons to whom 'discretionary' duties have been delegated by named fiduciaries." Opp'n Br. 19 (discussing *de facto* fiduciary status in context of "consultants and advisors to employee benefit plans"). Here, plaintiffs concede that KV has made no formal delegations of discretionary duties to its officers or employees (as required by the Plan), and officers and employees administering the Plan on behalf of the Company therefore exercise only the Company's discretion, not individual discretion.

plaintiffs rely, *Olson v. E.F. Hutton & Co.*, 957 F.2d 622 (8th Cir. 1992), the court reversed the

district court's grant of summary judgment on the grounds that the outside investment advisor

defendant was not a plan fiduciary.  The court of appeals noted both that "the term fiduciary is to

be broadly construed," and that "the absence of any grant of authority to [defendant] does not

automatically preclude a finding that he is a fiduciary." *Id.* at 625.  But the defendant in that

case was not an officer or employee of the named corporate fiduciary, as is the case here and was

the case in *Confer*, and the case illustrates the fact that the *Confer* holding does not in any way

conflict with the general and undisputed tenets of ERISA law to which plaintiffs point.

Third, plaintiffs maintain that the Complaint does allege the Individual Defendants to be

members of an "'*ad hoc*' Board committee."  Opp'n Br. 23.  But the notion that the *ad hoc*

committee is a committee of the Board is a recent invention, not alleged in the Complaint.

In any event, the plaintiffs' conclusory allegations that the committee had responsibility

for Plan investments is unsupported by any factual allegations showing that the committee

exercised the requisite discretion in that regard.  Taken together with their concession that it is at

best "unclear" whether KV delegated any of its fiduciary functions, Opp'n Br. 23, and their

affirmative allegation that KV had not delegated any of its fiduciary duties (Compl. ¶ 41),

plaintiffs have failed to allege facts sufficient to show that the Individual Defendants qualify as

ERISA fiduciaries generally, and as fiduciaries with control over Plan investments in particular.

Finally, plaintiffs erroneously contend that it is inappropriate to determine fiduciary

status on a motion to dismiss because discovery is needed to determine "the extent to which the

individual defendants were involved in Plan administration." Opp'n Br. 21, 24.[7]  Plaintiffs'

"shoot first, ask questions later" approach should be rejected by the Court.  If plaintiffs have a

claim against KV sufficient to survive this motion to dismiss (as they argue, but the KV

Defendants dispute), then they would be able to amend the Complaint to add defendants that

discovery may show to have been delegated any of KV's fiduciary responsibilities.  In the

meantime, however, for plaintiffs to maintain their action against the Individual Defendants

unnecessarily imposes significant burdens on these individuals, including the financial burdens

associated with being a named defendant in a class action lawsuit, not to mention the

reputational harm flowing from generalized allegations of participation in fraudulent "schemes,"

*see, e.g.*, Compl. ¶ 161, allegedly causing financial harm to co-workers.  *Cf. Parnes v.Gateway*

*2000, Inc.*, 122 F.3d 539, 549 (8th Cir. 1997) (noting that allegations of fraud must be pleaded

with particularity because the failure to do so, *inter alia*, "protects against damage to

professional reputations resulting from allegations of moral turpitude").

   Indeed, even before *Twombly,* 550 U.S. at 544, and *Iqbal*, 129 S. Ct. at 1937, federal

courts recognized the propriety of dismissing complaints in which the *factual* allegations, as

opposed to unsupported legal conclusions, failed to establish fiduciary status.  *See, e.g., Custer v.*

---

[7]  Plaintiffs erroneously believe, it seems, that they are entitled to go forward with their fiduciary breach
claims simply by virtue of the fact that KV stock suffered a decline in value.  Plaintiffs contend, for
example, that their claims are "premised on losses that could not have occurred without fiduciary
misconduct," and that they should therefore be permitted to move forward with discovery "[g]iven the
inherently opaque state of the facts."  Opp'n Br. 24.  The notion that the losses could not have
occurred without fiduciary misconduct is at odds with the reality that the price of any single stock
goes up and down with some regularity.  *See, e.g.*, U.S. Dep't of Labor, Field Assistance Bulletin
2004-03 (Dec. 17, 2004), *available at* http://www.dol.gov/ebsa/regs/fab_2004-3.html ("stock prices
fluctuate as a matter of course," and "even a steep drop" does not establish that a "fiduciary's
direction to purchase or hold such stock is imprudent").  And that the concomitant loss to the plan
must be the product of fiduciary misconduct is fully belied by the so-far unbroken string of decisions
in the 401(k) stock drop cases granting defendants summary judgment or favorable judgments after
trial.  *See* note 19 *infra*.

*Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996); *In re Mut. Fund Inv. Litig.*, 403 F. Supp. 2d at 441.

Here, plaintiffs' conclusory allegations that the Individual Defendants qualified as ERISA

fiduciaries by virtue of their service as members of an *ad hoc* committee, and that the committee

was responsible for plan investments (Compl. ¶ 13, 16-18, 42), do not plausibly suggest that

these Individual Defendants exercises fiduciary discretion, let alone that they were delegated any

of KV Pharmaceutical's fiduciary responsibilities.[8]  As a result, the claims against the Individual

Defendants should be dismissed.

**II.     The *Moench* Presumption Of Prudence Is Applicable To 401(k) Plans, Like
          The KV Plan, And Plaintiffs Have Failed To Allege Facts Sufficient To Rebut
          The Presumption.**

In their opening brief, the KV Defendants pointed out that fiduciaries of 401(k) plans that

offer company stock as an investment option are entitled to a "presumption of prudence"—the

so-called "*Moench* presumption"—under which the decision to continue offering company stock

as an investment option is subject to review only under a deferential abuse of discretion standard.

KV Br. 10-11.  Plaintiffs counter that this well-established presumption is inapplicable here,

Opp'n Br. 29-36, but the several arguments that plaintiffs offer in support of that proposition are

all well off the mark.

First, while implicitly acknowledging that ERISA favors investment in company stock by

401(k) plans, plaintiffs nevertheless boldly proclaim that "ERISA does not include a

presumption [of prudence]" that attaches to a fiduciary's decision to continue offering company

stock as an investment option in the plan.  Opp'n Br. 29.  Three federal courts of appeals—the

---

8  Nor does the fact that Individual Defendant Gerald Mitchell served on the Board of Directors for a
   portion of the class period, or that he signed certain SEC filings, establish individual discretionary
   responsibility.  These issues are addressed in footnote 11 of the KV Defendants' opening brief.

Third, Fifth and Sixth Circuits—profoundly and expressly disagree,[9] as do myriad federal district courts.[10]  Those federal courts of appeals have expressly held that a fiduciary's decision to continue to invest in company stock is, indeed, entitled to a presumption of prudence that can be overcome only in limited circumstances.[11]  And the Fourth Circuit, while not explicitly adopting the presumption, noted the strong congressional policy favoring investment in company stock in the course of affirming a lower court ruling that the defendants there did not breach their fiduciary duties in continuing to offer company stock as an investment option despite the company's dire financial circumstances.  *DiFelice v. U.S. Airways, Inc.,* 497 F.3d 410, 424 (4th Cir. 2007).  Similarly, the Seventh Circuit in *Pugh v. Tribune Co.*, while not employing the phrase "presumption of prudence," held that a fiduciary decision to continue to invest in company stock was subject to a deferential standard of review, quoting from *Kuper* and citing *Moench*.  521 F.3d 686, 701 (7th Cir. 2008).  The single district court case that plaintiffs cite for the contrary proposition cannot withstand this avalanche of authority.[12]

---

[9]  *See Edgar v. Avaya, Inc.*, 503 F.3d 340 (3d Cir. 2007); *Moench v. Robertson,* 62 F.3d 553 (3d Cir. 1995); *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. 2008); *Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995).

[10]  *See, e.g., In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *16; *In re Dell, Inc. ERISA Litig.*, 563 F. Supp. 2d at 692-93; *In re Avon Prods., Inc. ERISA Litig.*, 2009 WL 848083, at *10; *Radian Group*, 2009 WL 2137241, at *17; *In re Bausch & Lomb Inc. ERISA Litig.*, 2008 WL 5234281, at *6; *Halaris*, 2008 WL 3855044, at *2; *In re RadioShack Corp. ERISA Litig.*, 547 F. Supp. 2d at 614.

[11]  *Edgar*, 503 F.3d at 345-47; *Moench*, 62 F.3d at 571; *Kirschbaum*, 526 F.3d at 256; *Kuper*, 66 F.3d at 1458-60.

[12]  Contrary to what plaintiffs assert, Opp'n Br. 29-30, neither the First Circuit or the Ninth Circuit have rejected the applicability of the presumption.  In *LaLonde v. Textron*, 369 F.3d 1, 6 (1st Cir. 2001), the First Circuit was not ready to endorse the prudence presumption adopted by the lower court without further development of the law in the area.  *But see Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 10 (1st Cir. 2009), in which the First Circuit appeared more accepting of the *Moench* presumption.

[Footnote continued on next page]

Second, plaintiffs contend that "[b]ecause the Plan here is not an ESOP [Employee Stock Ownership Plan] and does not mandate investment in company stock, there is no presumption of prudence." Opp'n Br. 31. Again, plaintiffs are wrong on both points. As to the first, plaintiffs' position is contrary to the great weight of authority holding the presumption of prudence is applicable to all EIAPs, not only ESOPs. As the Third Circuit explained in *Edgar v. Avaya, Inc.*, all EIAPs, not only ESOPs, are exempt from ERISA's duty to diversify to the extent that they hold employer securities, that all EIAPs, not only ESOPs, are exempt from ERISA's prohibitions on self-dealing with respect to employer securities, and that all EIAPs, not only ESOPs, place employee retirement assets at much greater risk than traditional ERISA plans. 503 F.3d 340, 347 (3d Cir. 2007). In light of these clear indicia of congressional intent to encourage EIAPs to provide employer securities as an investment option, the *Edgar* court concluded that the "rationale of *Moench*" applies equally to all EIAPs, including 401(k) plans, like the KV Pharmaceutical Plan here. *Id.* As the Fifth Circuit put the point in *Kirschbaum v. Reliant Energy*, the "presumption [of prudence] logically applies to any allegations of fiduciary duty breach for failure to divest an EIAP or ESOP of company stock." 526 F.3d 243, 254 (5th Cir. 2008); *see also Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1098 n.3 (9th Cir. 2004) ("EIAPS . . . are treated the same for purpose of fiduciary duty analysis"); *In re Harley-Davidson, Inc., Secs. Litig.*, No. 05-547, 2009 WL 3233747, at *9-11 & n.6, n.8 (E.D. Wis. Oct.

---

[Footnote continued from previous page]

Similarly, in *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1102 (9th Cir. 2008), the Ninth Circuit noted that the court of appeals had "not yet" adopted the presumption. *See also Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1098 n.3 (9th Cir. 2004) (noting the congressional policy strongly favoring investments in company stock by Eligible Individual Account Plans ("EIAPs"), like the KV 401(k) plan here).

8, 2009) (granting defendants' motion to dismiss after discussing and holding that a 401(k) plan including an employer stock investment option is entitled to the presumption of prudence).

Nor is there merit to the plaintiffs' claim that Company stock is not a required investment option under the Plan here. It is, of course, true that for the *Moench* presumption to apply, the fiduciaries must be "more than simply permitted" to invest in Company stock. That is the case here. The organic Plan document mandates that employee and employer contributions "shall be invested and reinvested *only*" in those investments that are "selected by the Employer and designated in the Service Agreement." Pl.'s Ex. A, Fidelity Basic Plan Document No. 07, at 31 § 8.01 (emphases added). The Service Agreement between KV, in its role as Plan sponsor, and Fidelity, in turn, calls for the KV A Stock Fund to be offered to participants. Compl. ¶¶ 25, 31. And the Plan specifies that the Plan Administrator "shall continuously monitor the suitability under the fiduciary duty rules of ERISA . . . of acquiring and holding Employer Stock." Pl.'s Ex. A, at 67 § 20.12(b) (emphasis added). There would be no reason for such a provision if KV, as Plan sponsor, did not contemplate that company stock would be a required investment for the Plan. In these circumstances, there can be no doubt that Plan fiduciaries were "more than simply permitted" to offer KV stock as an investment option.[13]

---

[13] In any event, by virtue of the clear congressional encouragement for employer stock to be offered as an investment option in 401(k) plans and other EIAPs, the presumption of prudence should apply regardless of how strongly the plan documents direct that company stock be offered as an investment option. In *In re Dell, Inc. ERISA Litigation*, 563 F. Supp. 2d at 691-92, for example, the defendant employer's 401(k) plan did not expressly mandate investment in company stock. The court nevertheless granted the defendants' motion to dismiss in light of the "unique status" and "statutory preferences granted to EIAPs," holding that "the presumption of prudence applies regardless of the degree to which the [defendant's] Plan directs the fiduciaries to offer company stock as an investment option," and the "protection is not limited by whether the plan requires, encourages, or permits investment so long as the investment is an EIAP or ESOP." *Id.*

11

In that regard, ERISA directs that plan fiduciaries discharge their duties "in accordance with the documents and instruments governing the plan," unless to do so would be inconsistent with ERISA.  29 U.S.C. § 1104(a)(1)(D).  Where, as here, the plan documents direct investment in company stock, fiduciaries would be put in an untenable position if they divested company stock every time the company suffered some set back, only to see the price of company stock later rebound.  *See Kirschbaum*, 526 F.3d at 256; *Moench*, 62 F.3d at 572.  A presumption that continuing to offer company stock is prudent in the absence of strong contrary evidence is the legal consequence of the need to follow the plan sponsor's direction, and the clear congressional preference for investment in company stock.

Third, plaintiffs contend that to rebut the presumption of prudence they need not allege that there was a serious question as to the viability of the Company as a ongoing entity.  Opp'n Br. 34.  As established in KV Defendants' opening brief, however, a 401(k) plan is "justified in continuing to make available a company stock investment option unless the fiduciary has information leading it to reasonably believe the company has *no* future prospects."  Susan J. Stabile, *Another Look at 401(k) Plan Investments in Employer Securities*, 35 J. Marshall L. Rev. 539, 562 (2002) (emphasis added); *accord In re Bausch & Lomb Inc. ERISA Litig.*, No. 06-6297, 2008 WL 5234281, at *6 (W.D.N.Y. Dec. 12, 2008) ("*Moench* and its progeny have established that the presumption of prudence is rebutted only when a company's overall viability appear[s] to be in jeopardy.").  This is because company stock prices regularly take large downturns and later recover and thrive, and shareholders are likely to suffer greater harm if fiduciaries divest and then repurchase company stock from the Plan with each significant fluctuation in the stock price.  *See Kirschbaum*, 526 F.3d at 256.

In any event, even if viability is not the only basis for rebutting the *Moench* presumption, plaintiffs still must provide "persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves *bound* to divest." *Id.* (emphasis added). Plaintiffs have pleaded no such facts here. In fact, the Complaint alleges precisely the opposite. According to the Complaint, the Company's stock has performed well over time notwithstanding a history of publicly-disclosed regulatory actions by the Food and Drug Administration and the Department of Justice, including civil seizure actions concerning departures from current Good Manufacturing Practices, the precise concern about which plaintiffs now complain that the KV Defendants should have anticipated in divesting the Plan of Company stock. *See* Compl. ¶ 47 *et seq.* ("Since the mid-1990s, KV has been the subject of various actions by a number of government agencies.").

Nor would those regulatory problems provide a basis for the fiduciaries to divest Company stock from the Plan, even if those regulatory matters had adversely affected the price of KV stock. As the Fifth Circuit cogently explained in *Kirschbaum*, "[o]ne cannot say that whenever plan fiduciaries are aware of circumstances that may impair the value of company stock, they have a fiduciary duty" to divest company stock from the plan. 526 F.3d at 256. Indeed, since fiduciaries cannot trade on material, non-public information, a reflexive reaction to sell off company stock when the company is beset by even serious problems "may bring about precisely the result plaintiffs seek to avoid: a drop in the stock price." *Id.* As one district court most recently explained, "[e]liminating [company stock] as an investment option for its employees is a clarion call to the investment world that the [fiduciaries] lacked confidence in the value of the [company] stock, and could have a catastrophic effect on [the company's] stock

13

price, severely harming . . . Plan members." *In re Computer Scis. Corp. ERISA Litig.*, 635 F.

Supp. 2d 1128, 1136 (C.D. Cal. 2009).

Fourth, plaintiffs argue that their burden to plead facts demonstrating that Plan fiduciaries

were "bound" to divest is satisfied because "fraudulent practices are alleged" in the Complaint.

Opp'n Br. 34.  But, as demonstrated in the KV Defendants' opening brief (at 19-21), there are no

well-pleaded facts in the Complaint setting forth the alleged fraudulent conduct with the

particularity required by Fed. R. Civ. P. 9(b).  *See generally Caputo v. Pfizer, Inc.*, 267 F.3d 181,

191 (2d Cir. 2001); *Parnes*, 122 F.3d at 550.  Rather, plaintiffs rely on undifferentiated

allegations that "the price of the KV stock was artificially inflated as a direct result of

*Defendants'* scheme to misrepresent the state of the [sic] KV's manufacturing processes."

Compl. ¶ 161 (emphasis added); *cf. Pugh*, 521 F.3d at 700 (allegations that ERISA fiduciaries

know of underlying fraud are "tantamount to a claim of fraud against the defendants themselves,

subjecting the complaint to the stricter pleading standards of Rule 9(b)").  Indeed, although these

allegations of fraud are the lynchpin of their case, *see, e.g.*, Opp'n Br. 1, plaintiffs make no

attempt whatsoever to show how Melissa Hughes, Mary Ann Tickner, or Gerald Mitchell were

somehow involved in that alleged "scheme," or how human resources, employee benefits and/or

finance personnel would necessarily even have insight into such matters.  And, as the Seventh

Circuit held in *Pugh*, generalized allegations that the individuals had knowledge that would

render them "bound" to divest the Plan of Company stock are insufficient to state a claim.  The

*Pugh* court explained that to survive a motion to dismiss, the complaint must allege specific facts

"that each defendant was in a position to know or learn of the information [concerning fraud],"

and mere allegations that an individual held a specific corporate position—including benefits and

14

human resources as well as director positions—or allegation of membership in a plan committee—are insufficient in that regard.  521 F.3d at 701.

The plaintiffs' failure to allege facts plausibly suggesting that each defendant had knowledge of the internal problems that purportedly rendered company stock an imprudent investment option dooms their claims here.  In just the last few weeks, two district courts have addressed that precise issue, and each has found the respective complaints fatally wanting in that regard.  In the first case, the court noted that:

> Plaintiffs provide no facts suggesting that Defendants actually knew of the problems leading to [the decline in stock price].  No where in the Complaint does Plaintiff articulate how any Defendant knew of the problems or why any Defendant would have known about the . . . problems.  Plaintiffs only identify each Defendant's position with the Company [notably including, *inter alia*, director, chief financial officer, chief human resources officer, and director of associate benefit programs and policy] and assert that Defendants knew or should have known about the [problems].  Although the Court accepts all factual allegations in the Complaint as true at this stage, it is not called to accept a conclusory and speculative inference[].  There must be more than a formulaic recital of the elements of a claim.  The fact of the mistakes alone, in these circumstances, is not enough to suggest Defendant's knowledge of them or their duty to have discovered them.

*Benitez v. Humana, Inc.*, No. 08-211, 2009 WL 3166651, at *7 (W.D. Ky. Sept. 30, 2009).  In the second case, the court addressed a similar situation:

> The defendants contend that [plaintiff's] complaint does not sufficiently allege that the defendants had knowledge of the [] fraud that gave rise to the [decline in stock price], as is now required under *Ashcroft v. Iqbal* and *Twombly*.  . . . [Plaintiff] contends the defendants were, or should have been, on notice of possible improprieties . . . because of their positions within [the company] (as CEO and CFO) and because of the existing internal reporting systems within [the company].  These allegations miss the mark.

*Rogers v. Baxter Int'l, Inc.*, No. 04-6476, 2009 U.S. Dist. LEXIS 89565, at *6 (N.D. Ill. Sept. 28, 2009) (internal citations omitted).  Plaintiffs' allegations here also miss the mark.[14]

Moreover, to the extent that the claimed misrepresentations regarding KV's operations and finances are alleged to have resulted in Plan participants purchasing KV shares at inflated prices, divesting the stock from the Plan was hardly the most appropriate fiduciary response.  If the fiduciaries of the Plan knew about the alleged misrepresentations, they could not trade in Company stock without first disclosing those adverse material matters to the market.  *See, e.g.*, *Harzewski v. Guidant Corp.*, 489 F.3d 799, 808 (7th Cir. 2007); *Wright*, 360 F.3d at 1098 n.4; *Benitez*, 2009 WL 3166651, at *9.  That disclosure would, in turn, cause the price of KV stock to fall, thus purging the inflation from the stock price, and thereby at the same time removing the purported reason why retaining Company stock would be imprudent.  *See, e.g.*, *Edgar v. Avaya, Inc.*, No. 05-3598, 2006 WL 1084087, at *9 (D.N.J. Apr. 25, 2006) ("under the 'efficient capital markets hypothesis,' such a disclosure would have resulted in a swift market adjustment, and the Plans would not have been able to sell their [Company] stock holdings at the higher, pre-announcement price, and the Plans would have sustained the same losses they incurred"), *aff'd* 503 F.3d at 350.

Finally, plaintiffs maintain that application of the presumption of prudence is inappropriate because "'presumptions are evidentiary standards that should not be applied to motions to dismiss.'"  Opp'n Br. 35 (quoting *In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 312 F. Supp. 2d 1165, 1178 (D. Minn. 2004)).  The presumption of prudence is not an

---

[14]  Although KV necessarily is involved with operational and regulatory matters in its corporate capacity, as discussed at footnote 13 of the KV Defendants' opening brief, the Company is not charged with such knowledge in its *fiduciary* capacity if the officers and employees carrying out the Company's fiduciary functions lack such knowledge.

evidentiary standard, however, but rather the relevant legal standard against which plaintiffs' allegations must be measured, as even the cases on which plaintiffs rely have held. *See In re Ford Motor Co. ERISA Litig.*, 590 F. Supp. 2d 883, 893 n.1 (E.D. Mich. 2008) (the "presumption [of prudence] is not a mere evidentiary standard, but instead is a substantive rule of law that can be applied at the motion-to-dismiss stage"). Particularly after *Twombly* and *Iqbal*, plaintiffs must plead facts plausibly entitling them to relief, and, as the *Moench* presumption of prudence stands in the way of plaintiffs obtaining relief in these 401(k) stock drop cases, plaintiffs must allege facts that would plausibly rebut that presumption.

More recent cases routinely measure at the motion to dismiss stage whether plaintiffs' allegations are sufficient to rebut the presumption of prudence. In *Edgar*, for example, the Third Circuit rejected the argument that plaintiffs advance here, expressly holding that the presumption of prudence and its concomitant abuse of discretion standard apply on a motion to dismiss: "Quite simply, if a plaintiff does not plead all of the essential elements of his or her legal claim, a district court is required to dismiss the complaint pursuant to Rule 12(b)(6)." 503 F.3d at 349 & n.14 (also noting that "a duty of prudence claim that is on its face inadequate as a matter of law obviates the need for discovery"); *see also, e.g.*, *Ward v. Avaya, Inc.*, 299 F. App'x 196, 199 n.4 (3d Cir. 2008) (affirmatively stating that presumption of prudence applies at motion to dismiss stage); *In re Harley-Davidson, Inc., Secs. Litig.*, 2009 WL 3233747, at *10 n.5 ("The court rejects [plaintiff's] contention that application of a discretionary standard is somehow inappropriate at the motion to dismiss stage."); *In re Citigroup ERISA Litig.*, No. 07-9780, 2009 WL 2762708, at *16 (S.D.N.Y. Aug. 31, 2009) ("[F]ollowing the Supreme Court's ruling in *Twombly*, courts have regularly applied *Moench* at the motion-to-dismiss stage. Joining that trend, this Court will apply the Moench presumption in conjunction with defendants' motion to

dismiss the complaint in this action." (internal citations omitted)); *In re Dell, Inc. ERISA Litig.*, 563 F. Supp. 2d 681, 693 (W.D. Tex. 2008) ("The Court must therefore determine at the motion to dismiss stage whether the Plaintiffs have plead facts which, taken as true, could overcome the *Moench* presumption."); *In re Avon Prods., Inc. ERISA Litig.*, No. 05-6803, 2009 WL 848083, at *10 (S.D.N.Y. Mar. 3, 2009) ("most courts" have recognized that the presumption "imposes a pleading burden on the plaintiff to allege facts that, if credited, would justify overcoming the presumption"); *Johnson v. Radian Group, Inc.*, No. 08-2007, 2009 WL 2137241, at *17 (E.D. Pa. July 16, 2009); *In re Bausch & Lomb Inc. ERISA Litig.*, 2008 WL 5234281, at *6; *Halaris v. Viacom, Inc.*, No. 06-1646, 2008 WL 3855044, at *2 (N.D. Tex. Aug. 19, 2008); *In re RadioShack Corp. ERISA Litig.*, 547 F. Supp. 2d 606, 614 (N.D. Tex. 2008).[15]

In sum, plaintiffs can survive the KV Defendants' motion to dismiss only if their Complaint has alleged facts plausibly establishing that the KV Defendants abused their discretion in maintaining Company stock as an investment option in the Plan in the face of knowledge that would have rendered them bound them to divest.  As one district court explicated in granting a motion to dismiss another 401(k) stock drop case:  "The allegations of the

---

[15]  Plaintiffs' contention that four district court decisions from within the Eighth Circuit are more persuasive than the many cases cited here, Opp'n Br. 32-35, cannot withstand scrutiny.  Two of those cases pre-date *Twombly* and *Iqbal*.  *See In re ADC Telecomms., Inc., ERISA Litig.*, No. 03-2989, 2004 WL 1683144 (D. Minn. July 26, 2004); *In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 312 F. Supp. 2d 1165 (D. Minn. 2004).  In the third case, *Jones v. Novastar Financial, Inc.*, No. 08-490, 2009 WL 331553 (W.D. Mo. Feb. 11, 2009), the court found that the plaintiff "pleaded facts indicating . . . that Defendants knew, or should have known, of [defendant's] impending collapse." *Id.* at *6.  As discussed above, plaintiffs in this case have not pleaded comparable facts concerning the knowledge of the defendants.  Although in the fourth case, *Morrison v. Moneygram International, Inc.*, 607 F. Supp. 2d 1033 (D. Minn. 2009), the court denied defendants' motion to dismiss, it never addressed the defendants' knowledge with respect to the alleged improprieties.  Moreover, *Morrison* in many ways supports the KV Defendants' arguments in this case, holding, for example, that the presumption of prudence applies on a motion to dismiss because "the presumption defines the elements of a plaintiff's substantive cause of action." *Id.* at 1051.

complaint do not establish an abuse of discretion to rebut the *Moench* presumption.  Although the complaint pleads facts that may be consistent with liability on the part of those defendants properly considered Plan fiduciaries, the Court concludes that it stops short of the line between possibility and plausibility of entitlement to relief." *Radian Group*, 2009 WL 2137241, at *17. The same is true for the Complaint here.

## III.     ERISA § 404(c) Bars Plaintiffs' Claims.

As the KV Defendants demonstrated in their opening brief, ERISA § 404(c) provides a "safe harbor" in which fiduciaries are shielded from liability for losses in defined contribution plans in which participants exercise control over the assets in their individual accounts, as is the case here.  *See* 29 U.S.C. § 1104(c).  Although an affirmative defense that normally could not be raised on a motion to dismiss, plaintiffs put the § 404(c) issue in play by alleging its inapplicability in the Complaint.  Plaintiffs' attempts to avoid the consequences of their allegation are unsuccessful.

After emphasizing that § 404(c) and other affirmative defenses *ordinarily* are not in play at the motion to dismiss stage, plaintiffs attempt to distinguish the Seventh Circuit's decision in *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), which held that because plaintiffs "chose to anticipate the § [404](c) defense in their Complaint explicitly," they "thus put it in play." *Id.* at 588. The court noted that the ordinary rule concerning affirmative defenses is inapplicable in such circumstances and, because plaintiffs chose to "specify the ways in which the Plans fell short for purposes of the defense," restricted its analysis to the challenges in the complaint.  *Id.* at 589.  The court then found that § 404(c) barred plaintiffs' claims because they "focused on matters that are not helpful to them in the end, namely the defendants' failure to disclose non-public material information . . . ." *Id.*

Plaintiffs' argument that they were not as detailed in anticipating the defense as the plaintiffs in *Hecker* is a distinction without a material difference. Here, as there, plaintiffs have specified the grounds on which they contested the applicability of § 404(c). In both cases, each of the plaintiff groups alleged in their respective complaints that the failure to disclose material non-public information precluded the defense. *See* Compl. ¶ 158 (claiming § 404(c) inapplicable because defendants "concealed material non-public facts regarding the investment from the participant[s]"); *Hecker*, 556 F.3d at 587. And, notwithstanding the fact that the Summary Plan Description and plan documents have been reviewed by plaintiffs and incorporated by reference into the Complaint, plaintiffs contest no other § 404(c) requirement. *See* Opp'n Br. 42 (arguing only that "Defendants failed to provide complete and accurate information regarding KV Stock, leaving Participants without information they needed to make informed investment decisions"). Given that plaintiffs chose to put the § 404(c) issue in play, and further given that they are the masters of their Complaint, they cannot now assert that they should not be held to what they have alleged. *See, e.g.*, *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (explaining that allegations in a complaint are "judicial admission[s]" to which the plaintiff is "bound throughout the course of the proceeding") (internal quotation marks omitted); *accord Knudsen v. United States*, 254 F.3d 747, 752 (8th Cir. 2001). Consequently, plaintiffs must allege facts plausibly suggesting that the KV Defendants—acting in a fiduciary capacity—withheld material non-public information from Plan participants. As discussed in Section II(C) of the KV Defendants' opening brief, and in Section IV below, however, the Complaint lacks legally sufficient allegations in that regard.

**IV.    Plaintiffs' Misrepresentation Claims Cannot Rest On Non-Fiduciary Communications.**

To establish an ERISA breach of fiduciary claim based on alleged misrepresentations, a plaintiff must demonstrate, *inter alia*, "the defendant's status as an ERISA fiduciary *acting as a fiduciary*." *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir. 2001) (emphasis added). As a result, it is clear that "no fiduciary liability can be implicated" from "press releases and periodic filings with the Securities and Exchange Commission" because these are "statements made to the market in general, not to Plan participants specifically." *Stein v. Smith*, 270 F. Supp. 2d 157, 173 (D. Mass. 2003); *accord Kirschbaum*, 526 F.3d at 257; *In re Harley-Davidson, Inc., Secs. Litig.*, 2009 WL 3233747, at *12; *In re Bausch & Lomb Inc. ERISA Litig.*, 2008 WL 5234281, at *7. In an effort to avoid these unambiguous principles of law, plaintiffs make the bare allegation that "KV's SEC filings . . . were part of the SPD and Prospectus" Compl. ¶ 37, and argue in their opposition brief that this is sufficient. Opp'n Br. 44. It is not sufficient.

To begin with, incorporation of SEC filings into a Prospectus is a function of the securities laws and is a corporate rather than a fiduciary act. *See Kirschbaum*, 526 F.3d at 257 ("When it incorporated its SEC filings into the Forms S-8 and 10a Prospectus, [the company] was discharging its corporate duties under the securities laws, and was not acting as an ERISA fiduciary."). Even if incorporation of SEC filings into an SPD might be a fiduciary act, the SPD (which is properly before the Court at this stage)[16] contains no reference to, or incorporation of, any SEC filings. *See* Ex. A to KV Br. Although the document speaks for itself, and may be

---

[16] *See Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (the Court "may consider the complaint and documents whose contents are alleged in [the] complaint and whose authenticity no party questions, but which are not physically attached to the pleading") (internal quotation marks omitted).

considered by the Court in deciding this motion, plaintiffs seemingly contend that their bald

allegation that the SPD incorporates SEC filings trumps the very document on which the

allegation is based.  Opp'n Br. 44.  It is, however, "well settled that when a disparity exists

between the written instrument annexed to the pleadings and the allegations in the pleadings, the

terms of the written instrument will control, particularly when it is the instrument being relied

upon by the party who made it an exhibit."  5A Charles Alan Wright and Arthur R. Miller,

Federal Practice & Procedure § 1327 (2009); *see also, e.g.*, *Matusovsky v. Merrill Lynch*, 186 F.

Supp. 2d 397, 400 (S.D.N.Y. 2002) ("If a plaintiff's allegations are contradicted by [an

incorporated] document, those allegations are insufficient to defeat a motion to dismiss."); *Fare

Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 683 (D. Md. 2001) ("When

the bare allegations of the complaint conflict with any exhibits or other documents, whether

attached or adopted by reference, the exhibits or documents prevail.").[17]

**V.     Plaintiffs Have Failed To Sufficiently Plead Facts Supporting Their Duty to
Monitor And Co-Fiduciary Breach Claims.**

The KV Defendants pointed out in their opening brief that there can be no breach of the

duty to monitor in the absence of other fiduciaries to monitor.  KV Br. 27.  Plaintiffs counter that

they have sufficiently pleaded a duty to monitor claim based on their bare allegation that "upon

---

[17]  The case on which plaintiffs rely for the proposition that the KV Defendants are liable for breach of
fiduciary duties based on SEC filings cannot bear the weight that plaintiffs have placed upon it.  That
case, *Morrison v. Moneygram International, Inc.*, 607 F. Supp. 2d 1033 (D. Minn. 2009), held that
"SEC filings are made in a company's corporate capacity—and not in its capacity as an ERISA
fiduciary—and therefore do not, without more, constitute fiduciary communications."  *Id.* at 1054.
The court found something "more" in plaintiffs' allegation that the SPD incorporated the defendant's
SEC filings, however, notwithstanding the fact that "little in the SPD" supported plaintiffs' claim.  *Id.*
at 1055.  But, here, *nothing* in the SPD supports plaintiffs' claims, and plaintiffs do not point to any
provision of the SPD that supports their allegation that it incorporates KV's securities filings.  In such
circumstances, it is clear that "the written instrument will control," 5A Federal Practice & Procedure
§ 1327.  Any contrary reading of *Morrison* cannot be reconciled with the weight of authority on this
point.

information and belief, KV had *authority* and discretion to appoint, monitor, and remove individual Company directors, officers, and employees as fiduciaries of the Plan." Compl. ¶ 33 (emphasis added); Opp'n Br. 49. But the question is not whether KV had the authority to appoint fiduciaries, but whether it did so. And, as plaintiffs concede in the Complaint, "the Company has made no formal delegations of [its] ERISA fiduciary responsibilities as Plan Administrator." Compl. ¶ 41. The fact that plaintiffs plead the *authority* to appoint cannot overcome the fact that no such appointments have been made.

With respect to plaintiffs' claims of co-fiduciary liability, the KV Defendants pointed out in their opening brief that ERISA co-fiduciary liability attaches in only three situations: (1) if the fiduciary knowingly participates in or conceals another fiduciary's breach; (2) the fiduciary's own breach enables the breach by the other fiduciary; or (3) the fiduciary has knowledge of another fiduciary's breach and does not take reasonable efforts to remedy the breach. KV Br. 26; 29 U.S.C. § 1105(a). Although plaintiffs compile a list of allegations that they submit would show co-fiduciary liability, Opp'n Br. 50, a review of this list reveals no factual allegations that would plausibly indicate that any of the criteria for co-fiduciary liability have been met. Plaintiffs point, for example, to their allegations that "the Board is KV's ultimate decision making body, and that KV's business was conducted by employees and Officers under the direction of CEO Defendant Marc Hermelin, subject to Board oversight." *Id.* Of course, these allegations merely describes the structure of virtually *every* public company, and certainly are not sufficient to establish co-fiduciary liability.

Plaintiffs also cite *Morrison* for the proposition that simply asserting a claim for breach of fiduciary duty is sufficient to allege co-fiduciary breach. *Id.* at 49-50; 607 F. Supp. 2d at 1059. But in that case, the defendants did not argue that the plaintiffs' co-fiduciary allegations

were insufficient, only that the plaintiffs had failed to allege facts plausibly establishing a primary fiduciary breach. *Morrison*, 607 F. Supp. 2d at 1059. Although plaintiffs here similarly fail to allege facts plausibly establishing any primary fiduciary breach—and their co-fiduciary claims fail for that reason alone—they also have failed to allege any facts suggesting that any fiduciary knowingly participated in or concealed the breach of another fiduciary, enabled the fiduciary breach of another fiduciary through his or her own breach, or knew of another fiduciary's breach and failed to take remedial steps. Plaintiffs' co-fiduciary claims, like the remainder of plaintiffs' claims, must be dismissed.[18]

## CONCLUSION

For all of the foregoing reasons, the KV Defendants respectfully request that the Court dismiss plaintiffs' Complaint.[19]

---

[18] Plaintiffs offer no counter in their opposition brief to the fact that claims of *respondeat superior* are inappropriately asserted in the circumstances presented, *see* KV Br. 28-29, exhibiting little faith in the validity of that claim.

[19] In a footnote in their opening brief, the KV Defendants pointed out that while some complaints in the approximately 200 or more 401(k) stock drop cases have survived motions to dismiss (much less so lately, however), no plaintiff has been awarded summary judgment or prevailed after trial. Apparently, stung by the fact that no plaintiff in these cases has yet succeeded in establishing liability, let alone has recovered any damages, plaintiffs put forward a list of 401(k) stock drop cases that have settled, and advise the Court that the reason for the failure of the plaintiffs to win any cases at summary judgment or trial is that "defendants typically settle [the cases] before they get that far . . . ." Opp'n Br. 27.

It may well be that some of those cases have settled because the defendants there reasonably believed that the chances of prevailing were slim. However, the fact that no plaintiff has yet prevailed suggests that something more is operating in these cases. Experience teaches that no disparate group of defendants would be able perfectly to assess the liability risks and only settle "losing" cases, and, similarly, that no group of diverse plaintiffs would always lose cases that did not settle. The reasonable expectation is that plaintiffs would prevail in at least some of the non-settled cases. That they have not suggests that many of the cases that have settled did so for reasons other than their merits.

[Footnote continued on next page]

Respectfully Submitted,

Dated:  October 19, 2009

/s/ Robert P. Berry
Robert P. Berry, # 200680
BERRY & MAXSON, LLC
16150 Main Circle Drive, Suite 120
St. Louis, Missouri 63017
Telephone:  (314) 480-5882
Facsimile:  (314) 480-5884
rberry@berrymaxson.com

William J. Kilberg, P.C., *pro hac vice*
Paul Blankenstein, *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue N.W.
Washington, D.C.  20036
Telephone:  (202) 955-8500
Facsimile:  (202) 467-0539

*Attorneys for Defendants KV Pharmaceutical Company, Melissa Hughes, Gerald R. Mitchell, and Mary Ann Tickner*

I certify that a true copy of the foregoing was served electronically via the CM/ECF system on all counsel of record on this 19th day of October, 2009.

/s/ Robert P. Berry

---

[Footnote continued from previous page]

What may well have motivated the defendants to settle many of these 401(k) stock drop cases (even marginal ones) that survived motions to dismiss is the high costs of litigation, especially discovery expenses, and the potentially large damages exposure.  As the Supreme Court explained in *Twombly*, "the threat of discovery expenses will push the cost-conscious defendants to settle even anemic cases" in order to "avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope that the [discovery] process will reveal relevant evidence.'"  550 U.S. at 559.  Exacerbating that coercive influence is the *in terrorem* effect that class action litigation has on defendants, "[f]or by aggregating a large number of claims, a class action can impose a huge contingent liability on a defendant."  *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 678 (7th Cir. 2009).  "When the potential liability created by a lawsuit is very great, even though the probability that the plaintiff will succeed in establishing liability is slight, the defendant will be under pressure to settle rather than to bet the company, even if the betting odds are good."  *Id.*